**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| The State of Texas, *et. al.*, | |
| Plaintiffs, | Case No. 4:20-CV-957-SDJ |
| v. | Hon. Sean D. Jordan |
| Google LLC, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO GOOGLE LLC'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORTIES ................................................................................................ ii

BACKGROUND .............................................................................................................. 1

LEGAL STANDARD ...................................................................................................... 2

ARGUMENT ................................................................................................................... 4

   I.   The Private Interest Factors Weigh Against Transfer ........................................... 5

      A.   The Northern District of California does not have relatively easier access to sources of proof than the Eastern District of Texas. .............................................................. 5

      B.   The Northern District of California is not a more convenient forum for willing witnesses. ................................................................................................................ 7

      C.   The Northern District of California does not have superior availability of compulsory process for unwilling witnesses. ........................................................................ 9

      D.   Transfer to the Northern District of California would not promote judicial economy. 10

   II.   The Public Interest Factors Weigh Against Transfer ......................................... 13

      A.   The Northern District of California has greater administrative difficulties flowing from court congestion. ............................................................................................. 13

      B.   The Northern District of California does not have a superior local interest in this dispute. ............................................................................................................... 14

      C.   Texas's state law claims are governed by Texas state law. .......................................... 15

CONCLUSION ............................................................................................................. 15

i

## **TABLE OF AUTHORTIES**

**CASES**                                                                          **Page(s)**

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
   No. 2:17-CV-00513-JRG, 2018 WL 2329752 (E.D. Tex. May 23, 2018) ..............................7

*Bride Ministries, NFP v. DeMaster*,
   No. 4:20-CV-00402, 2020 WL 6822836 (E.D. Tex. Nov. 20, 2020) ........................10, 16, 17

*Calypso Wireless, Inc. v. T-Mobile USA, Inc.*,
   No. 2:08-CV-441-TJW-CE, 2010 WL 11469012 (E.D. Tex. Mar. 31, 2010)...................7, 17

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)............................................................................................................6

*Hammond Dev. Int'l, Inc. v. Google LLC*,
   No. 1:20-CV-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020) ...........................7

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
   2009 WL 440525 (E.D. Tex. 2009) .....................................................................................8

*Konami Dig. Entm't Co., v. Harmonix Music Sys., Inc.*,
   No. 6:08-cv-286, 2009 WL 3448148 (E.D. Tex. Oct. 22, 2009)...............................................4

*LBS Innovations, LLC v. Apple Inc.*,
   No. 219CV00119JRGRSP, 2020 WL 923887 (E.D. Tex. Feb. 26, 2020) ...........................6, 7

*Morrison v. Walker*,
   No. 1:13-CV-327, 2014 WL 11512240 (E.D. Tex. Dec. 2, 2014) ...........................................4

*OGD Equip. Co. v. Overhead Door Corp.*,
   No. 417CV00898ALMKPJ, 2019 WL 6720509 (E.D. Tex. Oct. 25, 2019) ...........................9

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
   No. 218CV00390RWSRSP, 2019 WL 2303034 (E.D. Tex. May 30, 2019)...........................16

*Perritt v. Jenkins*,
   No. 4:11-CV-23, 2011 WL 3511468 (E.D. Tex. July 18, 2011) ......................................11, 13

*Principal Tech. Eng'g, Inc. v. SMI Cos.*,
   No. 4:09-CV-316, 2009 WL 4730609 (E.D. Tex. Dec. 8, 2009) ...........................................13

*Quest NetTech Corp. v. Apple, Inc.*,
   No. 2:19-CV-00118-JRG, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019)...............6, 7, 10, 12

*Rockstar Consortium US LP v. Google Inc.*,
   No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692 (E.D. Tex. Sept. 23, 2014)................7, 9, 11

**CASES (cont.)**                                                               **Page(s)**

*Seven Networks, LLC v. Google LLC*,
  No. 2:17-CV-00441-JRG, 2018 WL 4026760 (E.D. Tex. Aug. 15, 2018).................... *passim*

*Texas Data Co. v. Target Brands, Inc.*,
  771 F. Supp. 2d 630 (E.D. Tex. 2011)................................................................10

*TIGI Linea Corp. v. Prof'l Prod. Grp., LLC,*
  No. 419CV00840RWSKPJ, 2020 WL 7346211 (E.D. Tex. Nov. 13, 2020) ..................10

