# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| THE STATE OF TEXAS, et al., | |
| Plaintiffs, | Civil Action No. 4:20-cv-957 |
| vs. | |
| GOOGLE LLC, | |
| Defendant. | |

**DECLARATION OF DANIELLE COFFEY**

I, Danielle Coffey, declare as follows:

1.      My name is Danielle Coffey. I am Senior Vice President and General Counsel of News Media Alliance. I have personal knowledge of the matters discussed in this declaration.

2.      News Media Alliance is a nonprofit organization representing nearly 2,000 news organizations in the United States. Our members include both large and small news media organizations, including digital and multiplatform products.

3.      As a general matter, News Media Alliance members sell most of their online advertising inventory through third-party advertising technology and tools. As detailed by the State of Texas, Google operates numerous allegedly dominant advertising technology products, and thus, the vast majority of our 2,000 members and their employees have relevant knowledge regarding the issues presented in this case, and some may be called as witnesses at trial.

4.      Plano, Texas is a convenient forum for News Media Alliance. For the majority of News Media Alliance members, Texas is substantially more convenient than the Northern District of California. News Media Alliance's members are spread throughout the United States, and Texas is centrally located. If the case were moved to the Northern District of California, many members would have to travel up to six hours by air and endure several more hours of heavy traffic through the Bay Area. Jesse Gary, <u>Bay Area Commuters Spend Over 100 Hours Stuck in Traffic a Year</u>,

1

KTUV (Aug. 22, 2019), https://www.ktvu.com/news/bay-area-commuters-spend-over-100-hours-stuck-in-traffic-a-year. Plano, Texas is located conveniently. It is 21.5 miles from the Dallas/Fort Worth International Airport, a hub with many available flights and comparatively light traffic.

5.      Moving the case to California would also, in effect, cause state enforcers to adhere to Google's adhesive forum selection clauses. Private plaintiffs (including many of our members) must sue Google in the Northern District of California because our members are subject to non-negotiable forum selection clauses. The public enforcement action brought by Texas is not subject to such an agreement, nor should it be prejudiced by the contractual agreements that have forced private plaintiffs to file private claims in the Northern District of California, which is home to Google's corporate headquarters.

6.      The Eastern District of Texas is also a better forum than the Northern District of California in terms of its ability to hear the claims in this case most promptly, which is critical due to the precarious position of the news media industry. According to the most recent report from the National Judicial Center, this district has 654 pending cases per judgeship, compared to the Northern District of California's 870 pending cases per judgeship. This district has a lower median time to trial in civil cases (18.0 months) than the Northern District of California (44.5 months).

7.      Additional delays in this case would cause significant harm to news publishers. Advertising is the primary source of revenue by which news publishers maintain their operations. However, ad revenues have plummeted dramatically over the last two decades; between 2005 and 2018, news organizations saw their ad revenue fall by 70 percent. S&P Global, Newspapers Fighting for Survival as COVID-19 Ravages Ad Spending (Apr. 27, 2020), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/newspapers-fighting-for-survival-as-covid-19-ravages-ad-spending-58306183.   During

that same period, Google's ad revenue increased from approximately $6 billion to $116 billion, and Google's market capitalization increased from approximately $100 billion to $1 trillion.

8.      Due to the loss of online advertising revenue, a substantial portion of news publishers are suffering. Many have been forced to lay off significant portions of their workforce, leading to massive job losses across the news industry. This reality has only grown more challenging under COVID-19 and its attendant economic impact. See, e.g., Pew Rsch. Ctr., U.S. Newspapers Have Shed Half of their Newsroom Employees Since 2008 (Apr. 20, 2020), https://www.pewresearch.org/fact-tank/2020/04/20/u-s-newsroom-employment-has-dropped-by-a-quarter-since-2008/; S&P Global, Newspapers Fighting for Survival as COVID-19 Ravages Ad Spending (Apr. 27, 2020), https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/newspapers-fighting-for-survival-as-covid-19-ravages-ad-spending-58306.

9.      Local news organizations provide unique benefits and have been the hardest hit by the loss of ad revenue. These institutions provide major value to their communities, providing coverage of distinctly local information, from corruption by local officials, to catastrophic weather events, to COVID-19 vaccine distribution. Many local news organizations are cutting budgets, leaving communities with insufficient news coverage. Some communities have become "news deserts," and have no local coverage at all. Further damage to the local news industry will have a deleterious effect on local communities and on society in general.

10.     Potential monopolization and illicit agreements in the digital advertising industry directly affect the members of News Media Alliance. Allegations contained in the complaint suggest that news publishers have already suffered harms from the actions at issue in this case.

11.     The procedural delay following a transfer of this case to the Northern District of California would allow Google to cause further injury to our industry that cannot be remedied.

I declare that the foregoing is true and correct to the best of my knowledge.


Executed in Arlington, Virginia, this 1st day of February 2021.

_____

Danielle Coffey