IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 4:20-cv-957-SDJ |
| GOOGLE LLC, | § § | |
| Defendant. | § | |

## REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Transferring this case to the Northern District of California ("NDCA") would best serve "the convenience of [the] parties and witnesses, [and] the interest of justice." 28 U.S.C. § 1404(a). *Eight* class actions are pending in that court. Each, like this case, asserts antitrust claims related to Google's digital advertising business, so those issues will be litigated in NDCA, regardless of how the instant motion is resolved. These issues should not be litigated in this District at the same time.

Transfer would avoid duplicative litigation, allow for coordinated discovery, and minimize the risk of inconsistent results. It would also be more convenient for the most important witnesses. Plaintiffs do not attempt to refute these facts. Instead, they oppose transfer with a handful of potential customer witnesses, even though Google has thousands more customers in NDCA and Plaintiffs cannot show that Texas customers have been uniquely affected by the alleged conduct.

## I. Judicial Economy Clearly Weighs in Favor of Transfer.

"The existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (applying Fifth Circuit law). When Google first moved to transfer, five antitrust class actions were pending in NDCA that, like this case, accuse Google of monopolistic conduct related to digital advertising and seek both damages and injunctive relief on behalf of publishers and advertisers. *See* Mot. 1, 10-11. Three similar class actions have since been filed, further tilting the center of gravity toward NDCA. *See* Ex. B ¶¶ 9-11.[1] Seven of the cases have already been assigned to Judge Freeman, Exs. B10, B11, who "inten[ds] to consolidate all of the[] cases into a single action." Ex. B3. Transfer to NDCA would *increase* efficiencies by allowing a single judge to coordinate pre-trial proceedings, eliminating the duplication of effort from two judges having to grapple with the complexity of digital advertising, and mitigating the

---

[1] In addition, another similar case has been filed in West Virginia. Ex. B ¶ 12.

risk of inconsistent results, which would be especially problematic considering that the putative NDCA classes include the same customers on whose behalf Plaintiffs seek to recover damages.[2]

Plaintiffs do not deny that this case and the NDCA class actions overlap significantly. They argue only that the matters are not identical. But minor procedural differences and additional state law claims neither erase the "substantial overlapping issues" across cases that all allege antitrust violations related to digital advertising nor diminish the benefits that would flow from transferring this case to a court where eight closely overlapping cases are already pending. *See MAZ Encryption Techs., LLC v. BlackBerry Ltd.*, 2016 WL 9275009, at *2, *5 (E.D. Tex. July 14, 2016).[3]

Plaintiffs express concern that transfer would delay their case, Opp. 13, but any consolidation has the potential to incrementally delay one case or another, and Plaintiffs' desire to press for a duplicative complex trial in this District would disserve overall judicial economy. Transfer to NDCA would avoid the prospect of two federal courts plowing the same factual and legal ground, with possible inconsistent rulings along the way. *See Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 768 (E.D. Tex. 2009) ("While [Plaintiff] may be content trying two similar . . . actions in courts across the country, judicial economy will not bear that result.").

## II.    The Convenience of the Witnesses Clearly Weighs in Favor of Transfer.

Plaintiffs admit that "[t]he convenience of witnesses is probably the single most important

---

[2] *See ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, 2009 WL 2244468, at *11 (S.D. Tex. July 27, 2009) ("Should [these] cases be tried in different districts . . . the courts and juries deciding the legal and factual issues may arrive at inconsistent results."); *F.T.C. v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 29 (D.D.C. 2008) (granting transfer to "avoid subjecting a defendant to the grave risk of inconsistent judgments deriving from the same conduct").

