IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 4:20-CV-957-SDJ |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |


**DEFENDANT GOOGLE LLC'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs' Amended Complaint reflects a deep misunderstanding of the digital advertising sector in general and Google's ad tech products and services in particular. The Amended Complaint also misstates the relevant framework set by America's antitrust laws. Plaintiffs' attempt to argue that Google has a monopoly in digital advertising depends upon gerrymandered market definitions that exclude Google's most significant competitors. And while antitrust laws are in place to promote *consumer welfare*, the 450 paragraphs of Plaintiffs' Amended Complaint say remarkably little about how this lawsuit would help consumers. That's because it would actually break many of the services that facilitate the kind of high-quality, relevant advertising that helps consumers connect with merchants and see a wide choice of goods and services. The government intervention sought by Plaintiffs would do significant harm to the many businesses, large and small, who choose to use Google's effective advertising services, with a ripple effect of unintended consequences.

Google's products have made it far easier for advertisers to place effective, user-friendly ads and for publishers to generate income from their content. Advertisers and publishers choose Google's ad tech products because of the quality of those products, not because they are forced to use them. Google's policies take into account the sometimes conflicting demands of publishers, advertisers, and consumers, in the interests of creating a level playing field in which the most useful ads are seen by the most relevant audiences. Google's hard work, innovation, and investment have simply created products that are better in many ways than competitors' offerings.

Even so, advertisers and publishers who choose not to use Google's ad tech products – or who want to use other products in addition to Google's – have a wide array of competitive alternatives available throughout the digital advertising sector.

In short, competition is working in digital advertising. Competition has made online ads

safer, more effective, and less intrusive to consumers. Entry and innovation are thriving, output is expanding, and ad quality is increasing. The last thing this competitive marketplace needs is radical government intervention that would harm consumers and businesses, especially in the form of Plaintiffs' extreme demands to "break up" a successful American company.

*     *     *

Defendant Google LLC ("Google") answers Plaintiffs' Amended Complaint as set forth below. Except to the extent specifically admitted herein, Google denies each and every allegation contained in the Amended Complaint, including all allegations contained in headings or otherwise not contained in one of the Amended Complaint's 450 numbered paragraphs. Google generally denies the legal claims asserted in the Amended Complaint and responds to the Amended Complaint's numbered paragraphs as follows.

## RESPONSE TO NUMBERED PARAGRAPHS

The section headings in the Amended Complaint do not require a response. To the extent that the section headings contain allegations requiring a response, Google denies all such allegations.

1.      Google admits that Plaintiffs' Amended Complaint seeks to assert various claims under federal and state laws, but denies that Plaintiffs have adequately stated a claim under any of those laws and denies that Google has violated any of those laws.

2.      Google admits that it was founded over twenty years ago and that its business has expanded beyond internet search over the past 20 years. Google denies the allegations in Paragraph 2 in all other respects.

3.      Google admits that its parent company, Alphabet, Inc., had revenue exceeding $161 billion in 2019, but denies that these allegations apply to Google LLC, the Defendant in this case. Google denies the allegations in Paragraph 3 in all other respects.

4.      Google admits that it operates an ad exchange used by advertisers and publishers and that it offers tools that advertisers can use to purchase display advertising inventory. Google denies the allegations in Paragraph 4 in all other respects.

5.      Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 5 in all other respects.

6.      Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 6 in all other respects.

7.      Google admits that it acquired DoubleClick in 2008. Google denies the allegations in Paragraph 7 in all other respects.

8.      Google admits the existence of an industry publication containing the quoted language, to which publication Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 8 in all other respects.

9.      Google admits the existence of a technology known as header bidding, and that header bidding was designed to allow publishers to send bid requests for their inventory to multiple exchanges and other demand sources and to evaluate the responses to such requests. Google denies the allegations in Paragraph 9 in all other respects.

10.     Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 10 in all other respects.

11.     Google admits that, beginning in 2016, it introduced a feature then known as "Exchange Bidding in Dynamic Allocation" that permitted multiple exchanges to participate in auctions within Google's services; that it had a project codenamed ██████; and the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 11 in all other respects.

12.     Google admits that Facebook is one of Google's largest competitors; that Facebook made an announcement about header bidding in March 2017; and that Facebook operates an ad network called the "Facebook Audience Network" or "FAN." Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third, fourth, and eighth sentences of Paragraph 12 and on that basis denies those allegations. Google denies the allegations in Paragraph 12 in all other respects.

13.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 13 and on that basis denies those allegations. Google denies the allegations in Paragraph 13 in all other respects.

14.     Google admits that it competes head-to-head with Facebook as bidders on behalf of their respective advertiser customers in auctions and that the internal codename for Google's

█████████████████████ with Facebook is ████████ Google denies the allegations in

Paragraph 14 in all other respects.

15.     Google denies the allegations in Paragraph 15.

16.     Google denies the allegations in Paragraph 16.

17.     Google admits that online advertising helps publishers be able to afford to create

and provide content to users, and that online advertising significantly contributes to enabling a free

and open internet. Google denies the allegations in Paragraph 17 in all other respects.

18.     Google denies the allegations in Paragraph 18.

19.     Google denies the allegations in Paragraph 19.

20.     Google denies the allegations in Paragraph 20.

21.     Google admits that Plaintiffs purport to bring this action in their respective

sovereign capacities, as *parens patriae*, and pursuant to Sections 4 and 16 of the Clayton Act.

Google denies the allegations in Paragraph 21 in all other respects and denies that this action serves

the citizens, general welfare, or economy of any of the Plaintiffs' respective States.

22.     Google admits it is a limited liability company organized and existing under the

laws of the State of Delaware, and that it maintains a Mountain View, California business address;

that it is a technology company that provides numerous internet-related products, including online

advertising technologies; and that it is a subsidiary of XXVI Holdings Inc., which is a subsidiary

of Alphabet Inc., a publicly traded company that is incorporated and existing under the laws of the

State of Delaware and that maintains its principal executive offices in Mountain View, California.

Google denies the allegations in Paragraph 22 in all other respects.

23.     Paragraph 23 contains legal conclusions to which no response is required, to the

extent a response is deemed necessary, Google does not dispute federal subject matter jurisdiction.

24.     Google admits that Plaintiffs' Amended Complaint seeks to assert various claims under federal and state laws, but denies that Plaintiffs have adequately stated a claim under any of those laws and denies that Google has violated any of those laws. Google denies the allegations in Paragraph 24 in all other respects.

25.     Paragraph 25 contains legal conclusions to which no response is required; to the extent a response is deemed necessary, Google denies the allegations in Paragraph 25.

26.     Google does not dispute—for purposes of this action only—the personal jurisdiction of this Court and admits that it is engaged in interstate trade and commerce.

27.     Google admits that venue is proper in the Eastern District of Texas for purposes of this particular action under Section 12 of the Clayton Act, 15 U.S.C § 22 and 28 U.S.C. § 1391, but not that it is convenient or in the interests of justice under 28 U.S.C. § 1404(a). Google denies the allegations in Paragraph 27 in all other respects.

28.     Google admits that the internet revolutionized the way people consume content and expanded the opportunities for companies to advertise. Google denies the allegations in Paragraph 28 in all other respects.

29.     Google denies the allegations in Paragraph 29.

30.     Google admits that online publishers sell their inventory to advertisers both directly and indirectly, including through advertising marketplaces; that "direct" sales are those in which a publisher sells its ad inventory directly to advertisers; that such direct sales can include sales through the publisher's internal sales team and the publisher's private auctions. Google further admits that a publisher's inventory is, in part, a function of the number of user visits to the relevant website and that a publisher may not always be able to predict the number of potential ad impressions it can sell directly. Google denies the allegations in Paragraph 30 in all other respects.

31.     Google admits that indirect sales can occur through "ad exchanges" and through "networks" of publishers and advertisers, and that in addition to or as an alternative to direct sales, publishers can let ad exchanges auction their inventory in real-time and keep a portion of the proceeds in return. Google denies the allegations in Paragraph 31 in all other respects.

32.     Google admits that online publishers can sell advertising either directly or indirectly. Google denies the allegations in Paragraph 32 in all other respects.

33.     Google admits that some publishers' inventory can be viewed as heterogeneous and that the value of different ad units can differ and will depend on a variety of factors including the audience. Google denies the allegations in Paragraph 33 in all other respects.

34.     Google denies the allegations in Paragraph 34.

35.     Google admits that publishers use a variety of products and services to help sell their display ad inventory, that advertisers use a variety of products and services to help purchase display ad inventory; and that ad servers, the marketplaces that match buyers and sellers, and ad buying tools are among the products that publishers use to help sell their display ad inventory and that advertisers use to purchase display inventory from, among other sources, ad exchanges. Google denies the allegations in Paragraph 35 in all other respects.

