UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-957-SDJ |
| | § | |
| GOOGLE LLC | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Google LLC's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), (Dkt. #28). For the following reasons, the Court concludes that the motion should be **DENIED**.

### I. BACKGROUND

Plaintiffs—the States of Texas, Alaska, Arkansas, Florida, Idaho, Indiana, Mississippi, Missouri, Montana, Nevada, North Dakota, South Dakota, and Utah, and the Commonwealths of Kentucky and Puerto Rico, by and through their Attorneys General (collectively, "Plaintiff States")—have brought the instant action in the Eastern District of Texas against Defendant Google LLC ("Google").[1] Plaintiff States, invoking their statutory, equitable, or common-law powers, and pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15c, 26, brought this action in their respective sovereign capacities and as *parens patriae* on behalf of the citizens, general welfare, and economies of their respective states.

---

[1] The Court has jurisdiction over the instant action. Plaintiff States assert claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15c, 26. *See also* 28 U.S.C. §§ 1331, 1337. Plaintiff States also assert various state-law claims arising out of the same nucleus of operative fact, over which this Court is empowered to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

At its core, Plaintiff States' theory of the case is that Google has violated Section 2 of the Sherman Act, as well as applicable state antitrust laws, by unlawfully maintaining a monopoly, or attempting to acquire a monopoly, in markets associated with online display advertising. Specifically, Plaintiff States allege that Google engaged in anticompetitive conduct to force publishers and advertisers to use its online-display-advertising products or services. Plaintiff States further allege that Google violated Section 1 of the Sherman Act through an unlawful agreement with Facebook. Plaintiff States also contend that Google's representations to publishers, advertisers, and consumers violated state consumer-protection and deceptive-trade laws. Based on these allegations, Plaintiff States assert the following causes of action: actual and attempted monopolization and unlawful tying under Section 2 of the Sherman Act, 15 U.S.C. § 2; unlawful agreement under Section 1 of the Sherman Act, 15 U.S.C. § 1; and thirty additional state-law claims under Plaintiff States' respective antitrust and deceptive-trade-practices statutes.

Google denies all the substantive factual and legal allegations in Plaintiff States' Amended Complaint. Google asserts that it has not acted anticompetitively in the digital-advertising and e-commerce marketplace. Google specifically maintains that Plaintiff States' Amended Complaint is factually inaccurate, that the digital-advertising and e-commerce marketplace is highly competitive, and that Plaintiff States' legal theory turns on the incorrect premise that antitrust law requires companies to design their products so as to help their rivals become stronger competitors. Google further contends that Plaintiff States mischaracterize the terms

and misunderstand the impact of a procompetitive agreement between Google and Facebook and that Google has not made false or deceptive statements to consumers concerning its products or services.

Google has filed a motion to transfer venue under 28 U.S.C. § 1404(a), arguing that this case should be transferred to the United States District Court for the Northern District of California. (Dkt. #28). Google does not dispute that venue is proper in the Eastern District of Texas under 15 U.S.C. § 22 and 28 U.S.C. § 1391. Google contends that transfer is appropriate because the Northern District of California constitutes a clearly more convenient forum for this action. Plaintiff States counter that Google's transfer motion should be denied because Google has failed to show that the private-interest and public-interest factors comprising the Section 1404(a) test, taken together, warrant the transfer of this case to the Northern District of California.

## II. LEGAL STANDARD

Section 1404(a) permits the transfer of civil actions for the convenience of the parties and witnesses and in the interest of justice to other districts or divisions where the plaintiffs could have properly brought the action. 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case under Section 1404(a), *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc), and Section 1404(a) motions are adjudicated on an "individualized, case-by-case consideration of convenience and fairness." *TravelPass Grp. v. Caesars Ent. Corp.*, No. 5:18-cv-153, 2019 WL 3806056, at *11 (E.D. Tex. May 9, 2019)

(quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) and *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)), *report and recommendation adopted,* 2019 WL 4071784 (E.D. Tex. Aug. 29, 2019).

