UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 21-MD-3010 (PKC) |

*This Motion Relates To:*

| | |
|---|---|
| THE STATE OF TEXAS, *et al.*,<br><br>                      *Plaintiffs*,<br><br>   - against -<br><br>GOOGLE LLC,<br><br>                      *Defendants*. | No. 21-CV-6841 (PKC) |

**DEFENDANT GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO SEAL LIMITED ITEMS IN THE SECOND AMENDED COMPLAINT**

FRESHFIELDS BRUCKHAUS DERINGER US LLP

700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555

WILSON SONSINI GOODRICH & ROSATI LLP

One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Fax: (415) 947-2099

*Counsel for Defendant Google LLC*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.    Disclosure of Specific Financial Details Will Cause Google Significant Competitive Harm ................................................................................................................................. 5

    A.    Specific Financial Business Details Merit Redaction ............................................ 5

    B.    Specific Customer Pricing Terms Merit Redaction ............................................... 6

II.    Disclosure of Specific Business Operation Details Will Cause Google Significant Competitive Harm ........................................................................................................... 7

    A.    Specific Technical Product Details Merit Redaction ............................................ 7

    B.    Specific Internal Business Strategies Merit Redaction ......................................... 8

    C.    Specific Internal Business Operational Details Merit Redaction ......................... 9

    D.    Certain Private Negotiations and Contracts with Third Parties Merit Redaction .. 9

III.    Disclosure of Certain Personal Information About Google's Employees Will Cause Non-Party Individuals Significant Harm .......................................................................... 11

CONCLUSION ............................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                                                **Page(s)**

*Associated Press v. U.S. Dep't. of Def.*,
   554 F.3d 274 (2d Cir. 2009) ................................................................................................... 11

*Avocent Redmond Corp. v. Raritan Americas, Inc.*,
   No. 10-CV-6100 (PKC), 2012 WL 3114855 (S.D.N.Y. July 31, 2012) ................................ 5, 7

*Burgess v. Town of Wallingford*,
   No. 3:11-CV-1129 (CSH), 2012 WL 4344194 (D. Conn. Sept. 21, 2012) ............................. 11

*Cohen v. Gerson Lehman Grp. Inc.*,
   No. 09-CV-4352 (PKC), 2011 WL 4336679 (S.D.N.Y. Sept. 15, 2011) ................................ 11

*Cunningham v. Cornell Univ.*,
   No. 16-CV-6525 (PKC), 2019 WL 10892081 (S.D.N.Y. Sept. 27, 2019) ................................ 6

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   119 F. Supp. 3d 152 (S.D.N.Y. 2015) .................................................................................. 4, 6

*GoSMiLE, Inc. v. Dr. Johnathan Levine, D.M.D. P.C.*,
   769 F. Supp. 2d 630 (S.D.N.Y. 2011) ...................................................................................... 8

*Grand River Enters. Six Nations, Ltd. v. King*,
   No. 02-CV-5068 (JFK), 2009 WL 222160 (S.D.N.Y. Jan. 30, 2009) ...................................... 8

*Hesse v. SunGard Sys. Int'l*,
   No. 12-CV-1990 (CM) (JLC), 2013 WL 174403 (S.D.N.Y. Jan. 14, 2013) ............................ 6

*Kewazinga Corp. v. Microsoft Corp.*,
   No. 1:18-CV-4500 (GHW), 2021 WL 1222122 (S.D.N.Y. Mar. 31, 2021) ................ 5, 7, 9, 11

*Lexington Furniture Indus., Inc. v. Lexington Co., AB*,
   No. 19-CV-6239 (PKC), 2021 WL 1143694 (S.D.N.Y. Mar. 24, 2021) ............................ 9, 11

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
   97 F. Supp. 3d 485 (S.D.N.Y. 2015) ........................................................................................ 8

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) ..................................................................................................... 3

*Mullinix v. Mount Sinai Sch. of Med.*,
   No. 12-CV-8659 (PKC), 2014 WL 3687217 (S.D.N.Y. July 24, 2014) ................................... 3

*News Corp. v. CB Neptune Holdings, LLC*,
   No. 21-CV-04610 (VSB), 2021 WL 3409663 (S.D.N.Y. Aug. 4, 2021) ................................ 10

