UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 21-MD-3010 (PKC) |

*This Declaration Relates To:*

| | |
|---|---|
| THE STATE OF TEXAS, *et al.,*<br><br>                              *Plaintiffs*,<br><br>          - against -<br><br>GOOGLE LLC,<br><br>                              *Defendants*. | No. 21-CV-6841 (PKC) |

**DECLARATION OF DAN TAYLOR IN SUPPORT OF DEFENDANT GOOGLE LLC'S**
**MOTION TO SEAL LIMITED ITEMS IN THE SECOND AMENDED COMPLAINT**

I, Dan Taylor, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a Vice President of Global Ads at Google LLC. I have been employed by Google since August 2006 and have held my current position since May 2021. Based on my work at Google, I have personal knowledge of the company's practices and procedures for maintaining the confidentiality of its strategic, business, and financial information.

2.      I submit this declaration in support of Google's Motion to Seal in *In Re Google Digital Advertising Antitrust Litigation*, Case No. 21-MD-3010 (PKC) (S.D.N.Y.), filed on September 17, 2021. I am informed and believe that the sealed material reveals confidential information produced by Google pursuant to discovery requests or civil investigative demands.

3.      The contents of this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, and/or informed by conversations with other knowledgeable employees of Google.  If called upon as a witness in this action, I could and would testify competently thereto.

4.      Google follows a strict practice that requires confidential treatment of all internal non-public financial information; confidential commercial proposals to third parties and confidential agreements with third parties; internal business analyses of customer spending and revenue, market conditions, and opportunities; and internal, future strategic business plans.  Third parties in an array of contexts, entrust confidential information to Google and they have an expectation that Google has sufficient controls and processes in place to maintain and protect the confidentiality of that information.  In my experience and to the best of my knowledge, Google does not disclose internal documents or confidential agreements or proposals of this nature outside

of the company, with the exception of certain documents that Google shares with partners or fiduciaries, subject to further confidentiality requirements.

5.      Among other things, the disclosure of these materials could reveal highly sensitive non-public financial information, significantly harm Google's relationships and ability to conduct business with counterparties and prospective counterparties, and/or place Google at a disadvantage with competitors who could use Google's confidential analyses to their advantage in competition with Google.  These materials therefore have economic value from not being generally known to Google's competitors, counterparties, or the general public.

6.      To the best of my knowledge, the following information in the Second Amended Complaint that is the subject of Google's Motion to Seal is highly sensitive and confidential, and it derives from confidential materials Google produced in response to document requests or to civil investigative demands.  As described in detail below, Google has compelling reasons to seal this confidential information to, among other things, avoid competitive harm to both Google and third parties, avoid potentially misleading investors, avoid disclosure of confidential agreements between Google and third parties, and prevent competitors and potential business partners from using the information against Google in future negotiations.

**Specific Information to Redact from the Second Amended Complaint**

**(Exhibit A[1])**

7.      **Paragraph 16.** Although the precise source and composition of this data is not evident from Second Amended Complaint, the highlighted text appears to reveal an estimated range of revenue share fees that Google charges publishers for transactions on its ad exchange and

_____

[1] To simplify the Court's consideration of Defendant Google LLC's Motion to Seal, Exhibit A (filed under seal) contains all proposed redactions to the Second Amended Complaint, which are described in both the Declaration of Dan Taylor and the Declaration of Alok Verma.

for sell-side services that facilitate those transactions.  This information has not been disclosed publicly. The range is commercially sensitive because, if disclosed, it would put competitors and potential counterparties on notice about the revenue share rate that Google is willing to charge in a given transaction. Competitors could use that information to offer a lower rate and undercut Google's relationships with customers.  Furthermore, customers could similarly demand that Google charge them the lowest revenue share rate, which would undermine Google's negotiations with current and future customers.

8.     **Paragraphs 40, 178, and 179.**  The highlighted text reveals information about the distribution of revenue sources, which was generated by an internal Google analysis.  Paragraphs 178 and 179 further reveal Google's internal hypothesis as to a specific product feature that explains the distribution of those revenue sources.  This information has not been disclosed publicly.  If revealed to competitors and potential business counterparties, this information would provide insight into Google's business efforts and priorities, which they could use to disadvantage Google in marketing and negotiations.  For example, if publisher counterparties who identify themselves as significant revenue contributors to Google's business knew the proportion of revenue that Google derived from certain types of impressions, they could utilize this information to pressure Google for lower fees. In turn, if competitors knew this information, they could use that information to target certain publishers with lower prices to challenge Google's business.

9.     **Paragraph 62.**  The highlighted text reveals the range of revenue share fees that Google charges advertisers for two specific buy-side services.  Google has publicly disclosed some details about its standard fees, but it has not disclosed arrangements with specific customers that may deviate from those standard fees.  This information is commercially sensitive because, if disclosed, it would provide greater detail to competitors and potential counterparties about the

4

revenue share rate that Google is willing to charge in a given transaction. Competitors could use that information to offer a lower rate and undercut Google's relationships with customers. Furthermore, customers could similarly demand that Google charge them the lowest revenue share rate, which would undermine Google's commercial negotiations with current and future customers. Finally, if disclosed, the information would cause significant confusion among customers, which could lead customers to avoid Google's products and cause further commercial harm to Google's business.