*TravelPass Grp. LLC v. Caesars Entm't Corp.*,
  No. 5:18-CV-00153-RWS, 2019 WL 4071784 (E.D. Tex. Aug. 29, 2019)..................12, 16

*TravelPass Grp., LLC v. Caesars Entm't Corp.*,
  No. 5:18-CV-153-RWS-CMC, 2019 WL 3806056 (E.D. Tex. May 9, 2019) ............11, 14, 15

*Vocalife LLC v. Amazon.com, Inc.*,
  No. 2:19-CV-00123-JRG, 2019 WL 6345191 (E.D. Tex. Nov. 27, 2019)..................7, 12, 17

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ............................................................6, 10

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................................6, 12

## OTHER AUTHORITIES

Google Careers, *Our Locations*, available at https://careers.google.com/locations/
  (last visited Feb. 2, 2021).......................................................................8

Google Data Centers, *Locations*, available at https://www.google.com/about/ .............9

Google Data Centers, *Lone Star State,* available at
  https://www.google.com/about/datacenters/locations/midlothian/ (last visited
  Feb. 2, 2021) .......................................................................................17

U.S. Courts, *Federal Court Management Statistics—Profiles as of Sept. 30, 2020,*
  available at https://www.uscourts.gov/statistics-reports/federal-court-
  management-statistics-september-2020 (last visited Feb. 2, 2021)........................16

iii

The State of Texas filed this lawsuit in the Eastern District of Texas to vindicate the rights of Texas citizens who have been harmed by Google's anticompetitive and unlawful conduct in Texas. Nine other states joined Texas to represent the interests of their citizens harmed by the same conduct. Google's Motion to Transfer Venue Pursuant to 28 USC § 1404(a) (the "Motion") seeks to force Texas and the other nine Plaintiff States,[1] seven of which are located closer to Texas than California, to litigate on behalf of their citizens on Google's home turf. But Google has not come close to meeting its burden to show that Plaintiffs' choice of forum should be set aside. Instead, Google ignores controlling legal principles by repeatedly attempting to shift its burden to Plaintiffs. That telling effort should not be countenanced. Regardless, Plaintiffs have ample evidence showing the convenience—and importance—of adjudicating this dispute in this forum.

## BACKGROUND

Google generates billions of dollars annually from online advertising. (Compl., ¶ 3.) Nearly all of today's online publishers (both large and small) use Google to sell their online display ad space in "ad exchanges" and "ad networks," which are the centralized electronic trading venues where display ads are bought and sold. (*Id*. at ¶ 4.) Publishers also depend on Google's ad server, which acts as the publisher's inventory management system and helps the publisher sell its

---

[1] Google did not meet and confer with Plaintiffs about this Motion as required by Local Rule CV-7(h). As detailed in Texas's Reply in Support of Its Motion For Interim Protective Order, Google failed to satisfy its substantive meet and confer obligations with Texas. (Doc. 34.) And as acknowledged in Google's certificate of conference, Google also failed to meet and confer with the other Plaintiff States—it did not even request to meet and confer regarding this Motion in any fashion with any of the other Plaintiff States before filing. For this reason alone, the Court should deny or strike Google's Motion. *See, e.g.*, *Morrison v. Walker*, No. 1:13-CV-327, 2014 WL 11512240, at *3 (E.D. Tex. Dec. 2, 2014) (striking motion for defective certificate of conference and noting that "[t]he meet and confer requirement of the Local Rules is not a perfunctory obligation"); *Konami Dig. Entm't Co., v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 3448148, at *2-3 (E.D. Tex. Oct. 22, 2009) ("In light of [defendants'] noncompliance with Local Rule CV–7(h) and (i), the Court DENIES the Motion to Compel without reaching the merits of the request.").

inventory. (*Id*. at ¶ 33.) Conversely, nearly every consumer goods company, e-commerce entity, and small business now depends on Google for purchasing display ads to market their goods and services to consumers across the internet. In addition to representing both the buyers and sellers of display advertising, Google also operates the largest ad exchange. (*Id*. at ¶ 4.)