[3] *See also* Ex. B9, at 3 (*In re Google Antitrust Litig.*, MDL No. 2981 (J.P.M.L. Feb. 5, 2021) (transferring case to NDCA, where 8 similar cases were pending, because "Google has its headquarters in [that] district, and represents that the vast majority of [the relevant] employees . . . are located there")); *In re Generic Pharm. Pricing Antitrust Litig.*, 2017 WL 4582710, at *1 (J.P.M.L. Aug. 3, 2017) (transferring parens patriae action for coordinated or consolidated pretrial proceedings with class actions because "all arise from the same factual core").

factor in the transfer analysis." Opp. 7. (quoting *Bride Ministries, NFP v. DeMaster*, 2020 WL 6822836, at *9 (E.D. Tex. Nov. 20, 2020)). Yet they ignore that NDCA is far more convenient than this District for the key witnesses at Google and at its competitors and that thousands more Google customers are located in NDCA than in this District.

Regarding party witnesses, of the 151 Google employees whose documents were referenced in the Complaint, none are located in this District, and many work in NDCA. *See* Mot. 4-5; Rope Decl. ¶¶ 4-11 & Ex. A. The majority of the others work in New York, and this Court has "not [been] convinced that traveling from . . . New York to this District is any more convenient than traveling to" California.[4] Before filing this case, Texas investigators attended depositions of ten Google employees. None is based in this District; six are based in California. Ex. A ¶ 3. Plaintiffs fail to identify a single Google employee who lives or works in Texas.

Regarding non-parties, Google's competitors are certain to be key witnesses because Plaintiffs allege that they were directly involved in or harmed by the alleged conduct. *See, e.g.*, Compl. ¶¶ 76, 77, 142, 171-96, 230, 260. Of the 13 competitors referenced in the Complaint, not one has an office in this District, and all have strong connections to NDCA. Mot. 5-6. Most importantly, Facebook—Google's counterparty to the agreement at issue in Count IV—is headquartered in NDCA. *See* Mot. 5; *see also* Ex. A ¶ 4; Ex. B ¶¶ 3, 5 (locations of signatories).

Unable to connect Google or its competitors to this District, Plaintiffs instead rely on potential customer witnesses representing a tiny fraction of Google's customers. But any company operating nationwide is bound to have some customers located nearby, so it would be more

---

[4] *See, e.g.*, *S.E.C. v. Rizvi*, 2010 WL 2949311, at *10 (E.D. Tex. July 2, 2010), *report and recommendation adopted*, 2010 WL 2949302 (E.D. Tex. July 23, 2010); *Lone Star Silicon Innovations LLC v. Micron Tech., Inc.*, 2017 WL 10221621, at *3 (E.D. Tex. Aug. 24, 2017) ("When a particular witness would be required to travel a significant distance regardless of the chosen venue, that witness is discounted for purposes of the analysis.").

relevant to ask where more customers could conveniently attend trial. The answer is clear. Google has 39,536 advertiser customers in NDCA, compared to 13,526 in this District. Ex. A ¶ 7. The relative disparity is even greater for publishers, with 198 in NDCA and just 6 in this District. *Id.*

Despite their 18-month investigation, Opp. 12, Plaintiffs have identified only *potential* witnesses,[5] and their "speculative identification" of third-party witnesses who may (or may not) testify "does not assist the Court . . . especially given the extensive time that [they have] had to develop such specificity." *Seven Networks, LLC v. Google LLC*, 2018 WL 4026760, at *4 (E.D. Tex. Aug. 15, 2018). And many of Plaintiffs' potential third-party witnesses are located far enough away—in Virginia, New York, London, and Paris, Opp. Exs. B-4, B-5, B-13, C, D, E—that there would be no material difference for them to fly to NDCA or this District. *See supra* note 4.

### III. None of the Other Public or Private Factors Weigh Against Transfer to NDCA.

*Access to Proof.* The key documents of Google and its competitors are more likely to be found in their NDCA offices than in this District. And the presence of documents "at the Office of the Attorney General in Austin" is irrelevant because, for whatever reason, Plaintiffs chose not to bring this case in the Western District of Texas. *See* Opp. 6.