36.     Google admits that ad servers can help track and sell a publisher's ad inventory through both direct and indirect channels to allow the publisher to attempt to maximize its revenue or achieve other goals and that some publishers use a single ad server. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 36 and on that basis denies those allegations. Figure 1 purports to describe display ad space on an online publisher's website, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 1 presents a fair, accurate, and complete

description of the matters described therein and, on that basis, denies the allegations contained in Figure 1 in Paragraph 36. Google denies the allegations in Paragraph 36 in all other respects.

37.     Google admits that publishers choose to use ad servers to advance their own interests. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 37 as to what "publishers … rely on." Google denies the allegations in Paragraph 37 in all other respects.

38.     Google admits that publisher ad servers perform a number of functions to enable them to select appropriate advertising for each page impression; that ad servers may receive browser cookies and that, depending on a user's settings, such cookies may subsequently be correlated with a profile; that browser cookies can be used to limit the number of times a user is shown a particular ad to avoid oversaturating the user; that cookies can be used as part of the process of measuring ad campaigns' effectiveness; and that some ad campaign billing models, such as cost-per-conversion, charge advertisers based on a specified user action. Google denies the allegations in Paragraph 38 in all other respects.

39.     Google admits that publishers can configure their indirect sales channels in their publisher ad server configurations; that publishers can route their inventory to multiple different exchanges and networks; and that publishers can configure how various exchanges and networks can access and compete for the publishers' inventory through their ad servers. Google denies the allegations in Paragraph 39 in all other respects.

40.     Google admits that ad servers generally are responsible for selecting, in accordance with the publisher's preferences, the ads or ad providers for a particular page impression from among candidates identified through a publisher's direct and indirect sales channels. Google further admits that ad impressions have different values, with some higher value than others.

Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 40 and on that basis denies those allegations. Figure 2 purports to describe how a website's ad server manages and routes ad space, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 2 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 2 in Paragraph 40. Google denies the allegations in Paragraph 40 in all other respects.

41.     Google denies the allegations in Paragraph 41.

42.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 42 and on that basis denies those allegations. Google denies the allegations in Paragraph 42 in all other respects.

43.     Google admits that Google Ad Manager's ad serving functionality is the successor to an ad server product that Google acquired as part of its 2008 acquisition of DoubleClick. Google further admits that, in 2011, it acquired Admeld Inc., which offered software that helped publishers optimize the yield from their display advertising inventory. Google denies the allegations in Paragraph 43 in all other respects.

44.     Google admits that many online publishers in the United States sell some of their inventory to advertisers indirectly through exchanges and networks. Google denies the allegations in Paragraph 44 in all other respects.

45.     Google admits that ad exchanges match buyers and sellers of display ads on an impression-by-impression basis in real time, typically through an auction mechanism; that a publisher's ad server can route the publisher's inventory to ad exchanges in real time; that advertisers can connect with ad exchanges through ad buying tools, among other means; and that

many advertisers do not bid directly on ad exchanges. Figure 3 purports to describe how an exchange transacts with online publishers and advertisers through ad servers and buying tools, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 3 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 3 in Paragraph 45. Google denies the allegations in Paragraph 45 in all other respects.

46.     Google denies the allegations in Paragraph 46.

47.     Google admits it operates an ad exchange used by many advertisers and publishers, which previously was known as DoubleClick Ad Exchange or "AdX." Google denies the allegations in Paragraph 47 in all other respects.

48.     Google admits that it retains a percentage of the clearing price of transactions on its ad exchange that varies based on a number of factors including publisher and transaction type. Google denies the allegations in Paragraph 48 in all other respects.

49.     Google denies the allegations in Paragraph 49.

50.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 50 in all other respects.

51.     Google denies the allegations in Paragraph 51. Figure 4 purports to describe how an ad server routes to many exchanges, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 4 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 4 in Paragraph 51.

52.     Google denies the allegations in Paragraph 52.

53.     Google admits that there are ad networks that primarily sell web display inventory and others that primarily sell in-app inventory, and that it operates ad networks that primarily handle display inventory and networks that primarily handle in-app inventory. Google denies the allegations in Paragraph 53 in all other respects.

54.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents and that its AdSense for Content service typically retains a 32% revenue share (paying 68% to the publishers), which is higher than the revenue share typically retained by Google's ad exchange. Google denies the allegations in Paragraph 54 in all other respects.

55.     Google admits that it operates AdMob, an ad network that sells in-app inventory on behalf of mobile app developers; that Facebook Audience Network (FAN) is one of Google's major competitors; and that Google and Facebook compete in ways that include, but are not limited to, connecting third-party app publishers selling inventory to interested advertisers. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 55 and on that basis denies those allegations. Google denies the allegations in Paragraph 55 in all other respects.

56.     Google admits that many web and app publishers use Google's ad exchange and ad networks. Figure 5 purports to describe how Google's ad server controls routing functions to competing exchanges and networks, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 5 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 5 in Paragraph 56. Google denies the allegations in Paragraph 56 in all other aspects.

57.     Google admits that publishers use publisher ad servers to facilitate their advertising sales and advertisers use tools to facilitate their advertising purchases; that advertisers of all sizes use demand-side platforms ("DSPs"); and the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 57 in all other aspects.

58.     Google admits that some ad buying tools let advertisers set parameters about their purchasing preferences, such as the types of users they want to reach and the maximum bids they are willing to submit for various types of display ad inventory. Google further admits that some ad buying tools use the advertiser's configurations to automatically bid on ad space in exchanges and networks. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 58 and on that basis denies those allegations. Google denies the allegations in Paragraph 58 in all other aspects.

59.     Google admits that different buying tools have different features and requirements suitable to different users; that some advertisers outsource their ad purchasing to ad agencies; that buying tools charge different prices, in part due to differences in their features; and that Google Ads does not impose a minimum spending requirement on advertisers. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth and fifth sentences of Paragraph 59 and on that basis denies those allegations. Figure 6 purports to describe how small advertisers can use the Google Ads buying tool to set their bids, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 6 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies

the allegations contained in Figure 6 in Paragraph 59. Google denies the allegations in Paragraph 59 in all other respects.

60.     Google admits that when a user visits a publisher's website, an ad server may route the publisher's available impressions to exchanges along with information about the impression, including the user ID, the parameters of the ad slot, and any rules about pricing; that ad exchanges send "bid requests" to eligible bidders; that the bid requests sent by Google's ad exchange often include information about the impression and how long bidders have to respond with their bid response; that ad buying tools must evaluate the bid request, determine whether they want to bid on behalf of particular advertisers and, if so, how much, and return the bid response to the exchange before the timeout expires (which is often less than a second); that exchanges in general must, at some point, close the auction and choose a winner from the bids received; that ad servers generally are responsible for selecting, in accordance with the publisher's preferences, the ads or ad providers for a particular page impression from among candidates identified through a publisher's direct and indirect sales channels; that users could see an ad adjacent to the content they are reading; and that real-time auctions happen every minute of every day for millions of Americans browsing the internet. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fifth sentences of Paragraph 60 and on that basis denies those allegations. Figure 7 purports to describe how an exchange solicits bids from advertisers' buying tools, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 7 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 7 in Paragraph 60. Google denies the allegations in Paragraph 60 in all other respects.

61.     Google denies the allegations in Paragraph 61.

62.     Google admits that it offers ad buying tools that are suitable for advertisers of all sizes; that it offers an ad buying tool known as Display & Video 360 ("DV360") that is used by advertisers of all sizes, and which is derived in part from Google's acquisition of Invite Media; that advertisers of all sizes may purchase advertisements through Google Ads; and that advertisers pay fees for many of the different services Google offers, and these fees may be subject to negotiation and therefore may vary among customers. Google denies the allegations in Paragraph 62 in all other respects.

63.     Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 63 in all other respects.

64.     Google admits that many of the bids submitted by Google Ads and DV360 are algorithmically determined, based on the advertiser's preferences and constraints; that it describes its services' operations and policies to its customers; and the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 64 in all other respects.

65.     Google admits that publisher ad servers can help publishers manage their online display advertising inventory, including but not limited to image-based graphical ads alongside web content and that many publisher ad servers provide, to varying degrees and in varying ways, the listed features. Google denies the allegations in Paragraph 65 in all other respects.

66.     Google admits that many publishers use one ad server at a time to manage their web display inventory and that a publisher may, for a variety of reasons, use more than one ad server. Google lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in the first sentence of Paragraph 66 and on that basis denies those allegations. Google denies the allegations in Paragraph 66 in all other respects.

67.     Google denies the allegations in Paragraph 67.

68.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 68 in all other respects.