The party seeking a transfer under Section 1404(a) must show good cause. *Volkswagen*, 545 F.3d at 315 (quoting *Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). In this context, showing good cause requires the moving party to "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id.* (cleaned up) (quoting 28 U.S.C. § 1404(a)). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.* Conversely, when the movant demonstrates that the proposed transferee venue is clearly more convenient, the movant has shown good cause and the court should transfer the case. *Id.* The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

To determine whether a Section 1404(a) movant has demonstrated that the proposed transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Volkswagen*,

545 F.3d at 315. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citation omitted). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (alteration in original) (citation omitted).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* (citation omitted). Moreover, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of 'clearly more convenient.'" *Quest NetTech*, 2019 WL 6344267, at *7 (citing *In re Radmax*, 720 F.3d at 290 (holding that, where five factors were neutral, two weighed in favor of transfer, and one weighed "solidly" in favor of transfer, the movant had met its burden)); *see also In re Radmax*, 720 F.3d at 290 (holding that courts abuse their discretion when they deny transfer solely because the plaintiff's choice of forum weighs in favor of denying transfer).

### III. DISCUSSION

A party seeking transfer under 28 U.S.C. § 1404(a) must first meet the threshold requirement of establishing that the action could have been brought in the transferee district. Google, the only defendant in this case, has its headquarters and principal place of business in the Northern District of California. Accordingly, the Court finds that this case could have properly been filed in the Northern District of California under both 28 U.S.C. § 1391 and 15 U.S.C. § 22. The threshold requirement having been met, the Court will analyze each of the private-interest and public-interest factors to determine if Google has demonstrated that the Northern District of California is a "clearly more convenient" forum for the instant action than the Eastern District of Texas.

### A. Private-Interest Factor One: Ease of Access to Sources of Proof

Google asserts that there is greater ease of access to sources of proof in the Northern District of California than in the Eastern District of Texas. Specifically, Google argues that the Northern District of California is where the challenged conduct occurred, where Google has its headquarters, and where its executives and most of its employees work. Google maintains that none of its challenged conduct is alleged to have occurred in the Eastern District of Texas. Google further asserts that, because the complaint refers to a number of Google communications authored or possessed by employees that work in Northern California or New York, but not Texas, those communications and documents are more readily available in the Northern District of California.

Plaintiff States contest Google's assertion that the challenged conduct occurred in the Northern District of California, maintaining instead that Google's conduct occurred throughout the country. Plaintiff States further argue that Google has presented no evidence that any specific, relevant documents are actually located in the Northern District of California. Plaintiff States have also presented evidence that Google stores its electronic documents in thirteen data-storage centers across the country and that all but two of these centers are located closer to the Eastern District of Texas than to the Northern District of California. (Dkt. #46 at 10).

The Court agrees with Plaintiff States: Google has not demonstrated that the ease of access to sources of proof is relatively greater in the Northern District of California than in the Eastern District of Texas. In considering this factor, courts look to where "documents and physical evidence" are stored. *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-442, 2018 WL 4026760, at *2 (E.D. Tex. Aug. 15, 2018) (citing V*olkswagen*, 545 F.3d at 316).[2]

In *Seven Networks*, Google, seeking a convenience transfer to the Northern District of California, argued that much of the evidence was "located in or maintained by Google's Northern California offices." *Id.* (citation omitted). However, the court observed that "the vast majority of Google's electronic records are hosted in secure servers *managed from* its Northern California offices, not *stored in* its Northern California offices." *Id.* (quotations omitted). Consistent with the Fifth Circuit's

---

[2] The *Seven Networks* court rejected Google's argument that witnesses constitute sources of evidence under this first factor, noting that the *Volkswagen* court emphasized and analyzed only documentary evidence under this factor. *Seven Networks*, 2018 WL 4026760, at *3 (citing *Volkswagen*, 545 F.3d at 316).