*Newsday LLC v. Cty. of Nassau*,
   730 F.3d 156 (2d Cir. 2013)..................................................................................................3

*Playtex Prods., LLC v. Munchkin, Inc.*,
   No. 14-CV-1308 (RJS), 2016 WL 1276450 (S.D.N.Y. Mar. 29, 2016)....................................5

*Regeneron Pharms., Inc. v. Novartis Pharma AG*,
   No. 1:20-CV-05502, 2021 WL 243943 (S.D.N.Y. Jan. 25, 2021) ......................................4, 10

*Skyline Steel, LLC v. PilePro, LLC*,
   101 F. Supp. 3d 394 (S.D.N.Y. 2015)...................................................................................10

*Stegmann on Behalf of Covetrus, Inc. v. Wolin*,
   No. 21-CV-1717 (GRB), 2021 WL 1838219 (E.D.N.Y. May 7, 2021) ....................................4

*Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*,
   No. 17-CV-147 (KAM) (CLP), 2018 WL 6179433 (E.D.N.Y. Nov. 27, 2018).........................7

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995)................................................................................................3, 4

*Valassis Commc'ns, Inc. v. News Corp.*,
   No. 17-CV-7378 (PKC), 2020 WL 2190708 (S.D.N.Y. May 5, 2020)......................................5

Pursuant to the Court's Order dated September 7, 2021, ECF No. 142 at 2, Defendant Google LLC ("Google") respectfully requests that the Court permit the state plaintiffs to file publicly the Second Amended Complaint ("SAC") with narrowly tailored redactions to prevent disclosure of certain specific items of non-public information that will significantly harm the competitive interests of Google's business and the privacy interests of third parties. Google's proposed redactions are highlighted in the accompanying Exhibit A.[1]

## INTRODUCTION

Seventeen states, led by the Texas Attorney General, brought this action alleging that Google has violated state and federal antitrust laws as well as certain state deceptive trade practices law. Unlike a typical civil case, the state plaintiffs in this case conducted more than fifteen months of investigation, during which time they obtained more than one million internal documents from Google pursuant to civil investigative demands.

The SAC borrows liberally from details within Google's internal documents,[2] which contain highly sensitive information about Google's business, employees, partners, and customers. Public disclosure of these details would harm the competitiveness of Google's business and the privacy interests of its employees. As a result, for reasons articulated in this

---

[1] Exhibit A, which is filed under seal as an attachment to the Declaration of Dan Taylor, contains a version of the SAC that highlights the specific data, metrics, and terms that Google proposes to redact. Exhibit A also contains information provided to state plaintiffs by third parties that the state plaintiffs and/or the relevant third parties may consider appropriate for redaction. Pursuant to an April 14, 2021 Protective Order issued by Judge Jordan (E.D. Tex.) in prior proceedings, Google cannot view certain confidential and highly confidential material provided by third parties and, to the extent Google's counsel files any motions or pleadings that contain such material, Google's counsel must file that material under seal. *See* No. 1:21-CV-6841 (PKC), ECF No. 101 at 25.  Google takes no position as to redactions to third-party information at this time.

[2] As Google will demonstrate in future submissions, the SAC frequently misunderstands and mischaracterizes information from these internal documents. For the purposes of this Motion to Seal, however, Google does not address these concerns.

1

Memorandum and the accompanying Declarations by Dan Taylor and Alok Verma (the "Taylor Decl." and "Verma Decl." respectively), Google requests narrowly tailored redactions that concern non-public and confidential details about the following topics:

- Individual non-public business finances, including revenue amounts, sources, and projections
- Specific pricing terms provided to third parties, including product and service fees
- Technical product details, including the design and function of programs
- Business strategies, including decisions to adopt and discontinue product features
- Business operations, including internal data on auction and impression volume across product lines
- Negotiating strategies with a significant counterparty, including offered and/or finalized contract terms
- Personally identifiable information about Google's employees, including names, position titles, and email addresses