10.     **Paragraphs 63 and 139**. The highlighted text reveals the percentage of auctions hosted on Google's ad exchange, AdX, that Google's ad buying tools win. This information has never been disclosed publicly. Although I am not aware of the specific percentage described in this paragraph, disclosure of this type of information would severely and adversely impact Google's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, this non-public and confidential information could be used to disadvantage Google by, for example, undermining Google's efforts to attract buyers to its ad exchange.

11.     **Paragraphs 110 and 126**. The highlighted text reveals information about how many of the impressions on Google's ad exchange and Google's Display Network are purchased by advertisers using Google Ads. This information has never been disclosed publicly, and disclosure would severely and adversely impact Google's ability to negotiate agreements in the future. If revealed to competitors and potential business counterparties, this non-public and confidential information could be used to disadvantage Google by, for example, undermining Google's efforts to attract buyers to its ad exchange.

12.      **Paragraph 155.** The highlighted text reveals financial information about the income Google derives from three specific auction features.  Google does not publicly report on its revenues by product feature and, as such, this disclosure would reveal important and confidential information to competitors and counterparties regarding Google's business efforts and priorities. This information has not been disclosed publicly.  Although I am not aware of the source of the financial figures described in this paragraph, if this type of information is revealed to competitors and potential business counterparties, they could use this non-public and confidential information to disadvantage Google. For example, if a potential counterparty were to have visibility into the strength, or weakness, of the particular auction feature, it could use that information as leverage in negotiations with Google and with Google's competitors, in order to obtain more favorable terms.  Disclosure of this financial information also could inform Google's competitors about areas in which they should devote research and development efforts to Google's detriment.  In addition, material, non-public, sensitive financial information may not be (and need not be) consistent with generally accepted accounting principles or Google's public financial filings.  Therefore, revealing this income data publicly can be misleading for investors and other parties and lead to inappropriate inferences to the performance of this and other parts of Google's business.

13.      **Paragraph 182.** The highlighted text reveals financial information about the income Google derives from a specific auction feature called Enhanced Dynamic Allocation ("EDA").  Google does not publicly report on its revenues by product feature.  Disclosure of this information would reveal important and confidential information to competitors and counterparties regarding Google's business efforts and priorities. This information has not been disclosed publicly.  Although I am not aware of the source of the financial figure described in this paragraph,

if this type of information is revealed to competitors and potential business counterparties, they could use it to disadvantage Google in marketing efforts and commercial negotiations. For example, if a potential counterparty were to have visibility into the strength or weakness of EDA, it could use that information to its benefit in negotiations with Google and with Google's competitors, in order to obtain more favorable terms.  In addition, material, non-public, sensitive financial information may not be (and need not be) consistent with generally accepted accounting principles or Google's public financial filings.  Therefore, revealing this income data publicly can be misleading for investors and other parties and lead to inappropriate inferences to the performance of this and other parts of Google's business.

14.    **Paragraph 239**. The highlighted text reveals technical information regarding how Google's buy-side products calculate bid prices.  This information has never been disclosed publicly. Although I do not have a detailed understanding of the specific technical aspects described in this paragraph, disclosure of this type of information would severely and adversely impact Google's ability to compete in the market.  If revealed to competitors and potential business counterparties, they could use this non-public and confidential information to replicate Google's proprietary features in their own products, which would undermine Google's business.

15.    **Paragraph 240**. The highlighted text reveals Google's strategic considerations regarding the adoption or discontinuation of certain product features.  Specifically, it draws from internal Google calculations and experiments that evaluated the impact of a specific optimization program.  This information has never been disclosed publicly, and disclosure would seriously and adversely impact Google's ability to compete in the future.  If revealed to competitors and potential business counterparties, they could leverage Google's non-public and confidential analysis to determine the competitive significance of certain Google product features.

16.     **Paragraph 252.** The highlighted text reveals Google's internal revenue projections relating to the use of an HTML framework created, in part, by Google. Specifically, it draws from internal Google calculations and analyses that evaluated the impact on publishers of using that HTML framework. This type of revenue information has not been disclosed publicly, and disclosure to competitors and potential business counterparties would seriously and adversely impact Google's ability to market and promote its products and negotiate agreements in the future.

17.     **Paragraph 255.** The highlighted text reveals a specific fee that Google charges advertisers, in some cases, for buy-side services.  Google has publicly disclosed some details about its standard fees, but it has not publicly disclosed the purported fee in this paragraph.  If disclosed, the information would cause significant confusion among customers, which could lead customers to avoid Google's products and cause further commercial harm to Google's business.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on the 17th day of September, 2021, in Baltimore, Maryland.

_Dan Taylor_
_____
Dan Taylor

8