Texas, joined by the other Plaintiff States, began investigating Google's display advertising apparatus in July 2019. (Decl. of Eric Peterson, attached as Ex. A, ¶ 3.) This multistate investigation, which involved the production of approximately three million documents and the participation of sixty-four third-party witnesses (*id*. at ¶ 4), revealed that Google employs its extraordinary market power to unlawfully foreclose competition in several display advertising markets. Google's anticompetitive conduct includes unlawful tying arrangements, a pattern and practice of exclusionary conduct targeting actual and potential rivals, and even an unlawful agreement to eliminate one of Google's largest competitive threats. (Compl., ¶¶ 98-249.) Texas and the other Plaintiff States brought this action in the Eastern District of Texas—an efficient venue in a convenient location for many witnesses and sources of proof—to defend the rights of their citizens and put an end to Google's unlawful conduct.

## LEGAL STANDARD

A plaintiff's choice of forum cannot be set aside without a showing of "good cause." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). To meet that standard, the movant bears the "significant burden" of showing that the transferee venue is "*clearly* more convenient than the venue chosen by the plaintiff." *Id*. at 314-15 (emphasis added). The required showing is "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Absent such a showing, "the plaintiff's choice should be respected." *Volkswagen of Am.*, 545 F.3d at 315. "By

applying this heightened standard, the plaintiff's choice of forum is given the appropriate deference." *LBS Innovations, LLC v. Apple Inc.*, No. 219CV00119JRGRSP, 2020 WL 923887, at *1 (E.D. Tex. Feb. 26, 2020).

To analyze whether a transferee forum is clearly more convenient, the Fifth Circuit has adopted a series of private and public interest factors. *See Volkswagen of Am.*, 545 F.3d at 315 (adopting factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

When applying these factors, "courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence." *Quest NetTech*, 2019 WL 6344267, at *7. With the plaintiff's choice firmly in view, courts must also "resolve all factual discrepancies in favor of the non-movant." *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2019 WL 6345191, at *3 (E.D. Tex. Nov. 27, 2019). For each factor, if the evidence presented by the movant does not show that the transferee venue is clearly more convenient, then that "factor weighs against transfer." *Rockstar Consortium US LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692, at *7 (E.D. Tex. Sept. 23, 2014).

Moreover, "[w]here the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is 'clearly more convenient.'" *Quest NetTech*, 2019 WL 6344267, at \*7 (quoting *Volkswagen of Am.*, 545 F.3d at 315). For this reason, courts in this Circuit consistently decline to transfer cases even when several public or private interest factors weigh in favor of transfer. *See, e.g.*, *Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-CV-00342-ADA, 2020 WL 3452987, at \*5 (W.D. Tex. June 24, 2020) (denying Google's motion to transfer to the Northern District of California, even where access to proof and local interests weighed in favor of transfer); *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00441-JRG, 2018 WL 4026760, at \*14 (E.D. Tex. Aug. 15, 2018) (denying Google's motion to transfer to the Northern District of California, even where the availability of compulsory process and cost of attendance to willing witnesses weighed in favor of transfer); *LBS Innovations*, 2020 WL 923887, at \*7 (denying motion to transfer, even where access to proof and local interest weighed in favor of transfer); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-CV-00513-JRG, 2018 WL 2329752, at \*9 (E.D. Tex. May 23, 2018) (denying motion to transfer, even where access to proof and availability of compulsory process weighed in favor of transfer); *Calypso Wireless, Inc. v. T-Mobile USA, Inc.*, No. 2:08-CV-441-TJW-CE, 2010 WL 11469012, at \*5 (E.D. Tex. Mar. 31, 2010) (denying motion to transfer, even where the availability of compulsory process, local interests, and cost of witness attendance weighed in favor of transfer).

## ARGUMENT

Google has not met its significant burden to demonstrate that the Northern District of California is "clearly more convenient" than the Eastern District of Texas and override the Plaintiff

States' chosen forum. Indeed, *each* of the private and public interest factors weigh against transfer in this case.

**I.        The Private Interest Factors Weigh Against Transfer.**

> **A.        The Northern District of California does not have relatively easier access to sources of proof than the Eastern District of Texas.**

Google has failed to show that the Northern District of California has more convenient access to proof. "In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Seven Networks*, 2018 WL 4026760, at *2. A party seeking transfer "must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties." *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, 2009 WL 440525, at *2 (E.D. Tex. 2009). Here, Google has failed to identify *any* specific sources of proof located in the Northern District of California. Instead, Google relies on conclusory statements about the location of its headquarters and the headquarters of other entities referenced in the Complaint.[2] (Mot. at 4-5.) But headquarters are buildings; they are not sources of proof.  They do not testify at trial or constitute relevant, case-specific documents.  Without identifying documents housed in those buildings, this factor cannot weigh in favor of transfer.