*Court Congestion.* Docket congestion is the "most speculative" of the factors in the transfer analysis and "may not always tell the whole story." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (applying Fifth Circuit law). For this sprawling case—one that Plaintiffs' counsel has described as "perhaps the largest antitrust case in history," Ex. B4—"average" caseloads and

---

[5] *See* Opp. 6 (describing ten "potential third-party witnesses"); *id.* at 8 (describing three "industry associations that represent many more potential nonparty witnesses"); *id.* at 8 (citing Peterson Decl. (Ex. A) ¶ 3 (discussing "64 third-party witnesses" contacted during Plaintiffs' investigation, without specifying which (if any) would testify and admitting that only about half of them (34 of 64) are headquartered "closer" to this District than to NDCA)); Opp. 10 (citing Peterson Decl. (Ex. A) ¶ 4 & Ex. A-1 (listing 79 "potential third-party witnesses")).

"median" disposition times are simply not meaningful benchmarks. *See* Opp. 13. And reliance on such statistics is "slightly myopic in light of the potential for discovery and pretrial efficiencies should the cases be centralized" in NDCA. *ExpressJet*, 2009 WL 2244468, at *12.[6]

*Familiarity with Governing Law*. The Complaint includes four counts alleging federal antitrust violations, claims under the antitrust laws of nine states, and claims under the consumer protection laws of six states. Compl. ¶¶ 271-356. Plaintiffs assert that this Court is more familiar than NDCA with two of these nineteen claims: the Texas antitrust and consumer protection claims. But Texas's antitrust law should be "construed in harmony with . . . federal antitrust statutes," Tex. Bus. & Com. Code § 15.04, with which NDCA is equally familiar. Moreover, "applying the law of another jurisdiction within the United States poses no particular problem to any federal forum." *ExpressJet*, 2009 WL 2244468, at *13 (internal quotation marks omitted).

*Local Interest*. Plaintiffs concede that "Google's presence in NDCA obviously generates some local interest in that venue," Opp. 15, but they greatly understate how much more important this case is to NDCA than to this District. Indeed, compared to their counterparts in this District, publishers in NDCA receive *twenty-five times more* money from Google and advertisers in NDCA spend *one hundred times more* with Google. Ex. A ¶ 8. In the end, there is nothing unique about this District's interest in this case, and it would "eviscerat[e] the public interest" to find a localized interest that "could apply virtually to any judicial district or division in the United States." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 318 (5th Cir. 2008).

For these reasons, the Court should transfer this case to the Northern District of California.

---

[6] Further, Plaintiffs rely on data tainted by the global pandemic. Pre-COVID, the median case moved from filing to disposition faster in NDCA than here (8.2 months versus 9.2 months). *See* U.S. Courts, *Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2020),* available at https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2020/03/31 (last visited Feb. 4, 2021).

Dated: February 9, 2021                    Respectfully submitted,

*[signature: Paul Yetter]*

R. Paul Yetter
State Bar No. 22154200
Bryce L. Callahan
State Bar No. 24055248
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002
pyetter@yettercoleman.com
bcallahan@yettercoleman.com

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
(202) 777-4587
eric.mahr@freshfields.com
Julie.elmer@freshfields.com

John D. Harkrider (*pro hac vice*)
AXINN VELTROP & HARKRIDER, LLP
114 West 47th Street
New York, NY 10036
(212) 728-2210
jharkrider@axinn.com

Daniel S Bitton (*pro hac vice*)
AXINN VELTROP & HARKRIDER, LLP
560 Mission St.
San Francisco, CA 94105
(415) 490-1486
dbitton@axin.com

ATTORNEYS FOR DEFENDANT
GOOGLE LLC

-7-

### CERTIFICATE OF SERVICE

I certify that on this 9th day of February 2021, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

>                                   */s/ Bryce L. Callahan*
>                                   Bryce L. Callahan