69.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 69 and on that basis denies those allegations. Google denies the allegations in Paragraph 69 in all other respects.

70.     Google admits that some large publishers such as those listed use publisher ad servers and that some customers' expected direct sales volume may affect their choice of products. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 70 in all other respects.

71.     Google denies the allegations in Paragraph 71.

72.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 72 and on that basis denies those allegations. Google denies the allegations in Paragraph 72 in all other respects.

73.     Google admits that ad servers have entered and exited since 2012. Google denies the allegations in Paragraph 73 in all other respects.

74.     Google admits that the existence of competition from other publisher ad servers was among the arguments Google presented to the FTC in connection with its proposed acquisition of DoubleClick. Google denies the allegations in Paragraph 74 in all other respects.

75.     Google admits that ad servers can charge fees for their services and that some header bidding implementations may not have an associated fee. Google denies the allegations in Paragraph 75 in all other respects.

76.     Google denies the allegations in Paragraph 76.

77.     Google admits, on information and belief, the existence of an industry publication containing portions of the quoted language, to which publication Google refers the Court for a complete and accurate statement of its contents. Google further admits that there may be some costs or inconveniences in replacing one publisher ad server with another for the same webpage. Google denies the allegations in Paragraph 77 in all other respects.

78.     Google denies the allegations in Paragraph 78.

79.     Google admits that ad exchanges auction multiple publishers' display inventory to multiple end-advertisers, including through intermediaries such as demand-side platforms or trading desks, on an impression-by-impression basis and in real time; that exchanges generally interoperate with or are integrated with publishers' ad servers, including but not limited to Google Ad Manager; and that advertisers typically interact with ad exchanges through ad networks, buying tools, or other intermediaries. Google denies the allegations in Paragraph 79 in all other respects.

80.     Google admits that ad exchanges generally do not bear inventory risk. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth, fifth, and seventh sentences of Paragraph 80 and on that basis denies those allegations. Google denies the allegations in Paragraph 80 in all other respects.

81.     Google admits that different publishers use exchanges and networks in different proportions. Google lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in the second sentence of Paragraph 81 and on that basis denies those allegations. Google denies the allegations in Paragraph 81 in all other respects.

82.     Google admits that different ad exchanges, publisher ad servers, ad networks, and ad buying tools may have different features and pricing. Google denies the allegations in Paragraph 82 in all other respects.

83.     Google admits that buying or selling inventory directly may involve a sales team or automated sales interface; that publishers and advertisers may (but need not) rely on internal staff to manage their relationships; and that the expected value of inventory can be a factor that publishers consider in determining an ad sales strategy. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the sixth, seventh, eighth, and ninth sentences of Paragraph 83 and on that basis denies those allegations. Google denies the allegations in Paragraph 83 in all other respects.

84.     Google denies the allegations in Paragraph 84.

85.     Google admits that Google's ad exchange has facilitated many transactions among advertisers and publishers since 2013. Google denies the allegations in Paragraph 85 in all other respects.

86.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 86 and on that basis denies those allegations. Google denies the allegations in Paragraph 86 in all other respects.

87.     Google admits that Magnite, AT&T's Xandr, and Index Exchange, among many others, all operate ad exchanges with which Google competes. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first (except as

admitted above) and second sentences of Paragraph 87 and on that basis denies those allegations. Google denies the allegations in Paragraph 87 in all other respects.

88.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 88 and on that basis denies those allegations. Google denies the allegations in Paragraph 88 in all other respects.

89.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google further admits that its revenue share varies across transaction types and customers. Google denies the allegations in Paragraph 89 in all other respects.

90.     Google admits that Google's revenue share varies across transaction types and customers, ███████████████████████████████████████████████. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 90 and on that basis denies those allegations. Google denies the allegations in Paragraph 90 in all other respects.

91.     Google admits that generally speaking an ad exchange is more attractive to advertisers as more publishers use it, and more attractive to publishers as more advertisers use it. Google denies the allegations in Paragraph 91 in all other respects.

92.     Google admits that ad networks match ad inventory for publishers of different sizes with advertisers; that networks can, but do not always, carry inventory risk by purchasing impressions on their own behalf as opposed to on the direct behalf of a specific advertiser or advertiser representative; and that networks provide varying degrees of price transparency on a per-impression basis. Google denies the allegations in Paragraph 92 in all other respects.

93.     Google admits that there is no monthly page view or impression requirement for publishers that sell ad inventory via the AdSense for Content ad network. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 93 and on that basis denies those allegations. Google denies the allegations in Paragraph 93 in all other respects.

94.     Google denies the allegations in Paragraph 94.

95.     Google denies the allegations in Paragraph 95.

96.     Google admits the existence of a document containing substantially the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google further admits that many publishers, large and small, use Google's ad networks. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of Paragraph 96, and on that basis denies those allegations. Google denies the allegations in Paragraph 96 in all other respects.

97.     Google admits that publishers receive 68% of the gross revenue from sales made via the ad network AdSense for Content. Google further admits the existence of a document containing the language quoted in the third and fourth sentences of Paragraph 97, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 97 in all other respects.

98.     Google denies the allegations in Paragraph 98.

99.     Google admits that publishers use publisher ad servers to facilitate their advertising sales; that advertisers use tools to facilitate their advertising purchases; that some ad buying tools let advertisers set parameters about their purchasing preferences, such as the types of users they wish to reach and the maximum bids they are willing to submit and pay for particular types of

display inventory; and that some ad buying tools use the advertiser's configurations to automatically bid on ad space in exchanges and networks. Google denies the allegations in Paragraph 99 in all other respects.

100.    Google admits that advertisers of all sizes use demand-side platforms ("DSPs"). Google denies the allegations in Paragraph 100 in all other respects.

101.    Google admits that different buying tools can have different features and requirements suitable to different users; that some advertisers outsource their ad purchasing to ad agencies; and that different buying tools can charge different prices, in part due to differences in their features. Google denies the allegations in Paragraph 101 in all other respects.

102.    Google admits that different buying tools may charge different prices, in part due to differences in their features; that Google Ads does not impose a minimum spending requirement on advertisers; and that, in 2020, Google Ads had thousands of customers with average monthly spend on web display inventory of less than $250. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third (except insofar as admitted above), fourth (except insofar as admitted above), fifth, and sixth sentences of Paragraph 102 and on that basis denies those allegations. Google denies the allegations in Paragraph 102 in all other respects.

103.    Google admits that advertisers of all types and sizes use automated tools to bid on and purchase ad inventory, including ad inventory trading on ad exchanges and ad networks. Google denies the allegations in Paragraph 103 in all other respects.

104.    Google admits that different ad exchanges and ad networks provide different types of interfaces for advertisers, including for the purchase of inventory. Google denies the allegations in Paragraph 104 in all other respects.

105.     Google denies the allegations in Paragraph 105.

106.     Google admits that advertisers of all types and sizes use automated tools to bid on and purchase ad inventory, including inventory sold on ad exchanges and ad networks; and that advertisers use buying tools to achieve their advertising goals. Google denies the allegations in Paragraph 106 in all other respects.

107.     Google denies the allegations in Paragraph 107.

108.     Google denies the allegations in Paragraph 108.

109.     Google admits that advertisers of all types and sizes use automated tools to bid on and purchase ad inventory, including inventory sold on ad exchanges and ad networks. Google denies the allegations in Paragraph 109 in all other respects.

110.     Google admits that advertisers using Google Ads purchase ███████████ of the impressions in Google's Ad Exchange and on AdSense for Content, which percentage varies from month to month and year to year. Google denies the allegations in Paragraph 110 in all other respects.

111.     Google admits that it retains a percentage of the clearing price of transactions on its ad exchange that varies based on a number of factors including publisher and transaction type. Google denies the allegations in Paragraph 111 in all other respects.

112.     Google denies the allegations in Paragraph 112.

113.     Google admits that buying tools provide varying types of measurement functionality to assess audience reach. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fifth sentence of Paragraph 113 and on that basis denies those allegations. Google denies the allegations in Paragraph 113 in all other respects.

114.    Google admits that online instream ads occur within the video stream of a video that the user is already watching (e.g., a video ad before, during, or after a YouTube video) while outstream ads are ads that occur when the end-user is scrolling through other content (e.g., a video ad that automatically plays when scrolling through an article) and that advertisers can use various advertising formats to achieve their campaign goals. Google denies the allegations in Paragraph 114 in all other respects.

115.    Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third, fourth, and fifth sentences of Paragraph 115 and on that basis denies those allegations. Google denies the allegations in Paragraph 115 in all other respects.