admonition that technological improvements to the ease of access to electronic documents has not rendered the ease-of-access factor superfluous, the *Seven Networks* court held that the physical location of sources of proof must still be considered. *Id.* at *3 (citing, among others, *Volkswagen*, 545 F.3d at 316). The evidence showed that Google stored its electronic documents in facilities outside of Northern California—and that all but one of those facilities were closer to the Eastern District of Texas. The plaintiff further presented evidence of specific sources of proof that could be found in the Eastern District of Texas. For its part, Google presented no such specific evidence. *Id.* Rather, Google claimed only that some of the documentary evidence that might be relevant would likely be located in Northern California. *Id.* at *4. The *Seven Networks* court reasoned that the fact that evidence "might" exist in a particular location, absent any identification of the specific documents, is insufficient. *Id.* Accordingly, the court held that the ease-of-access factor weighed against transfer. *Id.* at *7.

Google's ease-of-access arguments here mirror those that it presented in *Seven Networks*. Google asserts that the ease-of-access factor favors transfer because Google's headquarters and the headquarters of several potentially relevant nonparties are located in the Northern District of California. But Google has failed to present any evidence of the specific documents or kinds of documents allegedly located in Northern California. By contrast, Plaintiff States have provided rebuttal evidence that Google's electronic documents are located in storage facilities outside of Northern California (most of which are closer to this district than to the Northern

8

District of California) and that ten potential third-party witnesses possess relevant documents stored closer to this district. (Dkt. #46-7–11) (sealed exhibits).

Furthermore, Plaintiff States have confirmed, and Google does not dispute, that much of the relevant documentary evidence is contained in Austin, Texas, at the Office of the Attorney General of Texas as a result of the extensive investigation that precipitated this suit. Google maintains that the location of these relevant and voluminous materials is irrelevant because Austin is in the Western District of Texas rather than the Eastern District of Texas. Google misunderstands the burden of proof on this issue. Plaintiff States do not have to establish that the Eastern District of Texas is the most convenient venue in which this case could be litigated. Rather, Google, as the party seeking transfer, must establish that the Northern District of California is a clearly more convenient venue than the Eastern District of Texas. In regard to the ease of access to documents located in Austin, Texas, the Northern District of California is certainly not a more convenient forum than the Eastern District of Texas.

For all of these reasons, the ease-of-access factor weighs against transfer.

## B. Private-Interest Factor Two: Availability of Compulsory Process to Secure Attendance of Unwilling Witnesses

Federal Rule of Civil Procedure 45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or a party witness's attendance at trial "within the state where the person resides, is employed or regularly transacts business in person." FED. R. CIV. P. 45(c)(1). Courts are to consider

the availability of this compulsory process to secure the attendance of witnesses—
especially nonparty witnesses—in making convenience-transfer determinations.
*Seven Networks*, 2018 WL 4026760, at *7 (citing *Volkswagen*, 545 F.3d at 316). Only
witnesses potentially unwilling to attend trial are considered under this factor.
Identifying a pool of likely unwilling witnesses has some probative value in
determining convenience, although greater specificity as to the identity of those
witnesses creates greater probative value. *Id.* at *8.[3]

Google argues that it would be unable to subpoena witnesses from relevant
third parties, such as competitors and former Google employees, many of whom reside
or work in California. Plaintiff States counter that Google is merely speculating that
these witnesses would be unwilling to attend. Moreover, Plaintiff States identify
seventy-nine potential nonparty witnesses within 100 miles of this Court who could
be subpoenaed for attendance at trial. (Dkt. #46-2). Thus, Plaintiff States argue, this
factor should weigh against transfer "because transfer would merely redistribute the
inconvenience of lacking the ability to subpoena non-party witnesses" from one party
to the others. *Perritt v. Jenkins*, No. 4:11-CV-23, 2011 WL 3511468, at *5 (E.D. Tex.
July 18, 2011).

The Court agrees that the presence of potential nonparty witnesses within both
districts' respective ambits means that this factor does not weigh in favor of transfer.