These items of information, which constitute a very small proportion of the SAC's text, are neither necessary for the Court to evaluate whether the state plaintiffs have met their pleading obligations nor essential for the public to grasp the contours of the state plaintiffs' allegations in this case.[3] They merely embellishes the state plaintiffs' claims, at the risk of needlessly harming Google's commercial interests and allowing public observers to invade the privacy of uninvolved third parties. Indeed, after weighing similar considerations during an earlier stage of this case, Judge Jordan of the Eastern District of Texas issued a Protective Order to safeguard such information and permitted the state plaintiffs to file a public version of the SAC that redacted substantially more information than Google presently requests. *See* No. 1:21-CV-6841 (PKC),

---

[3] Google is not seeking redaction of information that it considers to be commercially sensitive but that has already been disclosed publicly as a result of unauthorized leaks during the state plaintiffs' investigation or otherwise reported on by the media. *See, e.g.,* No. 1:21-CV-6841 (PKC), ECF No. 83 at 2.

ECF Nos. 78, 101. In deference to the First Amendment interests at issue, Google has made every effort to narrowly tailor the proposed redactions to protect the competitive interests of Google's business and the privacy interests of third parties, without impinging on the ability of the Court or the public to understand and evaluate the contours of the allegations in this case.

## LEGAL STANDARD

In considering requests to seal or redact "judicial documents," Second Circuit courts must balance "the weight of the presumption" of public access against any "countervailing factors," including "the degree to which the subject matter is traditionally considered private rather than public" and the "nature and degree of injury" that might result from disclosure. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1050–51 (2d Cir. 1995). A court may determine that redactions are "essential to preserve higher values and [are] narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (internal citation and quotation marks omitted).

As to "the weight of the presumption," each judicial document will "fall somewhere on a continuum." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1049)). As this Court has explained, less weight is given to the presumption of access where the "confidential information does not go to the heart of the judicial process" because it "is not central to the Court's rulings and [would] not require[] the Court to redact any portion" of its eventual ruling. *Mullinix v. Mount Sinai Sch. of Med.*, No. 12-CV-8659 (PKC), 2014 WL 3687217, at *21 (S.D.N.Y. July 24, 2014). *See also Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013) (affirming a sealing decision based on "the degree of judicial reliance on the document" and whether the content "would materially assist the public in understanding the issues . . . and in evaluating the fairness and integrity of the court's proceedings").

Privacy interests and competitive commercial interests receive substantial weight as countervailing factors in this analysis. The Second Circuit instructs that "privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Amodeo II*, 71 F.3d at 1050. It likewise instructs that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts[.]" *Id*; *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154–55 (S.D.N.Y. 2015) (observing that "countervailing factors include . . . business information that might harm a litigant's competitive standing"). Accordingly, courts frequently permit redaction of competitively sensitive information within judicial documents, including complaints, in order to prevent competitive harm. *See, e.g., Regeneron Pharms., Inc. v. Novartis Pharma AG*, No. 1:20-CV-05502, 2021 WL 243943, at *2 (S.D.N.Y. Jan. 25, 2021) (permitting redactions to a complaint that were "narrowly tailored to protect commercially sensitive and confidential information"); *Stegmann on Behalf of Covetrus, Inc. v. Wolin*, No. 21-CV-1717 (GRB), 2021 WL 1838219, at *2 (E.D.N.Y. May 7, 2021) (permitting redactions to a complaint, which drew on internal corporate documents, in order to "protect against disclosure of confidential and commercially sensitive information that would cause [the company] competitive harm").

## ARGUMENT

Recognizing that the SAC is a "judicial document" to which the presumption of public access applies, disclosure of a small number of non-public (I) financial, (II) operational, and (III) personal information would not be warranted in the limited instances set forth in Exhibit A. As the accompanying declarations by Google representatives attest, the proposed redactions are narrowly tailored to prevent significant harm that will follow public disclosure. Further, the proposed redactions address isolated metrics and statements that are not essential for the Court to

evaluate whether the state plaintiffs have met their pleading obligations nor necessary for the public to understand the state plaintiffs' allegations in this case.

### I. Disclosure of Specific Financial Details Will Cause Google Significant Competitive Harm

The SAC describes non-public details about Google's internal finances and pricing structures, which competitors will exploit to significantly undermine Google's business.