Other courts in this district have rejected Google's vague generalities about its sources of proof. For example, in *Rockstar Consortium*, the court noted that "Google's [transfer] Motion only

---

[2] Google identifies several third-party entities that are headquartered closer to the Eastern District of Texas but have offices in northern California. Google does not, however, disclose its own office locations that are closer to the Eastern District of Texas. According to Google's own website, thirty-seven of Google's sixty-four offices are located closer to the Eastern District of Texas than the Northern District of California, including four locations in Texas. Indeed, Google's Dallas office is just ten miles from this Court, and its Midlothian office just fifty-four miles away. *See* Google Careers, *Our Locations*, available at https://careers.google.com/locations/ (last visited Feb. 2, 2021).

provides that Google's headquarters is located in the Northern District of California" but "does not appear to offer any evidence regarding the location of its relevant documents or infrastructure." 2014 WL 4748692, at *3. Without such evidence, "Google's Motion provide[d] neither evidence of where its documents are actually located nor evidence that these documents are more available or accessible from the Northern District of California than they would be from the Eastern District of Texas." *Id*. Similarly, in *Seven Networks*, when Google argued that relevant evidence was maintained in its Northern California offices, the court found that although many documents were "hosted in secure servers *managed from* its Northern California offices," the vast majority of Google's electronic records were not, in fact, "*stored in* its Northern California offices." 2018 WL 4026760, at *2 (emphasis in original). Instead, these documents are located in thirteen data storage centers across the country, with all but two data centers located closer to the Eastern District of Texas. *See id*.[3] Google does not have a single data center in California, much less in the Northern District, but one of its thirteen data storage centers is located in Midlothian, Texas, just over fifty miles from this Court.

In contrast to Google's scant showing, Plaintiffs have provided declarations from ten potential third-party witnesses who possess relevant documents stored closer to the Eastern District of Texas than the Northern District of California. (Ex. B-4 through Ex. B-13, filed under seal.) Additionally, as substantial discovery has already been conducted through the Plaintiff States' investigation, many sources of proof previously in the control of Google and third parties are now conveniently located at the Office of the Attorney General in Austin. *Cf. OGD Equip. Co. v.*

---

[3] Google's thirteen data centers in the United States are located in South Carolina, Iowa, Oregon, Georgia, Nevada, Alabama, North Carolina, Virginia, Oklahoma, Texas, Tennessee, Ohio, and Nebraska. *See* Google Data Centers, *Locations*, available at https://www.google.com/about/datacenters/locations/ (last visited Feb. 2, 2021).

*Overhead Door Corp.*, No. 417CV00898ALMKPJ, 2019 WL 6720509, at *3 (E.D. Tex. Oct. 25, 2019) ("[T]his factor is considered neutral when discovery has already been completed."). And for any documents that might be located in the Northern District of California, Google "has identified no sources of proof that cannot be transferred electronically." *TIGI Linea Corp. v. Prof'l Prod. Grp., LLC,* No. 419CV00840RWSKPJ, 2020 WL 7346211, at *3 (E.D. Tex. Nov. 13, 2020); *see also Quest NetTech*, 2019 WL 6344267, at *4 ("No one seriously doubts that Apple's relevant documents are digitized and readily deliverable by electronic means.").

Finally, Google's bald assertion that "the challenged conduct occurred in the Northern District of California" is simply not true. As Plaintiffs have alleged, Google's anticompetitive and unlawful conduct occurred throughout the country. (Compl. at ¶ 25.) Because this is not a case where "all of the physical evidence [is] located within the proposed transferee venue," Google's reliance on *Volkswagen of America* is misplaced. *Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 641 (E.D. Tex. 2011) (distinguishing *Volkswagen of America* because the evidence was "distributed across the country with some evidence in the Eastern District of Texas"); *see also TIGI Linea*, 2020 WL 7346211, at *4 ("[W]here evidence is dispersed across venues, this private interest factor will be neutral.").