116.    Google denies the allegations in Paragraph 116.

117.    Google denies the allegations in Paragraph 117.

118.    Google admits that ad exchanges were in use prior to 2009 and that both prior to and after its acquisition of DoubleClick, it has faced continual competition from multiple well-funded rivals. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth and fifth sentences of Paragraph 118 and on that basis denies those allegations. Google denies the allegations in Paragraph 118 in all other respects.

119.    Google admits that in 2009, many advertisers used AdWords to bid on display ad space. Google denies the allegations in Paragraph 119 in all other respects.

120.    Google admits that the service previously known as AdWords is now known as Google Ads. Google lacks knowledge and information sufficient to form a belief as to the truth of

the allegations in the third, fourth, and fifth sentences of Paragraph 120 and on that basis denies those allegations. Google denies the allegations in Paragraph 120 in all other respects.

121. Google admits that advertisers can purchase Google Search ads on Google Ads; Google further admits that the marginal cost of selling display advertising to an additional advertiser is low. Google lacks knowledge or information sufficient to form a view as to the truth of the allegations in the sixth sentence of Paragraph 121 insofar as they relate to the finances of a competitor and on that basis denies those allegations.  Google denies the allegations in Paragraph 121 in all other respects.

122. Figure 8 purports to describe Google's ad buying tool for small advertisers, to which no response is required; to the extent a response is deemed necessary, Google denies that Figure 8 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 8 in Paragraph 122. Google denies the allegations in Paragraph 122 in all other respects.

123. Google admits that Google Ads bids on Google's ad exchange on behalf of advertisers. Google further admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 123 in all other respects.

124. Google denies the allegations in Paragraph 124.

125. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 125 in all other respects.

126. Google lacks knowledge and information sufficient to form a belief as to the truth

of the allegations in the third sentence of Paragraph 126. Google denies the allegations in Paragraph 126 in all other respects.

127.    Google admits the existence of a Wall Street Journal article containing the quoted language, to which article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 127 in all other respects.

128.    Google admits that from 2008 to the present, Google's ad exchange and ad server products have faced significant competition. Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the fifth sentence of Paragraph 128. Google denies the allegations in Paragraph 128 in all other respects.

129.    Google admits that beginning in approximately 2016, Google Ads began bidding on display ad inventory on non-Google ad exchanges on behalf of advertisers. Google denies the allegations in Paragraph 129 in all other respects.

130.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 130 in all other respects.

131.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 131 in all other respects.

132.    Google admits that there is an industry practice known as "waterfalling" that involves sequentially offering inventory to multiple exchanges, networks, or other sources of demand. Google denies the allegations in Paragraph 132 in all other respects.

133.    Google admits that it is possible for one ad exchange to receive higher bids for an ad impression than another ad exchange. Google denies the allegations in Paragraph 133 in all other respects.

134.    Google admits that ad exchanges compete on a variety of dimensions with a variety of advertising sales channels and sources of ad inventory. Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 134, insofar as they relate to the financial sector, and the third and fourth sentences, insofar as they related to securities exchanges, and on that basis denies those allegations. Google denies the allegations in Paragraph 134 in all other respects.

135.    Google admits that its publisher ad server originally known as DoubleClick for Publishers included a feature known as "dynamic allocation" that was designed to compare real-time bids received through Google's ad exchange with a publisher's estimate of its yield from other channels, so as to maximize the publisher's revenue. Google denies the allegations in Paragraph 135 in all other respects.

136.    Google admits that while dynamic allocation only supported the DoubleClick ad exchange (both before and after Google acquired DoubleClick), publishers could configure an estimated or contracted CPM for any other non-guaranteed demand source, including exchanges or networks, and that many publishers use and used an exchange's historical performance when determining the expected value to configure for that exchange for a particular ad impression. Google denies the allegations in Paragraph 136 in all other respects.

137.    Google admits that prior to Google's acquisition of DoubleClick and subsequently, DFP (and now Google Ad Manager) selected ads or ad providers based on a number of factors,

including the publisher's configured preferences and the feature that became known as dynamic allocation. Google denies the allegations in Paragraph 137 in all other respects.

138.     Google denies the allegations in Paragraph 138.

139.     Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 139 in all other respects.

140.     Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 140 in all other respects.

141.     Google admits the existence of a document containing the language quoted in the third sentence of Paragraph 141 and of an industry publication containing the language quoted in the sixth sentence of Paragraph 141, to which document and publication Google refers the Court for a complete and accurate statement of their contents. Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 141. Google denies the allegations in Paragraph 141 in all other respects.

142.     Google admits that Google Ad Manager manages publishers' heterogenous inventory and maximizes inventory yield; and that it encrypts cookie identifiers before sharing with third party buyers on its ad exchange to ensure user privacy, while still allowing authorized recipients to associate an encrypted identifier's previous activity with the current request. Google denies the allegations in Paragraph 142 in all other respects.

143.     Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google further admits its use of confidential, non-public publisher data is and was subject to the

restrictions in its contracts with the respective publishers. Google denies the allegations in Paragraph 143 in all other respects.

144.    Google admits that cookies (including hashed or encrypted cookie identifiers) help publishers with measurement, reaching users, and frequency capping, and that impressions without associated cookies or alternative means of understanding what may be relevant to users can have lower value when sold on an exchange (which one study estimated could be approximately 50% less). Google denies the allegations in Paragraph 144 in all other respects.

145.    Google admits that it hashes or encrypts the cookie identifiers it shares with third parties in connection with publishers' impressions, such that such identifiers are unique to a given third party; and that the encrypted cookie identifiers shared with publishers and advertisers differ. Google denies the allegations in Paragraph 145 in all other respects.

146.    Google denies the allegations in Paragraph 146.

147.    Google denies the allegations in Paragraph 147.

148.    Google denies the allegations in Paragraph 148.

149.    Google admits that ███████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████. Google denies the allegations in Paragraph 149 in all other respects.

150.    Google admits that its ad exchange supports a feature called ██████████
██████████ and that, if enabled by the publisher, ██████████████████████
████████████████████████████████████████████████████████████████
██████████. Google denies the allegations in Paragraph 150 in all other respects.

151.    Google admits that ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████. Google further admits that █████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████. Google denies the

allegations in Paragraph 151 in all other respects.

152.    Google denies the allegations in Paragraph 152.

153.    Google admits that advertisers buying through networks, demand-side platforms, or other buying tools participating on Google's ad exchange win auctions when they have the highest net bid (including a net bid higher than those of advertisers using Google's buying tools); that ████████████████████████████████████████████████████; the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents; that, according to at least one Google study, the ██████████████████████████████████████████; and that the figure in Paragraph 153 contains a screenshot of the cover page of a 2013 internal Google presentation on ████████████. Google denies the allegations in Paragraph 153 in all other respects.

154.    Google denies the allegations in Paragraph 154.

155.    Google admits that it uses a variety of programs to improve the auction performance of its various products and services for the benefit of advertisers and publishers; that those

programs consequently increase Google's revenue; and that the figures alleged in Paragraph 155 reflect the approximate increase in Google's revenue from certain of those programs.  Google denies the allegations in Paragraph 155 in all other respects.

156.    Google denies the allegations in Paragraph 156.

157.    Google admits that higher advertising revenue can permit publishers to offer consumers better quality content and lower-priced or free access to their content.  Google denies the allegations in Paragraph 157 in all other respects.

158.    Google denies the allegations in Paragraph 158.

159.    Google admits that it entered into an agreement to allow WhatsApp users to backup their WhatsApp data to Google Drive. Google denies the allegations in Paragraph 159 in all other respects.

160.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160 regarding ███████████████████ and WhatsApp's encryption timeline, and on that basis denies those allegations. Google denies the allegations in Paragraph 160 in all other respects.

161.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161, and on that basis denies those allegations. The image at the end of Paragraph 161 contains a partial screenshot of the WhatsApp mobile application, to which no response is required; to the extent a response is deemed necessary, Google denies that the image presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in that image. Google denies the allegations in Paragraph 161 in all other respects.

162.     Google admits that some consumers value encryption as one feature of communications applications. Google denies the allegations in Paragraph 162 in all other respects.

163.     Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 163 in all other respects.

164.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 164 in all other respects.

165.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 165 in all other respects.

166.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 166 in all other respects.

167.     Google admits the existence of a blog post containing the quoted language, to which blog post Google refers the Court for a complete and accurate statement of its contents.  Google denies the allegations in Paragraph 167 in all other respects.

168.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 168 in all other respects.

169.     Google admits the existence of documents containing the figures cited in Paragraph 169, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 169 in all other respects.

170.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 170 in all other respects.

171.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 171 in all other respects.

172.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 172 in all other respects.

173.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 173 in all other respects.

174.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 174 in all other respects.