---

[3] The compulsory-process factor weighs heaviest against or for transfer when either
the transferor or transferee has "absolute subpoena power," meaning that "all relevant and
material non-party witnesses reside within the subpoena power of a particular court."
*Volkswagen*, 545 F.3d at 316. Because neither this district nor the Northern District of
California has absolute subpoena power, the magnitude of this factor is diminished.

However, neither party has demonstrated beyond mere speculation the unwillingness of these potential witnesses to attend trial. Ultimately, therefore, this factor is neutral as to the requested venue transfer.

## C. Private-Interest Factor Three: Cost of Attendance for Willing Witnesses

As the Fifth Circuit has held, it is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment. *Volkswagen*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citation omitted). Significantly, this factor relates primarily to the inconvenience placed on willing nonparty witnesses, not party witnesses. *See, e.g.*, *Seven Networks*, 2018 WL 4026760, at *9 (collecting cases); *Frederick v. Advanced Fin. Sols., Inc.*, 558 F.Supp.2d 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

In *Seven Networks*, the court found that the inconvenience to Google's party witnesses if the case was not transferred would generally be the same as the inconvenience to the plaintiff's party witnesses if the case was transferred, and thus concluded that the two concerns canceled each other out. *Seven Networks*, 2018 WL 4026760, at *12. However, Google also specifically identified a willing potential

nonparty witness, and the inconvenience to that witness weighed "heavily in the analysis," causing the Court to ultimately determine that this factor weighed "slightly in favor of transfer." *Id.*

Here, as in *Seven Networks*, the inconvenience to the party witnesses, which is given little weight, would only be shifted from Google to Plaintiff States by a transfer.[4] Further, Google has specifically named only one potential nonparty witness who possibly resides in the Northern District of California and would therefore be inconvenienced by a trial in this district. (Dkt. #63-2 ¶5) (sealed exhibit). As to other potential nonparty witnesses, Google appears to presume that such witnesses reside in Northern California without pointing to any specific witnesses or entities. Plaintiff States, on the other hand, have specified thirteen potential nonparty witnesses, each of whom is located closer to this district and each of whom has expressed his or her willingness to travel to this district to testify at trial.[5] (Dkt. #46-7–16) (sealed exhibits). Thus, this factor weighs against transfer.

---

[4] Google maintains that transfer would not shift the inconvenience to the Plaintiff States because the inconvenience of litigating this case in the Northern District of California is no greater than the inconvenience of doing so in the Eastern District of Texas for most of the Plaintiff States. However, as Google concedes, this district is a more convenient forum for the lead Plaintiff State—Texas. Further, the Court notes that, by any measure, the majority of Plaintiff States are closer to the Eastern District of Texas than to the Northern District of California.

[5] Plaintiff States have also identified thirty-four additional nonparty witnesses located closer to this district, although statements regarding those witnesses' willingness to appear in this district have not been produced. (Dkt. #46-1 ¶ 3).

**D. Private-Interest Factor Four: All Other Practical Problems**

The fourth private-interest factor includes "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. This "all-other-practical-problems" factor is a "Catch-All Factor," *ExpressJet Airlines, Inc. v. RBC Cap. Mkts. Corp.*, No. H-09-992, 2009 WL 2244468, at *9 (S.D. Tex. July 27, 2009), comprising all practical considerations "rationally based on judicial economy," *i.e.*, the efficient application of judicial resources, *Seven Networks*, 2018 WL 4026760, at *12. For example, "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Seven Networks*, 2018 WL 4026760, at *12 (citation omitted).