#### A. Specific Financial Business Details Merit Redaction

Google requests redactions to certain financial details about Google's revenue amounts, sources, and projections. *See* Ex. A at ¶¶ 40, 155, 178, 179, 182.

Courts frequently recognize that financial details reflect competitively sensitive information. *See, e.g., Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500 (GHW), 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (sealing "details of Microsoft's sources of revenue and the amounts of its revenue and sales" and "specific revenue amounts from certain offerings"); *Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378 (PKC), 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020) (sealing "sensitive business information of . . . active business units, such as the financial metrics"); *Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-CV-1308 (RJS), 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (sealing "sales and revenue" figures "because Plaintiffs would be competitively harmed if they were revealed"); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, No. 10-CV-6100 (PKC), 2012 WL 3114855, at *16 (S.D.N.Y. July 31, 2012) (sealing "market forecasts, sales, inventory management, profit margins, etc.—the disclosure of which would cause competitive harm").

The proposed redactions are narrowly tailored to prevent significant competitive harm. Google does not publicly disclose details about its revenues by product line, nor does it publicly disclose specific revenue sources or projections. If these details were to be disclosed publicly,

competitors would seek to target certain Google product lines and customers would seek to extract more favorable deal terms, all of which would harm Google's competitive interests. Taylor Decl. ¶¶ 8, 12, 13. The proposed redactions mitigate this risk by narrowly redacting specific data points, while retaining all other contextual information necessary for the Court and public to evaluate the allegations.

### B. Specific Customer Pricing Terms Merit Redaction

Google requests redactions to certain financial details about pricing terms that it offers and provides to third parties, including product and service fees. *See* Ex. A at ¶¶ 16, 62, 255.

Courts similarly recognize that pricing details are competitively sensitive. *See, e.g., Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2019 WL 10892081, at *2 (S.D.N.Y. Sept. 27, 2019) (sealing "pricing terms offered to clients not party to this suit and aggregate pricing terms offered to clients based on their type of business"); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (sealing "pricing information"); *Hesse v. SunGard Sys. Int'l*, No. 12-CV-1990 (CM) (JLC), 2013 WL 174403, at *2 (S.D.N.Y. Jan. 14, 2013) (sealing "billing rates and project pricing, as well as details of specific projects completed for several clients").

The proposed redactions are narrowly tailored to prevent significant competitive harm. Although Google discloses its standard take rates and service fees, it does not publicly disclose individually negotiated terms, which may vary from the standard take rates and fees. If these details were disclosed publicly, competitors would gain insight into the confidential workings of Google's products and the non-public relationships with individual customers. Taylor Decl. ¶¶ 7, 9, 17. The proposed redactions mitigate this risk by narrowly redacting specific data points, while retaining all other contextual information necessary for the Court and public to evaluate the allegations.

## II. Disclosure of Specific Business Operation Details Will Cause Google Significant Competitive Harm

The SAC also describes non-public details about Google's internal business operations, which competitors will similarly exploit to significantly undermine Google's business.

### A. Specific Technical Product Details Merit Redaction

Google requests redactions to certain technical product details, including the design and function of its digital advertising programs. *See* Ex. A at ¶ 239.

Courts recognize that technical product details, especially in the technology sector, reflect competitively sensitive information. *See, e.g., Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500 (GHW), 2021 WL 1222122, at *7 (S.D.N.Y. Mar. 31, 2021) (sealing "technical information [that] could allow competitors an unfair advantage"); *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, No. 17-CV-147 (KAM) (CLP), 2018 WL 6179433, at *7 (E.D.N.Y. Nov. 27, 2018) (sealing documents "contain[ing] sensitive or proprietary technical" information); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, No. 10-CV-6100 (PKC), 2012 WL 3114855, at *16 (S.D.N.Y. July 31, 2012) (sealing "engineering schematics, confidential source code and confidential deliberations about future products, the disclosure of which could unfairly allow competitors to develop competing products").