### B.   The Northern District of California is not a more convenient forum for willing witnesses.

"The convenience of witnesses is probably the single most important factor in the transfer analysis." *Bride Ministries, NFP v. DeMaster*, No. 4:20-CV-00402, 2020 WL 6822836, at *9 (E.D. Tex. Nov. 20, 2020) (quoting *In re Genetech, Inc.*, 556 F.3d 1338, 1342 (Fed. Cir. 2009)). Generally, "[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen AG*, 371 F.3d at 204–05. This

factor, however, "primarily concerns the convenience of nonparty witnesses" and "the convenience of party witnesses is given little weight." *Seven Networks*, 2018 WL 4026760, at *9.

Google's Motion failed to identify even a single potential nonparty witness, willing or unwilling. For this reason, Google has failed to provide any evidence that would allow the Court to analyze the single most important factor in the transfer analysis. In contrast, Plaintiffs have provided declarations from a representative sample of thirteen potential nonparty witnesses, including three industry associations that represent many more potential nonparty witnesses, who are located closer to the Eastern District of Texas than the Northern District of California and are willing to travel to this district to testify at trial. (Ex. B-4 through Ex. B-13, filed under seal; Decl. of Danielle Coffey, attached as Ex. C; Decl. of Jason Kint, attached as Ex. D; Decl. of David Newell, attached as Exhibit E.) These witnesses would provide relevant and material testimony about, for example, the product markets at issue, competition and barriers to entry in those markets, Google's exclusionary conduct, the anticompetitive effects of that conduct, and Google's deceptive trade practices. Plaintiffs have further identified thirty-four witnesses who participated in the Plaintiff States' investigation and are located closer to the Eastern District of Texas. (Ex. A, ¶ 3.) As Google acknowledges, "[t]he importance of presenting live testimony in court cannot be forgotten." (Mot. at 7.)[4]

For several reasons, Google's laundry list of employees is unpersuasive. First, as potential party witnesses, these employees are afforded little weight in the transfer analysis. *See Seven*

---

[4] Even if Google had identified specific willing witnesses, this factor would not favor transfer because "a transfer should not be made where the only practical effect is to shift inconvenience from the moving party to the non-moving party." *Perritt v. Jenkins*, No. 4:11-CV-23, 2011 WL 3511468, at *5 (E.D. Tex. July 18, 2011); *see also TravelPass Grp., LLC v. Caesars Entm't Corp.*, No. 5:18-CV-153-RWS-CMC, 2019 WL 3806056, at *14 (E.D. Tex. May 9, 2019) ("With witnesses scattered all over America, a trial in either this district or in Illinois will be inconvenient for some and convenient for others.").

*Networks*, 2018 WL 4026760, at *9. Second, as with documentary evidence, a movant must provide specific evidence regarding the witnesses' location and the substance of their testimony. *See, e.g.*, *Rockstar Consortium*, 2014 WL 4748692, at *4 (finding that this factor weighed against transfer where Google provided "little, if any, evidence for the Court to work with as to what the witnesses would actually testify to[,] where the witnesses actually live[,] which, if any, of the[ ] witnesses will be called to testify and whether any of the witnesses are willing or unwilling"); *TravelPass Grp. LLC v. Caesars Entm't Corp.*, No. 5:18-CV-00153-RWS, 2019 WL 4071784, at *7 (E.D. Tex. Aug. 29, 2019) ("[W]ithout knowledge of how many witnesses are located in each location and their importance to the issues presented at trial … this factor weighed against transfer."). Google has provided no specificity for its listed employees. Even still, Google's argument fails on its own terms. The majority of Google's own witnesses—eighty-seven of the 151 listed employees—are located *closer* to the Eastern District of Texas than to the Northern District of California. (*See* Mot. Ex. A, filed under seal.)

C.   **The Northern District of California does not have superior availability of compulsory process for unwilling witnesses.**

As with the convenience of willing witnesses, the availability of compulsory process weighs in favor of transfer *only* when the movant identifies specific nonparty witnesses and shows the relevance of their testimony and their unwillingness to travel to plaintiffs' chosen forum. *See Quest NetTech*, 2019 WL 6344267, at *5. Google provides only the vague possibility of unwilling witnesses with a reference to "witnesses from Facebook or other relevant third parties." (Mot. at 6.) Google has once again failed to meet its evidentiary burden. *See Vocalife*, 2019 WL 6345191, at *4 ("The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum.").