175.    Google denies the allegations in Paragraph 175.

176.    Google admits that Google Ad Manager implements a feature originally known as Enhanced Dynamic Allocation ("EDA"); that many publishers have historically sold many of their most valuable impressions directly to advertisers; and that EDA permits non-guaranteed demand in Google Ad Manager (including both demand from Google's ad exchange and third-party exchanges) to compete simultaneously with guaranteed line items in Google Ad Manager when the revenue to be derived from the non-guaranteed option was higher than the opportunity cost of

not serving the guaranteed line item (without risking the fulfillment of the guarantee). Google denies the allegations in Paragraph 176 in all other respects.

177.    Google admits that when a directly-sold guaranteed line item is configured in its Google Ad Manager ad server, the Google Ad Manager ad server uses its best efforts to allocate impressions to that advertiser so as to meet the criteria specified by the publisher. Google further admits that, prior to the implementation of EDA, when such a guaranteed line item was eligible for an impression, the ad server did not consider alternative, non-guaranteed line items or bids, even if they might have had a higher price; and that when EDA applies to an impression, Google's ad server now considers whether selling a given impression on a non-guaranteed basis is likely to increase the publisher's overall revenue, even if a guaranteed line item would also be eligible to fill the impression, if it can do so without risking the fulfilment of the guarantee. Google denies the allegations in Paragraph 177 in all other respects.

178.    Google denies the allegations in Paragraph 178.

179.    Google denies the allegations in Paragraph 179.

180.    Google admits that EDA causes a non-guaranteed line item to win an impression only when the highest bid is greater than the floor price. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 180 in all other respects.

181.    Google denies the allegations in Paragraph 181.

182.    Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 182 in all other respects.

183.    Google denies the allegations in Paragraph 183.

184.    Google admits that it retains a percentage of the clearing price of transactions on its ad exchange that varies based on a number of factors including publisher and transaction type. Google denies the allegations in Paragraph 184 in all other respects.

185.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 185 and on that basis denies those allegations. Google denies the allegations in Paragraph 185 in all other respects.

186.    Google admits that publishers can implement header bidding by inserting code into the HTML header of their webpages and that header bidding can enable bid requests to multiple exchanges and other demand sources. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 186 and on that basis denies those allegations. Google denies the allegations in Paragraph 186 in all other respects.

187.    Google admits that publishers route their inventory through multiple exchanges. Google denies the allegations in Paragraph 187 in all other respects.

188.    Google admits that there has been an evolution of technologies seeking to maximize publishers' yield, including waterfalling, dynamic allocation, and enhanced dynamic allocation. Google further admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the first, fifth, and seventh sentences of Paragraph 188. Google denies the allegations in Paragraph 188 in all other respects.

189.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 189 in all other respects.

190.    Google admits that consumers benefit from goods and services that are lower priced and of higher quality. Google denies the allegations in Paragraph 190 in all other respects.

191.    Google denies the allegations in Paragraph 191.

192.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 192 in all other respects.

193.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 193 in all other respects.

194.    Google admits it competes directly with Amazon and Facebook. Google denies the allegations in Paragraph 194 in all other respects.

195.    Google denies the allegations in Paragraph 195.

196.    Google admits that Exchange Bidding was later renamed Open Bidding; that Exchange Bidding was codenamed ███; that it designed Exchange Bidding to solve many of the problems associated with header bidding; and that it evaluated the success of the program by, among other things, ████████████████████████████████████████ ███████. Google denies the allegations in Paragraph 196 in all other respects.

197.    Google admits that, in an effort to better protect user privacy, Open Bidding provides exchanges with less direct access to user information than they can obtain through header bidding. Google denies the allegations in Paragraph 197 in all other respects.

198.    Google admits that it retains a revenue share of 5-10% for transactions matched through Open Bidding as consideration for the value provided by Google's service. Google further admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 198 in all other respects.

199.    Google denies the allegations in Paragraph 199.

200.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. The image at the end of Paragraph 200 contains a partial screenshot of a document, to which no response is required; to the extent a response is deemed necessary, Google denies that the image presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in that image. Google denies the allegations in Paragraph 200 in all other respects.

201.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 201 in all other respects.

202.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 202 in all other respects.

203.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth, fifth, and sixth sentences of Paragraph 203, and on that basis denies those allegations. Google denies the allegations in Paragraph 203 in all other respects.

204.     Google admits that in March 2017, Facebook published a blog post indicating that mobile web publishers who use header bidding would be able to join its Facebook Audience Network through approved partners or through open-source header bidding solutions; that one of the ways that ad networks can transact with publishers using Google's Ad Manager or AdMob platforms is to submit bids into ad exchanges; and that its contracts with many publishers set a revenue share in the alleged range for certain transaction types on its Google Ad Manager ad exchange. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 204 and on that basis denies those allegations. Google lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations in the sixth sentence of Paragraph 204, and on that basis, denies those allegations. Google denies the allegations in Paragraph 204 in all other respects.

205.     Google denies the allegations in Paragraph 205.

206.     Google admits the existence of articles containing the quoted language, to which articles Google refers the Court for a complete and accurate statement of their contents. Google lacks knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 206, and on that basis, denies those allegations. Google denies the allegations in Paragraph 206 in all other respects.

207.     Google admits that ███████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Google lacks knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 207 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 207 in all other respects.

208.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 208 in all other respects.

209.    Google lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 209, and on that basis, denies those allegations.

210.    Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 210 and on that basis denies those allegations. Google denies the allegations in Paragraph 210 in all other respects.

211.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents, and the existence of documents containing ████████████████████████████. Google denies the allegations in Paragraph 211 in all other respects.

212.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 212 and on that basis denies those allegations. Google denies the allegations in Paragraph 212 in all other respects.

213.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 213 in all other respects.

214.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 214 and on that basis denies those allegations. Google denies the allegations in Paragraph 214 in all other respects.

215.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 215 and on that basis denies those allegations. Google denies the allegations in Paragraph 215 in all other respects.

216.    Google admits the existence of a September 2018 Google-Facebook agreement and that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Google denies the allegations in Paragraph 216 in all other respects.

217.    Google admits that the internal codename for ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ The image following Paragraph 217 appears to be ████████████████████████████████, to which no response is required; to the extent a response is deemed necessary, Google denies that image at the end of Paragraph 217 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in the image at the end of Paragraph 217. Google denies the allegations in Paragraph 217 in all other respects.

218.    Google admits the existence of a document containing substantially the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 218 and on that basis denies those allegations. Google denies the allegations in Paragraph 218 in all other respects.

219.    Google admits that one way for ad networks to transact with publishers using Google's ad server is through ad exchanges participating in Google's Open Bidding program; that

███████████████████████████████████████████████████████████

███████████████████████████████████████████████; that Google

charges Facebook a ██████ to participate in Google's Open Bidding program, ██████████

███████████████████████████████████████████████████████████

████████████████; and that ██████████████████████████████████████

████████████████████████. Google lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in the fifth and sixth sentences of Paragraph 219 and

on that basis denies those allegations. Google denies the allegations in Paragraph 219 in all other

respects.

220.    Google admits that some bidders in its auctions have requested that timeouts in

Google's auctions be lengthened, while others have requested that they be shortened. Google

further admits that it ultimately opted ████████████████████████████████████████

██████. Google denies the allegations in Paragraph 220 in all other respects.

221.    Google admits that Facebook ████████████████████████████████

███████████████████████████████████████████████████████████

██████ and that it has ████████████████████████████████████████████

██████████ ad networks and ad exchanges participating in its Open Bidding program. Google lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth

and fifth sentences of Paragraph 221 and on that basis denies those allegations. Google denies the

allegations in Paragraph 221 in all other respects.

222.    Google admits that ████████████████████████████████████

████████████████████████████████████████Google denies the allegations in

Paragraph 222 in all other respects.

223.    Google admits that the ███████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████; that the ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████; and that the ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. Google lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in the fourth sentence of

Paragraph 223 and on that basis denies those allegations. Google denies the allegations in

Paragraph 223 in all other respects.

224.    Google admits that ███████████████████████████████████████

██████████████████████████████████ Google lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in the fifth and seventh sentences of

Paragraph 224 and on that basis denies those allegations. Google denies the allegations in

Paragraph 224 in all other respects.

225.    Google admits that the ███████████████████████████████████

█████████████ and is consistent with Google's existing practice regarding all bidders' data. Google

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the

second, third, and fourth sentences of Paragraph 225 and on that basis denies those allegations.

The image at the end of Paragraph 225 purports to describe a Google contract, to which no response

is required; to the extent a response is deemed necessary, Google denies that the image at the end

of Paragraph 225 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in the image at the end of Paragraph 225. Google denies the allegations in Paragraph 225 in all other respects.