Courts need not find the issues in the two sets of litigation to be identical in order for this factor to weigh in favor of transfer, but, typically, the issues must be at least "substantially" similar. *See, e.g.*, *TravelPass*, 2019 WL 3806056, at *15–16 (concluding that, where the cases did not involve "precisely the same issues" and the court could not say that the other district court was "well-versed in *all* of the claims, parties, and issues before the Court presently," the factor was, at least, "neutral" (cleaned up)); *Princeton Digit. Image Corp. v. Facebook, Inc.*, No. 2:11-CV-400, 2012 WL 3647182, at *5 (E.D. Tex. Aug. 23, 2012) (transferring action where pending cases involved the same patent); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 768 (E.D. Tex. 2009) (transferring where the two actions involved "substantially similar issues" regarding patents relating to the "same technology," even though the cases

13

might "not involve precisely the same issues"); *Westberry v. GusTech Commc'ns, LLC*, No. 3:17-CV-3162, 2018 WL 3548869, at *9 (N.D. Tex. July 24, 2018) (involving "identical FLSA claims").

The decision in *TravelPass* is instructive here. In that case, the plaintiffs brought several antitrust and related claims in the Eastern District of Texas. 2019 WL 3806056, at *1. Defendants sought to transfer the case under Section 1404(a) to the Northern District of Illinois, primarily because a putative class action with similar allegations had been pending in that district for over a year. *Id.* at *2. The two actions concerned the same core set of facts, the same antitrust statute, and nearly all the same defendants. *Id.* Nevertheless, the court concluded that the judicial-economy factor (subsumed under the all-other-practical-problems factor) was neutral. *Id.* at *16. On one hand, the court recognized that "numerous courts have held that transfer for the purpose of consolidating concurrent, ongoing actions is proper where the concurrent actions are based on precisely the same issues." *Id.* at *15 (citations omitted). On the other hand, the court was not persuaded that the case and the pending out-of-district action involved "precisely the same issues." *Id.*

Moreover, the court rejected the defendant's argument that the judicial-economy factor was, by itself, "determinative" in the case. *Id.* at *14. Specifically, the *TravelPass* court was concerned that no other factors weighed in favor of transfer, unlike in the other cases cited by the defendants in which the courts found transfer proper. *Id.* Having determined that the other three private-interest factors were neutral and that two of the public-interest factors were neutral, one weighed against

14

transfer, and one weighed in favor of transfer, *id.* at *12–14, 16–18, the *TravelPass* court held that the defendants had "failed to carry their burden to show the Northern District of Illinois is a clearly more convenient venue," *id.* at *18

Here, similar to *TravelPass*, Google points to several antitrust class actions pending in the Northern District of California "that, like this case, accuse Google of monopolistic conduct related to digital advertising and seek both damages and injunctive relief on behalf of publishers and advertisers." (Dkt. #61 at 2). In Google's view, given the similarity of the cases, the Northern District of California would be a "clearly more convenient" forum to resolve this case together with the California class cases.

Google correctly notes that the central allegations in the cases pending against it in the Northern District of California mirror the core allegations of the Plaintiff States here; that is, that Google has engaged in purportedly anticompetitive conduct in markets associated with online display advertising. However, the private class actions pending in the Northern District of California involve different claims, parties, defenses, and damages than this case. Further, the various proposed class plaintiffs in those cases will be required to meet the criteria of Federal Rule of Civil Procedure 23 before they can litigate their claims on a classwide basis. In this regard, the procedural posture of the proposed private class actions in the Northern District of California undermines Google's argument that judicial economy will necessarily be advanced by transferring this case. Those actions are likely to undergo class discovery followed by class-certification motion practice, none of which is relevant to the case

pending before this Court. Consolidating this case with multiple putative class actions would therefore introduce a substantial risk of unnecessary delay associated with Rule 23 proceedings, which may be complex and heavily litigated, and which are unrelated to this litigation. *See TravelPass*, 2019 WL 3806056, at *16 (concluding that transferring a non-class action to be consolidated with a putative class action would have a negative effect on judicial economy due to the nature of class certification).