The proposed redactions are narrowly tailored to address specific business risks. Google does not publicly disclose details about how its bidding algorithms function. Google invests substantial time and resources in designing these services, which provide immense value to both advertisers and publishers. If these technical details were to be publicly disclosed, competitors could potentially replicate Google's products, without any measure of the same investments. Taylor Decl. ¶ 14. In this case, the proposed redaction focuses only on selected words that would reveal non-public inputs into the particular bidding algorithm that the SAC

7

describes.  Given that this case does not involve intellectual property or similar technical claims, this information is not necessary for the Court or the public to evaluate the complaint.

### B.   Specific Internal Business Strategies Merit Redaction

Google requests redactions to certain internal business strategies, including decisions to adopt and discontinue certain product features.  *See* Ex. A at ¶¶ 240, 252.

Courts recognize that business strategies often reveal competitively sensitive information. *See, e.g., Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (Castel, J.) (sealing "advertising […] plans" and "merchandising strategies"); *GoSMiLE, Inc. v. Dr. Johnathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (sealing "highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting"); *Grand River Enters. Six Nations, Ltd. v. King*, No. 02-CV-5068 (JFK), 2009 WL 222160, at *3 (S.D.N.Y. Jan. 30, 2009) (sealing data that could be used to understand a party's current business strategies, strengths, and weaknesses).

The proposed redactions are narrowly tailored to address threatened harm to specific business interests.  Google does not publicly disclose details about its strategic responses to market trends, which involve detailed calculations and experiments that require significant time and effort.  If these details were to be disclosed publicly, competitors would be able to leverage this proprietary analysis to determine which product features generate more revenue and replicate or discontinue similar features in their own products.  Taylor Decl. ¶¶ 15, 16.  The proposed redactions remove the words and statistics from Google's internal analysis, but they do not remove details about Google's resulting decision, which appears to be the focus of the allegations at issue.

### C. Specific Internal Business Operational Details Merit Redaction

Google requests redactions to certain internal business operation details, including data on auction and impression volume across product lines. *See* Ex. A at ¶¶ 63, 110, 126, 139.

Courts recognize that details about business operations can reveal competitively sensitive information. *See, e.g.*, *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500 (GHW), 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (sealing "quantitative details about Microsoft's user base for certain offerings; quantitative details about usage of specific product features; [and] specific revenue amounts from certain offerings" because "it could indeed harm Microsoft or advantage its competitors"); *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, No. 19-CV-6239 (PKC), 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021) (sealing "sales information and customer lists," which "could advantage Movants' competitors and harm their businesses").

The proposed redactions are narrowly tailored to address specific business risks. Google does not publicly disclose internal data on the number of auctions and impressions its various Ad Tech products serve, nor does it reveal its corresponding win rates. If these details were to be disclosed publicly, Google's competitors would be able to use this information to suggest to Google's potential customers and partners that they could provide superior services. Taylor Decl. ¶¶ 10, 11. As with the proposed redactions above, the proposed redactions remove isolated data points, but they do not remove the contextual information that is necessary for the Court or the public to understand the allegations.

### D. Certain Private Negotiations and Contracts with Third Parties Merit Redaction

While Google's partnership with Facebook was no secret (it was announced in December 2018), certain internal information about negotiating strategies with Facebook, including details

9

regarding offered and finalized contract terms, warrants narrowly tailored redactions. *See* Ex. A at ¶¶ 218, 219, 222, 224, 225, 231, 232, 234.

Courts recognize that contract negotiations and final contract terms reveal competitively sensitive information. *See, e.g.*, *News Corp. v. CB Neptune Holdings, LLC*, No. 21-CV-04610 (VSB), 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) (sealing "[d]ocuments relate[d] to an acquisition," because the "economic terms and disputes over those terms could disadvantage Neptune in future acquisition-related negotiations with third parties."); *Regeneron Pharms., Inc. v. Novartis Pharma AG,* No. 1:20-CV-05502, 2021 WL 243943, at *2 (S.D.N.Y. Jan. 25, 2021) (sealing portions of a complaint that involved "patent licensing agreements, commercial development agreements, and subsequent amendments" because "disclosure of these confidential business contracts would likely result in competitive harm . . . in future negotiations of similar agreements with other parties"); *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412–13 (S.D.N.Y. 2015) (sealing "highly confidential sales information," including "emails revealing confidential negotiations between Skyline and one of its customers").