This factor weighs heaviest when the transferee venue has "absolute subpoena power," meaning that "all relevant and material non-party witnesses reside within the subpoena power of a particular court." *Volkswagen of Am.*, 545 F.3d at 316. In light of the nationwide distribution of advertisers, publishers, competitors, and consumers harmed by Google's anticompetitive conduct, Google does not—and cannot—contend that the Northern District of California has absolute subpoena power in this case. To that end, Plaintiffs have identified seventy-nine potential third-party witnesses located within 100 miles of this Court who could be subpoenaed for trial in this Court. (Ex. A-1.) For this additional reason, the availability of compulsory process weighs against transfer. *See, e.g.*, *Perritt v. Jenkins*, No. 4:11-CV-23, 2011 WL 3511468, at *5 (E.D. Tex. July 18, 2011) (finding that this factor weighed against transfer "because transfer would merely redistribute the inconvenience of lacking the ability to subpoena non-party witnesses"); *Principal Tech. Eng'g, Inc. v. SMI Cos.*, No. 4:09-CV-316, 2009 WL 4730609, at *6 (E.D. Tex. Dec. 8, 2009) (same).

### D. Transfer to the Northern District of California would not promote judicial economy.

As Google acknowledges, the "fourth private-interest factor follows from the first three." (Mot. at 8.) For this reason, Google's failed showing on the first three factors also dooms its contentions under the final factor.

Google devotes nearly a page to calculating the distance between each Plaintiff State and each of Texas's outside counsel and the Eastern District of Texas. Google posits: "If they are not inconvenienced by travel to Texas, they will not be inconvenienced by travel to the Northern District of California." (*Id*.) But the operative question is not whether the Eastern District of Texas is the most convenient forum for all of the parties and their counsel—the question is, rather, whether the Northern District of California is clearly more convenient than Plaintiffs' chosen

forum. And even if the convenience to the Plaintiff States and counsel was relevant, each of Texas's outside counsel and eight of the ten Plaintiff States are closer to the Eastern District of Texas than the Northern District of California. Moreover, each Plaintiff State seeks to enforce the same federal laws and similar state laws, so judicial economy is well served by each Plaintiff States' decision to coordinate with Texas, which led the multistate investigation, and to jointly litigate this case in this district.

Google's arguments about the private class actions pending in the Northern District of California are similarly unavailing. Indeed, transfer would hinder, not promote, judicial economy in this case. Google's argument hinges on the purported similarity between the "central allegation" of Plaintiffs' complaint—one phrase in a 116-page Complaint—and allegations in the private class actions. (Mot. at 10.) However, even with a "high degree of overlap on the issues," when cases involve different claims, parties, defenses, and damages, transfer does not serve the interests of judicial economy. *See, e.g.*, *TravelPass*, 2019 WL 3806056, at *15–16 (denying transfer to jurisdiction with pending antitrust class action involving the same underlying anticompetitive conduct).

The private class actions cited by Google involve different claims, parties, defenses, and damages than this case. Those cases were filed by individual publishers and advertisers seeking to represent putative classes of publishers and advertisers. Discovery has yet to commence and is stayed pending resolution of Google's motion to dismiss. If the private class actions survive dispositive motions, then the parties must undertake substantial discovery and motion practice related to class certification, none of which is relevant to this case. With this long road ahead, the judge presiding over the class actions has represented that trial will be set for no earlier than the

middle of 2023. (*See* Order on Motion to Stay Discovery, *In re Google Dig. Advert. Antitrust Litig.*, attached as Ex. B-1.)

In stark contrast, this case is not in its infancy. It is the product of an eighteen-month investigation by the Plaintiff States, resulting in the production of approximately three million documents and the participation of sixty-four witnesses. (Ex. A, ¶ 4.) This case was filed by sovereign states as *parens patriae* on behalf of citizens harmed by Google's anticompetitive conduct—a far broader population than implicated by the putative private classes. The Plaintiff States also allege state-law claims not at issue in the private class actions, including consumer protection and deceptive trade practices claims that are dissimilar to the class-action plaintiffs' claims.  These state-law claims will necessitate different evidence, witnesses, and experts than the class claims. This case is therefore not "duplicative" of the private class actions—to the contrary, the class actions will likely duplicate much of the fact-finding efforts already completed by the Plaintiff States.