226.    Google admits that Google and Facebook compete head-to-head in the sale of online advertising in a variety of ways, including in publishers' advertising auctions. Google denies the allegations in Paragraph 226 in all other respects.

227.    Google admits that it operates ad networks, including AdMob and AdSense for Content, and that "FAN" is Facebook's ad network. Google denies the allegations in Paragraph 227 in all other respects.

228.    Google admits that █████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████ and that the ████████████████ █████████████████████████████████████████████████████ ████████████████████████████████. Google denies the allegations in Paragraph 228 in all other respects.

229.    Google admits that █████████████████████████████████ ████████████████████████████████████████████████ and that████ █████████████████████████████████████████████████████████████ █████████████████████████████████ Google denies the allegations in Paragraph 229 in all other respects.

230.    Google admits that the ██████████████████ with Facebook enables the Facebook Audience Network to bid on behalf of its advertisers in certain auctions in Google's Ad Manager and AdMob platforms. Google lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in the second and third sentences of Paragraph 230 and on that basis denies those allegations. Google denies the allegations in Paragraph 230 in all other respects.

231.    Google admits that the ███████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ Google further admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 231 in all other respects.

232.    Google admits that the ███████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████. Google denies the allegations in Paragraph 232 in all other respects.

233.    Google admits that ████████████████████████████████████ █████████████████████████████. Google further admits that the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 233 in all other respects.

234.    Google admits that the ██████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████ and that the █████████████████████████████████ ████████████████████████████████████████████████████████ The screenshot at the end of Paragraph 234 purports to describe a Google contract, to which no response is required; to the extent a response is deemed necessary, Google denies that image at the

end of Paragraph 234 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in the image at the end of Paragraph 234. Google denies the allegations in Paragraph 234 in all other respects.

235.   Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 235 in all other respects.

236.   Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 236 and on that basis denies those allegations. Google denies the allegations in Paragraph 236 in all other respects.

237.   Google denies the allegations in Paragraph 237.

238.   Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 238, and on that basis denies those allegations. Google denies the allegations in Paragraph 238 in all other respects.

239.   Google admits that Google's advertiser-facing tools, like competitive buying tools, use historical data to attempt to model the optimal bids for impressions to improve win rates for advertisers. Google denies the allegations in Paragraph 239 in all other respects.

240.   Google denies the allegations in Paragraph 240.

241.   Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 241 and on that basis denies those allegations. The image at the end of Paragraph 241 purports to be a portion of a Google document, to which no response is required; to the extent a response is deemed necessary, Google denies that image at the end of

Paragraph 241 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in the image at the end of Paragraph 241. Google denies the allegations in Paragraph 241 in all other respects.

242.    Google denies the allegations in Paragraph 242.

243.    Google admits that since well before header bidding became popular, DoubleClick for Publishers (and now Google Ad Manager) has limited the total number of line items that a publisher can create to ensure the efficient operation of the ad server; that it has received requests from time to time from publishers to increase the number of permitted line items to enable them to better implement their preferred header bidding scheme, and ███████████████████. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 243 in all other respects.

244.    Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 244. Google denies the allegations in Paragraph 244 in all other respects.

245.    Google admits that header bidding is typically implemented through the insertion of JavaScript code in the header section of the webpages and that Google helped create AMP, which initially restricted publishers from including arbitrary Javascript on AMP-compliant pages. Google denies the allegations in Paragraph 245 in all other respects.

246.    Google admits that it registered and continues to own ampproject.og; that the lead project developer and decision maker was a Google employee through 2018; and that control of the project has transitioned to the OpenJS Foundation. Google denies the allegations in Paragraph 246 in all other respects.

247.     Google admits that, as a consequence of AMP's initial speed-related restrictions on the inclusion of arbitrary Javascript code, AMP was initially incompatible with header bidding; that, to ensure fast loading of AMP pages, such pages are automatically cached in any number of third-party caches; and that Google's search results pages automatically fetch AMP-compliant pages from Google's AMP cache to optimize load time, but other search engines or platforms can use non-Google caches if they desire. Google denies the allegations in Paragraph 247 in all other respects.

248.     Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 248. Google denies the allegations in Paragraph 248 in all other respects.

249.     Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 249 in all other respects.

250.     Google denies the allegations in Paragraph 250.

251.     Google admits that just as publishers have the freedom to make their webpages mobile or desktop compatible, publishers still have the freedom to decide whether to build their pages using the AMP framework and that, to ensure, for example, the availability of certain functionality (such as swiping from article to article), only AMP-compliant articles are currently eligible for inclusion in the Top Stories carousel on Google's search result page (a requirement that Google has publicly stated it will drop in May 2021). The image at the end of Paragraph 251 purports to be a screenshot of Google search results to which no response is required; to the extent a response is deemed necessary, Google denies the allegations contained in the image at the end of Paragraph 251 presents a fair, accurate, and complete description of the matters described

therein and, on that basis, denies the allegations contained in the image at the end of Paragraph 251. Google denies the allegations in Paragraph 251 in all other respects.

252.    Google denies the allegations in Paragraph 252.

253.    Google admits that "minimum bid to win" data relate to the price an auction participant would have had to bid to win a particular auction, and further admits that it shares such data with bidders that submitted bids to Google Ad Manager for a given auction (including but not limited to exchanges in Google's Open Bidding program), at the conclusion of such auction. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 253 and on that basis denies those allegations.  Google denies the allegations in Paragraph 253 in all other respects.

254.    Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 254 in all other respects.

255.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 255 in all other respects.

256.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 256, and on that basis denies those allegations. Google denies the allegations in Paragraph 256 in all other respects.

257.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 257 in all other respects.

258.    Google denies the allegations in Paragraph 258.

259.    Google denies the allegations in Paragraph 259.

260.    Google denies the allegations in Paragraph 260.

261.    Google admits that ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Google further admits that it rejected the product proposed under ████████████ which in any event would have been optional for publishers. Google admits the existence of documents containing substantially the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 261 in all other respects.

262.    Google admits that in 2018 it introduced the ability to sign into Chrome; that signing into a Google service via Chrome's desktop browser automatically signed the user into Chrome as well; and that users are able to opt-out of this feature. Google denies the allegations in Paragraph 262 in all other respects.

263.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 263, and on that basis denies those allegations. Google denies the allegations in Paragraph 263 in all other respects.

264.    Google denies the allegations in Paragraph 264.

265.    Google admits that privacy regulations have evolved in recent years and that they reflect the growing importance of privacy to some users. Google denies the allegations in Paragraph 265 in all other respects.

266.    Google admits that it has announced its intention to phase out support for third-party cookies in Chrome for the entire web ecosystem (including Google) in 2022 in order to meet

evolving consumer privacy expectations. Google further admits that in 2019 it introduced a collaborative industry initiative called the Privacy Sandbox, which is working through open industry forums like the W3C to develop alternatives to cookies that preserve privacy while supporting publishers that rely on advertising to make their content freely available. Google denies the allegations in Paragraph 266 in all other respects.

267.    Google admits that its plan to phase out support for third-party cookies in Chrome will not affect publishers' ability to use first party data to serve ads on their properties. Google denies the allegations in Paragraph 267 in all other respects.

268.    Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and fourth sentence of Paragraph 268, and on that basis denies those allegations. Google denies the allegations in Paragraph 268 in all other respects.

269.    Google denies the allegations in Paragraph 269.

270.    Google admits that it helps publishers sell ad inventory, helps advertisers purchase ad impressions, and operates an ad exchange used by both advertisers and publishers. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fifth sentence of Paragraph 270, and on that basis denies those allegations. Google denies the allegations in Paragraph 270 in all other respects.

271.    Google denies the allegations in Paragraph 271.

272.    Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 272 in all other respects.

273.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and fourth sentences of Paragraph 273, and on that basis denies those allegations.  Google denies the allegations in Paragraph 273 in all other respects.

274.     Google admits that, as a result of a simplification of Google Ad Manager's pricing rules functionality released in 2019, publishers are able to configure different floor prices for various advertisers, brands, ad formats, or ad slots, but that any such rules apply uniformly to all demand sources participating in Ad Manager's unified auction, including ad exchanges, networks, DSPs, or other buying tools. Google further admits that, as a result of the unified pricing rules, publishers can no longer set different floors for different buyers in Google Ad Manager's unified auction, including exchanges participating via Open Bidding, when bidding on the same inventory on behalf of the same advertiser; that a publisher can no longer use Google Ad Manager to set different price floors for two bidders in the same auction (e.g. Google Ads and The Trade Desk) if they are bidding on behalf of the same advertiser and that it refers to the 2019 revision of Google Ad Manager's pricing rules system as Unified Pricing Rules. Google denies the allegations in Paragraph 274 in all other respects.