Further, this case was filed following an eighteen-month investigation by the Plaintiff States, which involved the production of millions of documents and the participation of over sixty witnesses. Under the circumstances, the materials and information already disclosed in the underlying investigation will aid the discovery process in this case. The parties in the California cases, however, will likely have to collect materials and information that have already been gathered here through the Plaintiff States' pre-suit investigation.[6] The plaintiffs here are sovereign states that have filed suit as *parens patriae* on behalf of citizens allegedly harmed by Google's conduct in online-display-advertising markets; therefore, no class allegations are at issue and no Rule 23 proceedings are implicated in this case. Additionally, this case involves state-law claims that are not at issue in the private class actions pending in the Northern District of California, including consumer-protection and deceptive-

---

[6] For example, in their initial requests for discovery, the plaintiffs in *In re Google Digital Advertising Antitrust Litigation* indicated that they seek "100,000 pages of documents that Google reportedly produced to the Texas Attorney General." No. 5:20-cv-03556, Dkt. #37 at 2 (N.D. Cal. Oct. 16, 2020).

trade-practices claims that are dissimilar to the putative class plaintiffs' claims. Such differing claims implicate differing evidence and legal issues.

In sum, the Court concludes that, rather than presenting precisely the same issues as this case, the private class actions pending in the Northern District of California—while premised on the same underlying theories concerning Google's alleged anticompetitive conduct—involve claims, parties, defenses, damages, and procedural frameworks that differ materially from those in this case. Given the important distinctions between this case and those pending in the Northern District of California, Google has failed to establish that transfer of this case would clearly preserve judicial economy. *See, e.g.*, *TravelPass*, 2019 WL 3806056, at *15.[7]

### E. Public-Interest Factor One: Court Congestion

The first public-interest factor is the speed with which a case can come to trial and be resolved. *Deep Green Wireless LLC v. Ooma, Inc.*, 2:16-CV-0604, 2017 WL 679643, at *6 (E.D. Tex. Feb. 21, 2017) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). Generally, this factor favors a district that can bring a case to

---

[7] The Court notes that the class-action lawsuits in the Northern District of California referenced by Google are themselves not all pending before the same judge. Most of the cases are pending before Judge Freeman and have been consolidated into two related actions. *See generally In re Google Digit. Advert. Antitrust Litig.*, No. 5:20-cv-03556-BLF, (N.D. Cal.); *In re Google Digit. Publisher Antitrust Litig.*, No. 5:20-cv-08984-BLF, (N.D. Cal.). However, Judge Freeman rejected the relation of one other suit on which Google relies, and it remains pending before Judge Gilliam. *See In re Google Digit. Advert. Antitrust Litig.*, No. 5:20-cv-03556-BLF, Dkt. #108 (Mar. 2, 2021) (denying motion to relate *SPX Total Body Fitness LLC v. Google LLC*, No. 4:21-cv-00801-HSG (N.D. Cal.)).

Accordingly, it is not obvious that, were the Court to transfer this case, it would be assigned to any particular judge presiding over cases involving similar allegations against Google. *See TravelPass*, 2019 WL 3806056, at *16 (noting that the defendants could not meet their burden by simply assuming that the similar cases would be consolidated before a single judge if the case were transferred).

trial faster. *Ho Keung Tse v. Blockbuster, LLC*, No. 4:12-CV-328, 2013 WL 949844, at *5 (E.D. Tex. Jan. 17, 2013), *report and recommendation adopted*, No. 4:12cv328, 2013 WL 942496 (E.D. Tex. Mar. 8, 2013). However, this factor is "the most speculative," and "case-disposition statistics may not always tell the whole story" because "[c]omplex cases . . . need more time for discovery and take longer to get to trial" no matter where they proceed. *Va. Innovation Sci., Inc. v. Amazon.com, Inc.*, 2019 WL 3082314, at *32 (E.D. Tex. July 15, 2019).