The proposed redactions are narrowly tailored to address specific business risks. The SAC devotes substantial attention to an agreement between Google and Facebook, which is particularly sensitive because it is ongoing. Verma Decl. ¶ 7. Although some portions of the agreement have been subject to public media attention, the SAC also describes provisions of that agreement that remain non-public and confidential. If these provisions were to be disclosed publicly, information concerning Google's confidential contractual practices and terms would be revealed to ongoing and potential partners, which would threaten significant harm to Google's commercial interests. Likewise, competitors would leverage their knowledge of Google's willingness to contract on certain terms in their competition with Google for ongoing and future

business.  Verma Decl. ¶¶ 8–15.  The proposed redactions remove non-public terms that the SAC describes, quotes, or excerpts in detail, but do not remove contextual content that permits the Court and the public to understand the general parameters of those terms.

### III. Disclosure of Certain Personal Information About Google's Employees Will Cause Non-Party Individuals Significant Harm

The SAC references personal information about the names, position titles, and email addresses of Google's employees, who could suffer unwanted attention, solicitation, and harassment following public disclosure.  *See* Ex. A at ¶¶ 123, 185, 192, 200, 205, 241.

 The courts recognize that "identifying information such as names, addresses, and other personal information" falls "within the ambit of privacy concerns." *Burgess v. Town of Wallingford*, No. 3:11-CV-1129 (CSH), 2012 WL 4344194, at *10 (D. Conn. Sept. 21, 2012) (quoting *Associated Press v. U.S. Dep't. of Def.*, 554 F.3d 274, 284 (2d Cir. 2009)).  Private individuals have a genuine worry that, "when placed on the Internet," such information "might provide a means for unwanted access to those individuals named." *Burgess*, 2012 WL 4344194, at *11.  Redaction of such information is particularly appropriate where the identity of a party's employees is not at issue in the litigation. *See, e.g., Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500 (GHW), 2021 WL 1222122, at *5 (S.D.N.Y. Mar. 31, 2021) (redacting the "personal information of non-parties, including [Microsoft employee] e-mail addresses" because of the "significant privacy interests of non-parties, and the lack of relevance of this information to any issue in this litigation"); *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, No. 19-CV-6239 (PKC), 2021 WL 1143694, at *3 (S.D.N.Y. Mar. 24, 2021) (directing the parties to submit an exhibit that redacted an "individual's personal identifying information"); *Cohen v. Gerson Lehman Grp. Inc.*, No. 09-CV-4352 (PKC), 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15,

2011) (observing that "individual contact information . . . is not at issue in this dispute and the individuals have a countervailing privacy interest in their non-disclosure.").

The proposed redactions are narrowly tailored to address specific privacy risks. Google seeks to redact names, position titles, and email addresses, which belong to Google employees who are not parties to this action. If these identifying details were to be disclosed, these Google employees could be exposed to unwanted attention, solicitation, or harassment, including by individuals who conflate the SAC's allegations against the company with allegations against the specific individuals. The proposed redactions are narrowly tailored to focus only on personally identifying information for those Google employees who are not senior executives. *Cf.* Ex. A at ¶ 173. Further, the redacted identifying information is not necessary for the Court or the public to evaluate the underlying allegations, which relate to Google irrespective of the personal identities of specific employees.

## **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court permit the state plaintiffs to redact certain portions of the SAC highlighted within Exhibit A in order to prevent disclosure of non-public information that, if revealed, would significantly harm the commercial and competitive interests of Google's business and the privacy interests of third parties.

[Signature Block on Next Page]

Dated: September 17, 2021

        Respectfully submitted,

        /s/ Eric Mahr
        Eric Mahr
        Freshfields Bruckhaus Deringer US LLP
        700 13th Street, NW
        10th Floor
        Washington, DC 20005
        Telephone: (202) 777-4545
        Email: Eric.Mahr@freshfields.com

        Justina Sessions
        Wilson Sonsini Goodrich & Rosati LLP
        One Market Plaza, Spear Tower
        Suite 3300
        San Francisco, CA 94105
        Telephone: (415) 947-2197
        Email: jsessions@wsgr.com

        *Counsel for Defendant Google LLC*