The class-action plaintiffs are also subject to various arguments and defenses not applicable to the Plaintiff States. For example, in its recently filed Motion to Dismiss in *In re Google Digital Advertising Antitrust Litigation*, Google argued that several of the plaintiffs were bound to arbitrate based on their agreements with Google. (*See* Motion to Dismiss, *In re Google Dig. Advert. Antitrust Litig.*, attached as Ex. B-2.) This, and any argument or defense based on Google's contractual relationship with the class plaintiffs, is inapplicable to the Plaintiff States.

Moreover, it is this contractual relationship that dictated the class plaintiffs' forum because Google uses its market power to force advertisers and publishers to file their cases in the Northern District of California pursuant to forum selection clauses in contracts of adhesion. (*See* Ex. C, ¶ 5.) Thus, the fact that these plaintiffs filed in the Northern District of California provides no indication

of the relative convenience of that forum. Google should not be permitted to use its market power over others to subject sovereign states to a forum selection clause under the guise of convenience.

Because "transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute," and considering the procedural and substantive differences between this case and the private class actions, transfer of this case to the Northern District of California would inevitably "disserve judicial economy." *TravelPass*, 2019 WL 3806056, at *9.

## II.   The Public Interest Factors Weigh Against Transfer.

### A.   The Northern District of California has greater administrative difficulties flowing from court congestion.

In addition to the case-specific inefficiencies identified above, forum-specific realities also demonstrate that this case will be resolved more quickly and efficiently in this district than in the Northern District of California. According to the latest available data, as of September 2020, judges in this district had fewer pending cases and completed more trials annually than judges in the Northern District of California. Specifically, Eastern District of Texas judges had on average 654 pending cases and completed 14 trials annually, while Northern District of California judges had 870 pending cases and completed only 6 trials.[5] Cases in this district are also resolved more quickly. Here, the median time from filing to disposition is 8.9 months and from filing to trial is 18 months, while cases in the Northern District of California take 11.4 months and 44.5 months, respectively. Given the scope and magnitude of ongoing harm to competitors, publishers, advertisers, and consumers wreaked by Google's anticompetitive and unlawful conduct, transfer

---

[5] U.S. Courts, *Federal Court Management Statistics—Profiles as of Sept. 30, 2020,* available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2020 (last visited Feb. 2, 2021).

to a district where it will take, on average, 2.5 times longer to try this case is more than a mere inconvenience.  (*See* Ex. C, ¶¶ 6-9; Ex. D, ¶ 5; Ex. E, ¶ 5.) Thus, the assured delay in the resolution of this case in the Northern District of California weighs heavily against transfer. *See Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 218CV00390RWSRSP, 2019 WL 2303034, at *5 (E.D. Tex. May 30, 2019) (finding that a ten-month average trial delay weighed against transfer and noting "the importance of this factor due to the increased harm from delay of trial"); *TravelPass*, 2019 WL 4071784, at *10 ("[C]onsidering the statistics that show that a trial would occur significantly earlier if the case proceeds in the Eastern District of Texas, this factor weighs heavily against transfer.").

### B.   The Northern District of California does not have a superior local interest in this dispute.

In its attempt to move this case to its own backyard, Google ignores Texas's interest in having the rights of its citizens adjudicated in Texas. A sovereign State's choice of forum within the State inherently carries with it the interests of its own citizenry. Here, the advertisers, publishers, competitors, and consumers located in the Eastern District of Texas all have a keen interest in this litigation. *See Bride Ministries*, 2020 WL 6822836, at *10 ("[T]he State of Texas has an interest in ensuring its residents and businesses are protected from harm."). Indeed, with an estimated population of 4.2 million, the Eastern District of Texas accounts for approximately ██ ██ online display advertising auctions run every single day in the district. (Decl. of Brooke Smith, attached as Ex. B, ¶ 3.) Plaintiffs' potential witnesses further buttress this forum's relation to the litigation. *See Bride Ministries*, 2020 WL 6822836, at *10.[6]

---

[6] In an attempt to minimize the interest of the nine other Plaintiff States, Google once again shifts the burden to these states to prove the convenience of their chosen forum. That is not the standard. Deference to Plaintiffs' chosen forum is reflected in Google's "elevated burden of proof" to show

California, which has not joined this lawsuit to bring claims on behalf of its citizens, does not have the same local interest in protecting its citizens. Additionally, courts in this circuit caution against overemphasizing "the interest a distant community may have in its hometown corporate pillar." *Seven Networks*, 2018 WL 4026760, at *14. And while Google's presence in the Northern District of California obviously generates some local interest in that venue, its presence in Texas implicates that same interest. *See Vocalife*, 2019 WL 6345191, at *7 ("[T]his Court has previously rejected [defendant's] argument that its presence in this District does not give rise to a local interest.").[7]

### C.    Texas's state law claims are governed by Texas state law.

In addition to federal antitrust claims, Texas brings claims under Texas law: the Texas Business and Commerce Code and the Texas Deceptive Trade Practices Act. (Compl., ¶¶ 308-356.) Therefore, although not addressed in Google's Motion, "this court's familiarity with Texas law weighs against transfer." *Calypso Wireless*, 2010 WL 11469012, at *5.

### CONCLUSION

Because Google has not shown, and cannot show, that the Northern District of California is clearly more convenient than this district and because each of the private and public interest factors weighs against transfer, the Court should deny Google's Motion.


Dated: February 2, 2021

---

that the transferee forum is "clearly more convenient." *Seven Networks*, 2018 WL 4026760, at *2. Because Google has failed to carry that burden, the Plaintiffs States' choice must be respected.

[7]Google Data Centers, *Lone Star State,* available at https://www.google.com/about/datacenters/locations/midlothian/ (last visited Feb. 2, 2021) ("Google has been proud to call Texas home since 2007. We remain deeply committed to our Texas roots and are excited to officially break ground on our first-ever Texas data center.").

Respectfully Submitted,

/s/ Ashley Keller
Ashley Keller
Admitted Pro Hac Vice
ack@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220
Warren Postman
wdp@kellerlenkner.com
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334
**KELLER LENKNER LLC**

Ken Paxton,* Attorney General of Texas
Kenneth.paxton@oag.texas.gov
Brent Webster,* First Assistant Attorney
General of Texas
Brent.Webster@oag.texas.gov
Grant Dorfman, Deputy First Assistant
Attorney General
Grant.Dorfman@oag.texas.gov
Aaron Reitz,* Deputy Attorney General for
Legal Strategy
Aaron.Reitz@oag.texas.gov

Shawn E. Cowles, Deputy Attorney
General for Civil Litigation
Shawn.Cowles@oag.texas.gov
Nanette DiNunzio,* Associate Deputy Attorney
General for Civil Litigation
Nanette.Dinunzio@oag.texas.gov

Christopher Hilton, Deputy Chief, General
Litigation Division
Christopher.Hilton@oag.texas.gov
Matthew Bohuslav, Assistant Attorney General,
General Litigation Division
Matthew.Bohuslav@oag.texas.gov
Ralph Molina, Assistant Attorney General,
General Litigation Division
Ralph.Molina@oag.texas.gov

/s/ Mark Lanier
Mark Lanier (*lead counsel*)
Texas Bar No. 11934600
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
10940 W. Sam Houston Parkway N. Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
**THE LANIER LAW FIRM, P.C.**

David Ashton, Assistant Attorney General
Antitrust Division
David.Ashton@oag.texas.gov
Kim Van Winkle,* Chief, Antitrust Division
Kim.VanWinkle@oag.texas.gov
Bret Fulkerson, Deputy Chief, Antitrust
Division
Bret.Fulkerson@oag.texas.gov
Nicholas G. Grimmer, Assistant Attorney
General, Antitrust Division
Nick.Grimmer@oag.texas.gov
Trevor Young,* Assistant Attorney General,
Antitrust Division
Trevor.Young@oag.texas.gov

Eric Hudson, Assistant Attorney General,
Special Litigation Division
Eric.Hudson@oag.texas.gov

Paul Singer,* Senior Counsel for Public
Protection
Paul.Singer@oag.texas.org

**OFFICE OF THE ATTORNEY GENERAL
OF TEXAS**
P.O. Box 12548 (MC059)
Austin, TX 78711-2548
(512) 936-1414
* Applications for pro hac vice forthcoming

**Attorneys for Plaintiff State of Texas**

*On behalf of the Plaintiff States*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 2, 2021, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

<u>/s/ Ashley Keller</u>
Ashley Keller