275.     Google admits that it encrypts cookie identifiers before sharing with third party buyers on its ad exchange to ensure user privacy, while still allowing authorized recipients to associate an encrypted identifier's previous activity with the current request. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second, sixth, and seventh sentences of Paragraph 275, and on that basis denies those allegations.  Google denies the allegations in Paragraph 275 in all other respects.

276.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third, and fourth sentences of Paragraph 276 and on that basis denies those allegations. Google denies the allegations in Paragraph 276 in all other respects.

277.     Google denies the allegations in Paragraph 277.

278.     Google denies the allegations in Paragraph 278.

279.     Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google further admits the existence of a document ████████████████████████████████ ████████████████████████████████████████████████████████████████. Google denies the allegations in Paragraph 279 in all other respects.

280.     Google denies the allegations in Paragraph 280.

281.     Google denies the allegations in Paragraph 281.

282.     Google admits that, before its introduction of Unified Pricing Rules, publishers could set different price floors for different buyers. Google denies the allegations in Paragraph 282 in all other respects.

283.     Google denies the allegations in Paragraph 283.

284.     Google denies the allegations in Paragraph 284.

285.     Google admits that prior to 2016, a small percentage of the sales of certain types of YouTube advertising space occurred on Google's ad exchange, such that third-party demand side platforms or advertising networks were able to bid to buy those types of YouTube advertising space at that time. Google denies the allegations in Paragraph 285 in all other respects.

286.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 286 in all other respects.

287.     Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 287 in all other respects.

288.     Google denies the allegations in Paragraph 288.

289.     Google denies the allegations in Paragraph 289.

290.     Google admits that the risk of self-competition (instances in which an advertiser bids against itself) increases when the same advertiser bids on the same inventory through multiple channels, and that such self-competition is generally inefficient, but otherwise denies the allegation. Google denies the allegations in Paragraph 290 in all other respects.

291.     Google denies the allegations in Paragraph 291.

292.     Google denies the allegations in Paragraph 292.

293.     Google denies the allegations in Paragraph 293.

294.     Google denies the allegations in Paragraph 294.

295.     Google denies the allegations in Paragraph 295.

296.     Google denies the allegations in Paragraph 296.

297.     Google admits that ad servers assist publishers to manage their inventory. Google denies the allegations in Paragraph 297 in all other respects.

298.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, third, and fourth sentences of Paragraph 298 and on that basis denies those allegations. Google denies the allegations in Paragraph 298 in all other respects.

299.     Google admits that some publishers use revenue generated from selling ad space to, among other things, support content development. Google denies the allegations in Paragraph 299 in all other respects.

300.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the sixth sentence of Paragraph 300 and on that basis denies those allegations. Google denies the allegations in Paragraph 300 in all other respects.

301.     Google denies the allegations in Paragraph 301.

302.     Google denies the allegations in Paragraph 302.

303.     Google denies the allegations in Paragraph 303.

304.     Google denies the allegations in Paragraph 304.

305.     Google admits that ad buying tools are among the products that advertisers use to purchase display inventory. Google denies the allegations in Paragraph 305 in all other respects.

306.     Google admits that advertising can promote competition in some sectors. Google denies the allegations in Paragraph 306 in all other respects.

307.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 307 and on that basis denies those allegations. Google denies the allegations in Paragraph 307 in all other respects.

308.     Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 308 and on that basis denies those allegations. Google denies the allegations in Paragraph 308.

309.     Google restates its response to every allegation set forth above as if stated herein.

310.     Google denies the allegations in Paragraph 310.

311.     Google denies the allegations in Paragraph 311.

312.     Google denies the allegations in Paragraph 312.

313.     Google denies the allegations in Paragraph 313.

314.     Google denies the allegations in Paragraph 314.

315.     Google denies the allegations in Paragraph 315.

316.     Google denies the allegations in Paragraph 316.

317.     Google restates its response to every allegation set forth above as if stated herein.

318.     Google denies the allegations in Paragraph 318.

319.     Google denies the allegations in Paragraph 319.

320.     Google denies the allegations in Paragraph 320.

321.     Google denies the allegations in Paragraph 321.

322.     Google denies the allegations in Paragraph 322.

323.     Google denies the allegations in Paragraph 323.

324.     Google denies the allegations in Paragraph 324.

325.     Google denies the allegations in Paragraph 325.

326.     Google restates its response to every allegation set forth above as if stated herein.

327.     Google denies the allegations in Paragraph 327.

328.     Paragraph 328 contains legal conclusions to which no response is required and, on that basis, Google denies the allegations in Paragraph 328.

329.     Google denies the allegations in Paragraph 329.

330.     Google denies the allegations in Paragraph 330.

331.     Google denies the allegations in Paragraph 331.

332.     Google denies the allegations in Paragraph 332.

333.   Paragraph 333 contains legal conclusions to which no response is required and, on that basis, Google denies the allegations in Paragraph 333.

334.   Google denies the allegations in Paragraph 334.

335.   Google denies the allegations in Paragraph 335.

336.   Google denies the allegations in Paragraph 336.

337.   Paragraph 337 contains legal conclusions to which no response is required and, on that basis, Google denies the allegations in Paragraph 337.

338.   Google denies the allegations in Paragraph 338.

339.   Google denies the allegations in Paragraph 339.

340.   Google denies the allegations in Paragraph 340.

341.   Google restates its response to every allegation set forth above as if stated herein.

342.   Google denies the allegations in Paragraph 342.

343.   Google denies the allegations in Paragraph 343.

344.   Google denies the allegations in Paragraph 344.

345.   Google restates its response to every allegation set forth above as if stated herein.

346.   Google denies the allegations in Paragraph 346.

347.   Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 347 in all other respects.

348.   Google denies the allegations in Paragraph 348.

349.   Google admits that the State of Alaska seeks the stated relief, but denies the allegations in Paragraph 349 in all other respects .

350.   Google admits that the State of Alaska seeks the stated relief, but denies the allegations in Paragraph 350 in all other respects.

351.    Google restates its response to every allegation set forth above as if stated herein.

352.    Google denies the allegations in Paragraph 352.

353.    Google admits that the State of Arkansas seeks the stated relief, but denies the allegations in Paragraph 353 in all other respects.

354.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 354 in all other respects .

355.    Google admits that the State of Florida seeks the stated relief, but denies the allegations in Paragraph 355 in all other respects.

356.    Google restates its response to every allegation set forth above as if stated herein.

357.    Paragraph 357 contains legal conclusions to which no response is required; to the extent that a response is deemed necessary, Google admits the allegations in Paragraph 357.

358.    Google denies the allegations in Paragraph 358.

359.    Google denies the allegations in Paragraph 359.

360.    Google denies the allegations in Paragraph 360.

361.    Google restates its response to every allegation set forth above as if stated herein.

362.    Google denies the allegations in Paragraph 362.

363.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 363 in all other respects.

364.    Google denies the allegations in Paragraph 364.

365.    Google admits that the Commonwealth of Kentucky seeks the stated relief, but denies the allegations in Paragraph 365 in all other respects.

366.    Google admits that the Commonwealth of Kentucky seeks the stated relief, but denies the allegations in Paragraph 366 in all other respects.

367.    Google restates its response to every allegation set forth above as if stated herein.

368.    Google denies the allegations in Paragraph 368.

369.    Google admits that the State of Mississippi seeks the stated relief, but denies the allegations in Paragraph 369 in all other respects.

370.    Google restates its response to every allegation set forth above as if stated herein.

371.    Google denies the allegations in Paragraph 371.

372.    Google restates its response to every allegation set forth above as if stated herein.

373.    Google denies the allegations in Paragraph 373.

374.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 374 in all other respects.

375.    Google denies the allegations in Paragraph 375.

376.    Google admits that the State of Nevada seeks the stated relief, but denies the allegations in Paragraph 376 in all other respects.

377.    Google admits that the State of Nevada seeks the stated relief, but denies the allegations in Paragraph 377 in all other respects.

378.    Google restates its response to every allegation set forth above as if stated herein.

379.    Google denies the allegations in Paragraph 379.

380.    Google restates its response to every allegation set forth above as if stated herein.

381.    Google denies the allegations in Paragraph 381.

382.    Google denies the allegations in Paragraph 382.

383.    Google restates its response to every allegation set forth above as if stated herein.

384.    Google denies the allegations in Paragraph 384.

385.    Google denies the allegations in Paragraph 385.

386.     Google restates its response to every allegation set forth above as if stated herein.

387.     Google denies the allegations in Paragraph 387.

388.     Google restates its response to every allegation set forth above as if stated herein.

389.     Paragraph 389 contains legal conclusions to which no response is required; to the extent a response is deemed necessary, Google admits the allegations in Paragraph 389.

390.     Google denies the allegations in Paragraph 390.

391.     Google denies the allegations in Paragraph 391.

392.     Google denies the allegations in Paragraph 392.

393.     Google denies the allegations in Paragraph 393.

394.     Google denies the allegations in Paragraph 394.

395.     Google denies the allegations in Paragraph 395.

396.     Google denies the allegations in Paragraph 396.

397.     Google denies the allegations in Paragraph 397.

398.     Google denies the allegations in Paragraph 398.

399.     Google denies the allegations in Paragraph 399.

400.     Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 400 in all other respects.

401.     Google denies the allegations in Paragraph 401.

402.     Google denies the allegations in Paragraph 402.

403.     Google admits that the State of Alaska seeks the stated relief but denies the allegations in Paragraph 403 in all other respects.

404.     Google admits that the State of Alaska seeks the stated relief, but denies the allegations in Paragraph 404 in all other respects.

405.     Google restates its response to every allegation set forth above as if stated herein.

406.     Google denies the allegations in Paragraph 406.

407.     Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 407 in all other respects.

408.     Google denies the allegations in Paragraph 408.

409.     Google admits that the State of Florida seeks the stated relief, but denies the allegations in Paragraph 409 in all other respects.

410.     Google restates its response to every allegation set forth above as if stated herein.

411.     Google denies the allegations in Paragraph 411.

412.     Paragraph 412 contains legal conclusions to which no response is required; to the extent a response is deemed necessary, Google admits the allegations in Paragraph 412.

413.     Google denies the allegations in Paragraph 413.

414.     Google denies the allegations in Paragraph 414.

415.     Google denies the allegations in Paragraph 415.

416.     Paragraph 416 contains legal conclusions to which no response is required and, on that basis, Google denies the allegations in Paragraph 416.

417.     Google restates its response to every allegation set forth above as if stated herein. Google admits that the State of Indiana seeks the stated relief, but denies the allegations in Paragraph 417 in all other respects.

418.     Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 418 in all other respects.

419.     Google denies the allegations in Paragraph 419.

420.     Google denies the allegations in Paragraph 420.

421.    Google admits that the Commonwealth of Kentucky seeks restitution and/or disgorgement and the stated civil penalties, but in all other respects denies the allegations in Paragraph 421.

422.    Google admits that the Commonwealth of Kentucky seeks the stated relief, but in all other respects denies the allegations in Paragraph 422.

423.    Google restates its response to every allegation set forth above as if stated herein.

424.    Google denies the allegations in Paragraph 424.

425.    Google admits that The State of Mississippi seeks the stated relief, but in all other respects denies the allegations in Paragraph 425.

426.    Google restates its response to every allegation set forth above as if stated herein.

427.    Google denies the allegations in Paragraph 427.

428.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 428 in all other respects.

429.    Google denies the allegations in Paragraph 429.

430.    Google denies the allegations in Paragraph 430.

431.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 431 in all other respects.

432.    Google denies the allegations in Paragraph 432.

433.    Google denies the allegations in Paragraph 433.

434.    Google admits that the State of Nevada seeks the stated relief, but denies the allegations in Paragraph 434 in all other respects.

435.    Google admits that the State of Nevada seeks the stated relief, but denies the allegations in Paragraph 435 in all other respects.

436.   Google restates its response to every allegation set forth above as if stated herein.

437.   Google denies the allegations in Paragraph 437.

438.   Google denies the allegations in Paragraph 438.

439.   Google denies the allegations in Paragraph 439.

440.   Google restates its response to every allegation set forth above as if stated herein.

441.   Google denies the allegations in Paragraph 441.

442.   Google restates its response to every allegation set forth above as if stated herein.

443.   Google denies the allegations in Paragraph 443.

444.   Google denies the allegations in Paragraph 444.

445.   Google restates its response to every allegation set forth above as if stated herein.

446.   Google denies the allegations in Paragraph 446.

447.   Google denies the allegations in Paragraph 447.

448.   Google denies the allegations in Paragraph 448.

449.   Paragraph 449 sets forth the relief sought by Plaintiffs, to which no response is required; to the extent a response is deemed necessary, Google denies the allegations contained in Paragraph 449 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Amended Complaint.

450.   Paragraph 450 contains Plaintiffs' demand for a jury trial, to which no response is required; to the extent a response is deemed necessary, Google denies that Plaintiffs are entitled to a jury trial on any claim asserted in the Amended Complaint.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Without assuming any burden that it would not otherwise bear, Google asserts the following defenses to the Amended Complaint. Further, Google reserves all affirmative defenses

under Federal Rule of Civil Procedure 8(c) and any additional defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

### First Defense

Plaintiffs' claims are barred, in whole or in part, because the Amended Complaint fails to state a claim upon which relief can be granted.

### Second Defense

The relief sought by Plaintiffs would be contrary to the public interest, harm consumers and businesses, and is otherwise inequitable, impractical, and unworkable.

### Third Defense

Plaintiffs' claims are barred, in whole or in part, because the Amended Complaint fails to allege any legally cognizable relevant product or geographic market.

### Fourth Defense

Google has never had, and is unlikely to obtain, monopoly power in any properly defined relevant market for advertising services.

### Fifth Defense

The agreement with Facebook noted in the Amended Complaint is lawful under the rule of reason because Plaintiffs have failed to allege any anticompetitive effects and the agreement's procompetitive benefits clearly outweigh any alleged anticompetitive effects.

### Sixth Defense

Google's conduct alleged by Plaintiffs in the Amended Complaint was lawful, justified, procompetitive, and carried out in Google's legitimate business interests and constitutes bona

fide competitive activity, the benefits of which significantly outweigh any alleged anticompetitive effects.

### Seventh Defense

The Plaintiffs' claims are barred, in whole or in part, for failure to allege any plausible harm to competition or consumers.

### Eighth Defense

The Plaintiffs' claims are barred, in whole or in part, because they lack standing to assert claims or seek relief on behalf of parties other than natural persons who are direct purchasers.

### Ninth Defense

The Plaintiffs' claims are barred, in whole or in part, because the Amended Complaint fails to allege a cognizable antitrust injury.

### Tenth Defense

The Plaintiffs' deceptive trade practices claims are barred, in whole or in part, for failure to allege with particularity the circumstances constituting fraud or mistake and because Plaintiffs have not and cannot establish a false, misleading, or deceptive act or practice.

### Eleventh Defense

The Plaintiffs' deceptive trade practices claims are barred, in whole or in part, for failure to allege an adequate nexus with one or more of the Plaintiff States.

### Twelfth Defense

The Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and by the doctrine of laches.

**Thirteenth Defense**

The Plaintiffs are not entitled to injunctive relief on conduct that occurred solely in the past.

**Fourteenth Defense**

To the extent that Plaintiffs seek to recover on behalf of allegedly injured consumers, those claims are barred because Plaintiffs have not identified specific consumers that qualify under the relevant statutes.

**Fifteenth Defense**

To the extent that Plaintiffs seek recovery of civil penalties, those civil penalties are limited by the applicable state statutes, the due process clause of the U.S. and applicable state Constitutions and, in addition, they must have a reasonable relation to the actual harm established.

Google reserves the right to supplement its Answer and affirmative and additional defenses with other defenses that become available or apparent in the course of investigation, preparation, and/or discovery, and to amend its Answer accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Google prays for relief as follows:

(a) That the Amended Complaint against Google be dismissed in its entirety, with prejudice;

(b) That Google be awarded its attorneys' fees and costs and expenses of the suit; and

(c) That the Court award such other and further relief to Google as the Court deems just and proper.

Dated: April 6, 2021     Respectfully submitted,

R. Paul Yetter
State Bar No. 22154200
Bryce L. Callahan
State Bar No. 24055248
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002
pyetter@yettercoleman.com
bcallahan@yettercoleman.com

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
(202) 777-4587
eric.mahr@freshfields.com
julie.elmer@freshfields.com

John D. Harkrider (*pro hac vice*)
AXINN VELTROP & HARKRIDER, LLP
114 West 47th Street
New York, NY 10036
(212) 728-2210
jharkrider@axinn.com

Daniel S Bitton (*pro hac vice*)
AXINN VELTROP & HARKRIDER, LLP
560 Mission St.
San Francisco, CA 94105
(415) 490-1486
dbitton@axinn.com

ATTORNEYS FOR DEFENDANT
GOOGLE LLC

**CERTIFICATE OF SERVICE**

I certify that on this 6th day of April 2021, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Bryce L. Callahan*
Bryce L. Callahan