According to the December 2020 Federal Court Management Statistics report, the median time from filing of a civil case to its disposition in the Eastern District of Texas is 8.9 months, and the median time from filing to trial is 17.5 months.[8] In the Northern District of California, those median times are 11.3 months and 37.6 months, respectively.[9]

Google argues that "transfer unquestionably achieves overall efficiency because it places this case in the same district as numerous other antitrust cases against Google that concern the same claims." (Dkt. #28 at 12). Plaintiff States respond that, because the median times are shorter in this district, this factor "weighs heavily against transfer." (Dkt. #46 at 17–18).

The Court concludes that this factor weighs against transfer. Google is correct that, in theory, consolidating cases regarding precisely the same facts and legal

---

[8] UNITED STATES COURTS, *U.S. District Courts—Federal Court Management Statistics—Profiles—During the 12-Month Periods Ending December 30, 2015 Through 2020*, available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile 1231.2020.pdf (last accessed May 20, 2021).

[9] *Id.*

claims should create greater "overall efficiency." However, as noted in Section III.D., *supra*, the factual and legal issues in the instant case are not "precisely the same" as those presented in the private class action cases pending in the Northern District of California. Given the substantive and procedural distinctions between this case and the class cases in the Northern District of California, particularly the anticipated class discovery and motion practice associated with the private actions referenced by Google, it is likely that transferring this case to the Northern District of California would result in this litigation being delayed by class proceedings.

Further, as discussed above, the instant action is in a unique position because, as a *parens patriae* and government-enforcement action, Plaintiff States have already conducted a substantial pre-suit investigation, and thus the discovery required in this action will likely be significantly truncated compared to the discovery in the California actions. Therefore, based on both the shorter median disposition and trial times in this district and the likelihood of a shorter discovery period if this action is kept separate, the Court concludes that this factor weighs against transfer.

## F.  Public-Interest Factor Two: Deciding Local Interests at Home

"There is little doubt" that a district "has a local interest in the disposition of any case involving a resident corporate party." *Seven Networks*, 2018 WL 4026760, at *14. Because Google's principal place of business is located there, the Northern District of California has an obvious interest in deciding this case.

But at least one of the Plaintiff States, Texas, has an equally strong interest in resolving this case in a district within the state. Further, Texas has brought this

action on behalf of Texas advertisers, publishers, competitors, and consumers, many of whom are located in the Eastern District of Texas. By contrast, because California has not joined as a plaintiff in this action, Plaintiff States have not and could not bring their action on behalf of California advertisers, publishers, competitors, and consumers. Thus, because the Northern District of California has an interest in deciding a case involving Google, a California-based company, and because the Eastern District of Texas has an equal interest in deciding a case involving Texas advertisers, publishers, competitors, and consumers, this factor is neutral.

## G. Public-Interest Factor Three: Familiarity of the Forum with the Governing Law of the Case

In addition to federal antitrust claims, each Plaintiff State asserts causes of action under its own law. "The need to apply a particular state's law may weigh in favor of or against transfer." *Calypso Wireless, Inc. v. T-Mobile USA, Inc.*, No. 2:08-CV-441, 2010 WL 11469012, at *5 (E.D. Tex. Mar. 31, 2010).

The State of California is not a Plaintiff in this case, and this action contains no claims arising under California law. Google therefore concedes that the Northern District of California does not have greater familiarity than this Court with any law to be applied in this case. The State of Texas, however, asserts two causes of action arising under Texas law, with which this Court likely has a greater degree of familiarity than does the Northern District of California. Because the claims arising under Texas law amount to only two of thirty state-law claims asserted in an action that also involves significant federal claims, this factor weighs only slightly against transfer.

**H. Public-Interest Factor Four: Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The parties do not dispute that this factor is neutral. The Court agrees.

## IV. CONCLUSION

In light of the foregoing, Google has failed to establish that any private-interest factor or public-interest factor weighs in favor of transfer, and several factors weigh against transfer. Thus, Google has failed to meet its burden to establish that the Northern District of California is a clearly more convenient venue for the instant litigation than the Eastern District of Texas. It is therefore **ORDERED** that Google's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), (Dkt. #28), is **DENIED**.

**So ORDERED and SIGNED this 20th day of May, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE