

**Via ECF**

Washington
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
T        +1 202 777 4500 (Switchboard)
         +1 202 777 4545 (Direct)
F        +1 202 507 5945
E        eric.mahr@freshfields.com
www.freshfields.com

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

January 13, 2023

Re:     *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

On behalf of Defendant Google LLC, Alphabet Inc., and YouTube LLC ("Google"), we write pursuant to Pre-Trial Order No. 5, ECF No. 394 ("PTO-5") ¶ 2, regarding discovery of Electronically Stored Information ("ESI"). The next Case Management Conference is scheduled for February 15, 2023.

Almost sixteen months ago, the Court ordered Plaintiffs to coordinate the drafting of an ESI order, ECF No. 129, and Plaintiffs represented that they would do so, ECF No. 141. Plaintiffs have failed in that basic task by continuing to overcomplicate what should be a routine order. Google and Meta proposed a template ESI order entered in a recent antitrust case, but Plaintiffs have demanded well over one hundred changes—and Google has agreed to incorporate more than 70 of them. Even these many concessions have not satisfied Plaintiffs' appetite for endless negotiation and renegotiation of picayune issues that need not be addressed in a simple ESI order. And even when it has seemed that the parties might be on the brink of agreement on certain issues, one or more of the various Plaintiff constituencies have changed position, injected new issues, or reopened old ones.

In contrast to Google and Meta's agreement to scores of proposals from Plaintiffs, Plaintiffs have refused to agree to even the small handful of changes proposed by Google. Worse yet, they have repeatedly failed to explain their positions after promising to do so, and continue to demand changes that have no basis in the Federal Rules of Civil Procedure ("Federal Rules") or ESI best practices articulated in the Sedona Principles.[1] Federal Rule 34(b)(2)(E)(ii) requires only that ESI be produced in a "reasonably usable form," and Google's order far exceeds that standard.

---

[1] *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018) (hereinafter "Sedona"), available at:

In light of Plaintiffs' inability to responsibly bring this negotiation to a close, Google respectfully requests that the Court enter an ESI order in the form attached hereto as Exhibit A.[2] The main issues in dispute are summarized below.[3]

**Pre-complaint investigation materials (Ex. A at 2, Paragraph I.2).**  Google proposes that responsive ESI produced during pre-complaint investigations of the subject matter of this litigation can be reproduced in the same format here.  That format is obviously a "reasonably usable form" under Rule 34(b)(2)(E)(ii), as the State Plaintiffs have been using the ESI in that form for more than two years already.  Plaintiffs demand that pre-complaint materials already produced (including those from the more than 2 million documents produced so far in this very case) be recollected and reproduced according to Plaintiffs' newest preferred specifications, including with unlimited production of hyperlinked documents (regardless of relevance) across unlimited custodians.  Plaintiffs' proposal is unnecessary, not required under the Federal Rules, and would likely result in the production of millions of irrelevant documents.  *Infra* at 6-7.

**Preservation of non-U.S. ad logs (Ex. A at 3-5, Paragraph II)**.  Google proposes that there be no obligation to preserve ad logs for ads viewed outside the United States and other agreed jurisdictions because Plaintiffs' claims are U.S.-centric.[4]  But some subset of Plaintiffs have recently changed their position and are now demanding that Google preserve ad log data for the 27 Member States of the E.U. without explaining how this data could possibly be relevant to their U.S. claims.  The additional burden of Plaintiffs' proposal amounts to more than an exabyte of data, which is roughly 100,000 times the volume of data in the Library of Congress.  *Infra* at 7-9.

**Privilege logs (Ex. A at 9-13, Paragraphs V.1, V.3(h), V.5, V.8(g)).**  Google proposes that logs can identify legal organizations as an alternative to specific attorneys given the potential volume of, and schedule for, production.  Google also objects to Plaintiffs' insistence on a provision that prohibits logging email threads as one entry unless each individual email in the thread contains full header information.  Google's Gmail software automatically truncates that information in certain situations.  Because Google has agreed to log lesser included emails, Plaintiffs' proposal would necessitate thousands of duplicative entries for no incremental gain.

---

https://thesedonaconference.org/sites/default/files/publications/The%20Sedona%20Principles%20Third%20Edition.19TSCJ1.pdf; *see also Hyles v. New York City*, No. 10CIV3119ATAJP, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) ("I also am a firm believer in the Sedona Principles"); *Aguilar v. Immigr. & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) ("Courts have found the Sedona Principles instructive with respect to electronic discovery issues").

[2] Google notes that, at the time of finalizing its submission, it still does not know which order Plaintiffs plan to submit to the Court.  Plaintiffs provided a revised draft late on Wednesday night but some of the provisions in it were contingent on Google's agreement to provisions that Google has agreed to in part.

[3] We understand that Plaintiffs dispute Meta's proposal (reflected in Google's draft) on email threading (Ex. A at 7-8, Paragraph III.6).  Google takes no position on this issue.

[4] Without conceding the relevance of any additional jurisdictions, Google agreed to expand the provision at issue to include the U.K., Canada, Australia, Ireland, and New Zealand.  Google will confer with Plaintiffs regarding a reasonable and proportionate set of ad logs in those jurisdictions to be sampled or preserved.

Plaintiffs also propose that their counsel should be exempted from logging requirements but that Defendants' counsel are not. *Infra* at 9-10

**Metadata Fields (Ex. A at 16-19, App. D)**.  Google proposes to include 45 metadata fields that can be automatically populated.  Plaintiffs demand additional fields that would require manual population of metadata across millions of documents. *Infra* at 10-11.

**Native Files (Ex. A at 21-22, App. H, I).**  Google proposes that presentations be produced in a readable format and accompanied by a searchable text file.  Plaintiffs demand that all presentations need "to be produced in native format."  Ex. H at 4.  But parties typically "do[] not need" natives and "should not demand" them unless they would "materially aid in the discovery process."  Sedona at 172-73.  For Google, production of natives entails a burdensome manual process to disable live hyperlinks. *Infra* at 11-12.

**Linked Files (Ex. A at 22, App. J)**.  Google proposes that requesting parties can make reasonable and proportionate requests for linked documents.  Plaintiffs have objected to all of Google's proportionality proposals and insist on unlimited production. *Infra* at 12-13.

**Password Protected/Encrypted Files (Ex. A at 25, App. T).**  Google proposes that a requesting party can make reasonable and proportionate requests to access password-protected or encrypted files.  Plaintiffs' proposal requires producing parties to search for passwords or encryption keys regardless of relevance.  For Google, this would require burdensome manual email searches and contacting employees to see if they recall receiving passwords or encryption keys even when the document appears to be irrelevant. *Infra* at 13.

\* \* \*

Plaintiffs' dysfunction has severely hampered this negotiation.  The joint proposal that Defendants sent to Plaintiffs in July 2022—which we submitted to the Court in November 2022 in connection with the Scheduling Order, ECF No. 371 at 3; ECF 371-5—was based on an order agreed between Meta and the Federal Trade Commission, entered by a federal judge in a recent antitrust case, and more than sufficient for this MDL.  Since then, Google has agreed to further concessions, but Plaintiffs continue to demand more while rejecting most of Google's proposals.  Indeed, late on Wednesday night Plaintiffs proposed for the first time that Google should be required to log its communications with Meta to enable Plaintiffs to substantiate claims of collusion between Defendants that the Court has dismissed.  The Court should not countenance Plaintiffs' eleventh hour attempt to litigate the merits of the dispute through the ESI order.  We respectfully request that the Court now bring an end to this process by entering Google's proposed order.  Ex. A.  To the extent that the Court requires further details of Plaintiffs' intransigence, we provide them below.

### A.  Plaintiffs Have Failed To Coordinate As Directed By the Court

Seven months after being ordered to coordinate, Plaintiffs presented Defendants with an unworkable draft ESI order.  Running to almost 50 pages, Plaintiffs' draft had no basis in the Federal Rules and ignored the Court's guidance that the parties should not seek to "reinvent wheels" or "lard up" simple orders by addressing unnecessary contingencies.[5]  *See* Ex. B at 1; Ex C. at n.1.  Consistent with the Court's guidance,[6] Defendants presented Plaintiffs with three streamlined ESI orders from other cases (two involving Google, one involving Meta) and invited Plaintiffs to select one as a starting point for negotiations.  Plaintiffs refused.

On July 1, 2022, Defendants provided Plaintiffs with a joint proposal based on an ESI order agreed to by a federal antitrust regulator and entered in *FTC v. Meta Platforms, Inc.*[7]  Of the three templates offered by Defendants, the *FTC v. Meta* template most directly addressed Plaintiffs' stated concerns and was the least favorable to Google.  Defendants proposed further changes to address Plaintiffs' stated concerns, and a smaller number of changes to address Defendants' concerns.  *See* Ex. C at 2-3.

Two months later, Plaintiffs responded by rejecting all changes proposed by Defendants, accepting all changes proposed by Plaintiffs, and demanding more than 50 additional changes.  *See* Ex. D at 1.

On October 14, 2022, Google proposed a practical solution that would require compromise by both sides.  Ex. D.  Google asked Plaintiffs to agree to proportional limitations on preservation obligations and explained in writing the bases for those proposals by reference to Federal Rule 26 and Sedona.  *Id.* at 2-3.  In exchange, Google would agree to incorporate a further 36 changes demanded by Plaintiffs.  *Id.*  Google asked that Plaintiffs explain their position in writing if they disagreed with Google's proportionality proposals or the rationale for them.  *Id.*

Plaintiffs ignored Google's offer to compromise and did not provide any of the requested explanations.  Instead, on October 31, 2022, Plaintiffs represented to the Court that any agreement between the parties on an ESI order "has proven elusive" and that the parties would benefit from a November 14 deadline for submission of competing drafts.  ECF No. 358 at 2.

The parties met and conferred on November 10, 2022.  At the meet and confer, Plaintiffs conceded that they had no operative ESI counterproposal to submit by the November 14 deadline they had proposed just 11 days earlier.  *See* Ex. E at 1.  Plaintiffs agreed to provide a written

---

[5] Tr. of April 19, 2022 Conference, ECF No. 291 at 32:9-10.
[6] Tr. of April 19, 2022 Conference, ECF No. 291 at 13:15-25 (ordering Google to "produce three exemplars of protective orders for source code that Google has signed onto" from which Plaintiffs could pick one).
[7] No. 1:20-cv-03590 (D.D.C. Mar. 8, 2022) (ECF No. 108) (Boasberg, J.).

counterproposal, as well as a written response to the specific questions that Google had raised in its October 14 letter.  Google agreed to respond to Plaintiffs' questions.  Plaintiffs also proposed that the parties submit competing drafts to the Court on November 18.

On November 18, 2022, Google provided Plaintiffs with written responses to the questions it agreed to address, and a revised draft ESI order in which Google agreed to incorporate another 10 changes requested by Plaintiffs.  Ex. E.  Plaintiffs sailed past their own proposed deadline without providing any of the promised explanations, much less a counterproposal.

On December 9, 2022, Plaintiffs provided Defendants with their first comprehensive ESI proposal in months, in which they continued to delete references to proportionality and continued to press for provisions that Google had confirmed were unworkable.  Plaintiffs did not answer Google's questions but nevertheless requested that Google respond with a revised proposal within a week.

As requested, on December 16, 2022, Google provided Plaintiffs a revised proposal, *see* Ex. F.  Google agreed to another 10 changes demanded by Plaintiffs (and provided written explanations where it was unable to do so).  *Id*.  Google's December 16 letter also requested that Plaintiffs provide the written explanations they had promised (now two months late) within a week.  *Id*.  Plaintiffs again failed to do so without explanation.  Google asked again that Plaintiffs explain their position and requested a response by January 10.  Ex. G.

Shortly before midnight on January 11, 2023, Plaintiffs finally provided a response to some (but not all) of the questions that Google had been asking since October 2022.  Ex. H.  Plaintiffs also injected a raft of new issues, including a proposal that Defendants' counsel be required to log privileged communications "that could substantiate claims of collusion between Defendants" regarding claims that the Court has already dismissed.  *Compare* Ex. H at 4 *with* ECF No. 308 at 20-22 (dismissing NBA claims).  Plaintiffs also asserted that their "technicians" would need additional information before Plaintiffs could agree to Google's uncontroversial proposal that parties use "industry standard" deduplication protocols.[8]  Ex. H at 2-3.  Plaintiffs also proposed for the first time that deduplication should be optional.

Plaintiffs' consistent refusal to explain their positions until the eve of filing, insistence on injecting new and superfluous issues, and their failure to serve document requests, have severely impeded these ESI negotiations.  At the September 24, 2021 conference, the Court invited Plaintiffs to prepare and submit a consolidated document request and stated that, if Plaintiffs did so, "Google will not be able to say, My God, I just got this on Tuesday and it's going to take me

---

[8] In any event, Google has confirmed to Plaintiffs that it is prepared to provide further information regarding its deduplication methodology.

months to figure out what's within the scope of this." Plaintiffs told the Court they would do so, ECF No. 141, but then did not.

## B. Issues Remaining in Dispute

Federal Rule 34(b)(2)(E)(ii) requires only that ESI be produced in a "reasonably usable form." The changes that Plaintiffs continue to press for go far beyond that standard, fail to reflect Federal Rule 26(b)(1) (proportionality), and contravene Sedona Principle 6—endorsed by courts across the country[9]—which "recognizes that a responding party is best situated to preserve, search, and produce its own ESI." Sedona at 118.

**Pre-complaint investigation materials (Ex. A at 2, Paragraph I.2).** Google's proposal, adapted from the *FTC v. Meta* template, is that ESI previously produced during any pre-complaint investigation of the subject matter of this litigation can be reproduced in the same manner that it was previously produced. Ex. A at 2, ¶ I.2. Google has already reproduced over two million documents previously produced to the State of Texas and the DOJ during their respective pre-suit investigations. At the April 19, 2022 conference, the Court speculated that these materials might contain "a very high percentage" of documents responsive to a properly propounded document request.[10] The Court has since stated that its Scheduling Order reflects the "substantial document production" already made. PTO-5 at ¶ 5.

Consistent with Federal Rule 34, Google's proposal ensures that any responsive materials are reproduced in a reasonably usable form. If there are any readability issues (such as hidden text or comment bubbles), Google has agreed to address them. Ex. A at 20-21, App. E. If Plaintiffs think that there are linked documents that are relevant but which they cannot access, Google has agreed to produce a reasonable number of them. Ex. A at 22-23, App. J. If other issues arise,

---

[9] *See, e.g., Hyles*, 2016 WL 4077114 at *3 (S.D.N.Y. Aug. 1, 2016) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information" (quoting Sedona Principle 6)); *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 127 (S.D.N.Y. 2015) (noting courts are "not normally in the business of dictating to parties the process that they should use when responding to discovery" and that this view is consistent with Sedona Principle 6); *Dynamo Holdings Ltd. P'Ship v. Comm'r of Internal Revenue*, 143 T.C. 183, 188 (2014) (same); *Kleen Prods, LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *5 (N.D. Ill. Sept. 28, 2012) (under Sedona Principle 6 "[r]esponding parties are best situated to evaluate the procedures, methodologies, and techniques appropriate for preserving and producing their own electronically stored information"); *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009) ("The Sedona Principles wisely state that it is, in fact, the producing party who is [in] the best position to determine the method by which they will collect documents.") (*citing* The Sedona Conference, Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery, 8 SEDONA CONF. J. 189, 204 (2007)); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 628 (D. Colo. 2007) ("[I]n the typical case, '[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronic data and documents.'") (quoting Sedona Principle 6).

[10] Tr. of April 29, 2022 Conference, ECF No. 291 at 19:23-20:2 (taking a "wild guess" that "a very high percentage of the documents that a reasonable Rule 34 request would reach, Google is going to say it's already in the documents [Plaintiffs] have.").

Google will of course meet and confer in good faith in an effort to resolve them. *See* Ex. A at 2, ¶ I.2 n.1.

Plaintiffs' proposal is that Google cannot rely on any portion of the substantial document production already made. Instead, Google must now re-run its entire collection and review process, and then reproduce the same materials again—but this time with Plaintiffs' preferred production specifications which Google has repeatedly stated are unworkable (especially with a four-month substantial completion deadline). Among other things, Plaintiffs' proposal requires unlimited production of linked documents across unlimited custodians, including additional metadata that Google did not collect for productions to the State of Texas and the DOJ. Plaintiffs' proposal contravenes the spirit of Federal Rule 26(g)(1)(B)(iii) mandating that discovery requests take into account the "prior discovery in the case."

**Preservation (Ex. A at 3-5, Paragraph II)**. Google has proposed a number of preservation limitations grounded in Federal Rule 26 and the Sedona Principles. Ex. A at 3-5, ¶ II. Plaintiffs have rejected them without explanation and continue to push for burdensome preservation obligations likely to include duplicative and irrelevant ESI.

Google has multiple exabytes of ad log data which is far too large to produce, cannot feasibly be searched, and includes log data of no business use to Google. Ex. D at 2. For context, a single exabyte is equal to 1,000,000,000,000,000,000 (one million trillion) bytes, and has been likened by commentators to one hundred thousand times the volume of information stored in the Library of Congress.[11] Google also maintains various dynamic databases and data sources that are constantly updated and which draw on that expansive ad log data.

The rationale underpinning Google's proposals is Sedona Principle 8, i.e., "[t]he primary sources of [ESI] to be preserved and produced should be those readily accessible in the ordinary course." Sedona at 134. There is generally no obligation to preserve "ephemeral data or massive and disproportionate volumes of information clearly not relevant to the claims and defenses in the case." *Id*. at 135-36. Because the burden of preserving ephemeral and transient data generally outweighs any benefit, the requesting party should articulate "good cause" for preservation. *Id.* at 144; *see also Robinson v. De Niro*, No. 19-CV-9156 (KHP), 2022 WL 229593, at *3 (S.D.N.Y. Jan. 26, 2022) (approving Sedona Principle 8's articulation of accessible data).

Cell phone logs (Ex. A at 4, Paragraph II.3(d)). Three months ago, Google proposed that cell phone call logs need not be preserved or searched because it was unlikely they would contain any information relevant to this dispute. Ex. D at 2. Google invited Plaintiffs, if they disagreed, to explain the relevance to this litigation, *id*., but Plaintiffs failed to do so.

---

[11] *See Electronic Discovery: Trends and Developments Under the Federal Rules of Civil Procedure and Beyond*, SS042 ALI-ABA 89, 92 (noting that "10 terabytes = Library of Congress").

Non-U.S. ad log data (Ex. A at 5, Paragraph II.3(k)).   In the absence of meaningful engagement from Plaintiffs, Google proposed sensible limitations on the obligation to preserve ESI.  Because all Plaintiffs' claims are U.S.-centric, Google initially proposed that there should be no need to preserve many exabytes of ad log data concerning ads viewed *outside* the United States. Ex. D at 2-3.  In response to concerns raised by certain Private Plaintiffs, Google compromised by agreeing to carve-out five additional jurisdictions without conceding the relevance of those non-U.S. jurisdictions to this dispute.  Ex. A at 5, ¶ II.3(k), n.2.  Recently, counsel for the Publisher Plaintiffs—who failed to attend the December meet and confer where this issue was addressed—proposed carving out another 26 jurisdictions without explanation.  But doing so would defeat the purpose of the proposed limitation because it would dramatically increase retention burden for no reason.  Google has asked Plaintiffs to explain the relevance of non-U.S. ad log data to their claims seven times—on October 14, 2022, November 10, 2022, November 18, 2022, December 16, 2022, December 21, 2022, January 6, 2023, and January 11, 2023—but Plaintiffs have failed to do so. Indeed, Plaintiffs now concede they took "no position" when the parties met and conferred in December on this very issue.  Ex. H at 2.[12]

Temporary and ephemeral data (Ex. A at 4-5, Paragraph II.3(h), (i), (j), (l)).  Google also proposes that there should be no need to preserve, search, collect, or review "Online access data such as temporary or cache files, including internet history, web browser cache and cookie files" (¶ II.3(h)); "Data in metadata fields that are frequently updated automatically" (¶ II.3(i)); "Server, system, or network logs" (¶ II.3(j)); or "Dynamic fields of databases, dashboards, or log files" (¶ II.3(l)).

All of Google's proposals are grounded in the Sedona Principles.  "Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail."  Sedona at 112.  "Computer systems manage data dynamically, meaning that the ESI is constantly being cached, rewritten, moved, and copied."  *Id*.  As a result, "the preservation obligation should be limited to those steps reasonably necessary to secure ESI for the fair and just resolution of the matter in dispute.  *Id*.  Courts in this District routinely enter ESI orders with similar preservation limitations.[13]

Google has been asking Plaintiffs to explain their objection to these provisions since October 2022.  Ex.  D at 2-3; *see also* Exs. E, F, G.  Three months later, on the eve of filing, Plaintiffs asserted for the first time in conclusory terms that these fluid and frequently-updated

---

[12] Despite Plaintiffs' repeated failure to explain their position, Google has agreed to meet and confer regarding preservation or sampling of aggregated E.U. ad log data.

[13] *See, e.g., Tecku v. Yieldstreet Inc.*, No. 120CV07327VMSDA, 2022 WL 17821348, at *5 (S.D.N.Y. Dec. 20, 2022); *In re Bystolic Antitrust Litigation*, 1:20CV05735, Specifications for the Production of Documents, ECF No. 252 at 17. *Verint Systems Inc. et al v. Red Box Recorders LTD.*, 1:14CV05403, Protocol for Discovery of Electronically Stored Information, ECf No. 24 at 2-3 (S.D.N.Y. Oct. 28, 2015).

fields would yield "important evidentiary information" concerning "Dynamic Allocation and Last Look," Ex. H at 2—which Plaintiffs allege ended years ago.[14]

Encryption keys and mapping tables (Ex. A at 4-5, Paragraph II.3).  In December 2022—more than five months after Google first proposed preservation limitations—Plaintiffs added a caveat that would negate the effect of any agreement reached.  The effect of the new caveat is that none of the agreed preservation limitations could be put into place unless a party first reviewed material that need **not** be preserved to determine whether it contains "encryption keys, mapping tables, identifiers, or other data sources that are necessary to make relevant ESI and Documents useable for the purposes of this Action."  Plaintiffs' proposal is not only burdensome and disproportionate, but  emblematic of an effort to address every possible contingency that the Court has discouraged,[15] as well as Plaintiffs' ongoing effort to direct the manner in which Google discharges its discovery obligations.  *See supra* at 6, n.9.

**Privilege Logs (Ex. A at 9-11, Paragraphs V.1, V.3(h), V.5, V.8(g)).**  Categorical privilege logs are presumptively proper in this District under LR 26.2(c).  But Plaintiffs signaled early on that they would not agree to that presumptively proper process.  Google compromised in its very first draft by dispensing with those labor-saving provisions in favor of a burdensome traditional log demanded by Plaintiffs.  Ex. C at 2.  Plaintiffs continue to insist on additional requirements that serve no purpose other than to impose burden.

- Deadlines (Ex. A at 9, Paragraph V.1).  Google proposes that privilege logs are due 60 days from substantial completion of production (i.e., in mid-2023), with subsequent logs due 45 days from each rolling production.  Plaintiffs are demanding that logs must be produced on a rolling basis, including during the four month period for substantial completion of production on the basis that anything else would somehow delay the timetable for depositions and experts.  Ex. H at 3.  But Google's proposal will afford the parties approximately one year to litigate most privilege challenges, which should be sufficient.

- Named Attorneys (Ex. A at 10, Paragraph V.3(h)).  Google proposes that a privilege log can name specific attorneys, but can also name a legal organization. Ex. A at 10, ¶ V.3(h). This proposal reflects the practical reality that identification of specific attorneys is not always feasible (and is sometimes impossible) in a large production spanning many years. For example, in connection with Plaintiffs' recent *in camera* challenge, Google provided an affidavit from an employee that a document reflected "the legal advice of attorneys at the law firm Slaughter and May, one of Google's European outside, concerning pricing

---

[14] *See* ECF No. 176 at 9494 (alleging that Dynamic Allocation ended in 2019); *id* at 130 (alleging that Last Look ended in 2019).
[15] *See* Tr. of April 19, 2022 Conference, ECF No. 291, at 32:9-10 ("Let's not lard up the protective order"); Pretrial Order No. 2, ECF No. 309 ("The Case Management Plan and Scheduling Order need not and should not provide for

guidance under EU law." ECF No. 385 at 19. Google provided authority for its contention that identification of specific attorneys by name is not required, ECF No. 385 at 14-15.[16] In their Reply, Plaintiffs did not take issue with the identification of a law firm (as opposed to a specific attorney) or provide contrary authority. ECF No. 390 at 6-7. In our December 16 letter regarding ESI negotiations, we again invited Plaintiffs to identify authority to support their contention, Ex. F at 4, but Plaintiffs failed to respond. On the eve of filing, Plaintiffs finally offered a written response on this issue but again identified no authority for their position. Ex. H at 4. If Plaintiffs now take this fourth opportunity to provide a legal argument in support of their contention, it will be the first time that Google has seen one.

- Documents with multiple entries (Ex. A at 10, Paragraph V.5). Plaintiffs propose an unworkable and unnecessary provision requiring that a single email thread containing multiple email messages can be logged as a single entry only when produced with all header information visible. We have explained to Plaintiffs that Google cannot comply with their proposal because Google's email application, Gmail, automatically truncates header information in certain situations. Ex. F at 3-4. Plaintiffs have provided no credible explanation to support their need for this provision and have ignored Google's stated inability to comply with it.

- Exemptions (Ex. A at 11, Paragraph V.8(g)). Google proposes that neither Plaintiffs' counsel nor Defendants' counsel should be required to log communication among them provided that they represent a party at the time of the communication. Ex. A at 11, ¶ V.8(g). Google's reciprocal proposal is based on the expert stipulation agreed by all parties and entered by the Court. Ex. A at 11; ECF No. 428, ¶¶ 5.1.1(d), (e), n.2(iii) and n.3. As of Wednesday night, Plaintiffs are now asserting that they should not have to log any communications between them "because of the nature of this proceeding as a Multidistrict Litigation," but that Google should be required to log its communications with Meta to enable Plaintiffs to "substantiate claims of collusion between Defendants" that the Court has dismissed. Ex. H at 4; ECF No. 209 at 20-22 (dismissing NBA claims).

**Metadata Fields (Ex. A at 16-19, App. D).** In their July 2022 joint proposal, Defendants proposed without modification that ESI should be accompanied by the 33 metadata fields that were featured in the *FTC v. Meta* template entered by Judge Boasberg. Google offered to consider any additional fields that Plaintiffs requested provided that Plaintiffs explain the relevance and utility

---

[16] Citing *Utica Mut. Ins. Co. v. Munich Reinsurance Am.*, Inc., No. 6:12-cv-00196, 2017 WL 9401103, at *5 (N.D.N.Y. Jan. 13, 2017) ("the specific identity of the Rivkin attorney who authored the notes" is not required when a document clearly reflects an attorney's work product); *Zimmerman v. Poly Prep Country Day Sch.*, No. 09 CV 4586, 2011 WL 2601481, at *7 (E.D.N.Y. June 30, 2011) (finding two privilege log entries without a named attorney "satisfactory" when a document reflects attorney strategy).

of those fields.  Ex. C at 3; *see also* Ex. F at 4.  Plaintiffs demanded an additional 24 fields without explanation.

The Sedona Principles counsel that "Parties should not demand forms of production, including . . . metadata fields, for which they have no practical use or that do not materially aid in the discovery process."  Sedona at 173.  Despite Plaintiffs' failure to explain the relevance or need for these fields, Google agreed to the inclusion of an additional 12 fields that could be populated automatically.  Ex. F at 4.  But Google declined to include the remaining metadata fields that would require manual population.  *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. CV14MD2542VSBSLC, 2020 WL 1940557, at *3 (S.D.N.Y. Apr. 22, 2020) (determining that the "burden imposed" by requiring manual production of, or development of new software code to produce new metadata fields, would outweigh the "incremental probative value" of such additional fields).  Plaintiffs' request for the inclusion of these fields boils down to another attempt to direct the manner in which Google discharges its discovery obligations.  *See supra* at 6, n.9.

**Native Files (Ex. A at 21-22, App. H, App. I).**  Google's proposal is that presentations should be produced in color and in a readable format with an accompanying searchable text file, and that requesting parties may also request specific documents in native format.  Ex. A at 21-22, App. H, App. I.  Plaintiffs insist that all presentations "need to be produced in native format."  Ex. H at 4.

The Sedona Principles counsel that, "[t]ypically, a requesting party does not need ESI produced in its native format in order to access, cull, analyze, search, and display the ESI," and that "Parties should not demand forms of production, including native files . . . that do not materially aid in the discovery process."  Sedona at 172-73.  Moreover, "in the majority of instances, TIFF+ is a 'reasonably usable' form of production for most purposes and types of ESI under Rule 34(b)(2)(E)(ii)."  *Id.*  That is what Google offered to do.[17]

As we have explained to Plaintiffs, producing presentations in native format is problematic because Google's presentations often contain live hyperlinks that can only be removed through a burdensome manual process.  Ex. F at 4.  If the requesting party clicks on a live link, this can lead to an access request being sent to Google employees that own the presentation.  In addition to violating Sedona Principle 6, *supra* at 6, n.9, Google submits that transmittal of any such access request raises the prospect that the requesting party's counsel may be contacting a represented party in violation of ethical obligations.  *See* N.Y. Rules of Prof'l Conduct R. 4.2; *see also* 4.2

---

[17] Google initially proposed to produce presentations in TIFF+ format.  Plaintiffs objected on the basis that they needed to see the presentations in color.  In response, Google offered to produce presentations in color .JPEG format.  Ex. F at 4.  Plaintiffs then objected that .JPEG format documents are sometimes hard to read or search.  In response, Google proposed that presentations must also be produced in a readable format accompanied by a searchable text file.  Ex. A at 21-22, App. H; Ex. G at 2.

Model Rules of Prof'l Conduct R. 4.2 (2019).  Plaintiffs have suggested that they intend to access those links.  *See* Ex. H at 4.

**Linked Files (Ex. A at 22, App. J)**.  Google's proposal is that a requesting party can make reasonable and proportionate requests for hyperlinked documents.  Ex. A at p. 22, App. J.  Google uses collaborative workspace software in which emails and documents may contain hyperlinks to other documents which may or may not be relevant to the issues in dispute.  Courts in this District have recognized that ESI can be "reasonably usable" within the meaning of Federal Rule 34(b)(2)(E)(ii) without the production of linked documents.  *See, e.g., Nichols v. Noom*, No. 20CV3677LGSKHP, 2021 WL 948646, at *3 (S.D.N.Y. Mar. 11, 2021) (denying motion for production of linked documents where "it is entirely speculative how many underlying hyperlinked documents are relevant and material" to the claims).

Google's proposal is consistent with *Nichols*.  There, the court approved a process that would "allow Plaintiffs to evaluate [Defendant's] production and, if Plaintiffs determine there is a need for an additional targeted pull or production or clarifying information about a hyperlinked document's identity or Bates number, Plaintiffs can request it."  *Id*.  Other courts have taken a similar approach and permitted production of a reasonable number of linked documents.  *See, e.g., Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST (SK), 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (limiting production to 200 hyperlinked documents).

Plaintiffs' proposal is that all producing parties should be mandated to search for and produce an unlimited number of linked documents—and the documents linked in those linked documents (and so on, forever)—regardless of relevance, proportionality, or agreed custodians.  Plaintiffs' proposal extends to requiring the use of an "tool" to conduct an "automated search."  But the caselaw in this District consistently holds that—absent a showing of manifest unreasonableness or deficient production—the court should "play no role in dictating the design of the search," including "choosing search tools."  *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15CIV0293LTSJCF, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (requiring that a requesting party must first make a showing of relevance before demanding additional specific search methods); *see also Kaye v. New York City Health & Hosps. Corp.*, No. 18CV12137JPOJLC, 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21, 2020) ("When [electronic] documents are produced in discovery, . . . the Court does not believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process"); *see also supra* at 6, n.9.

Plaintiffs' proposal is completely unworkable because Google has no reliable automated means of implementing it.  Google confirmed in writing that it cannot comply with Plaintiffs' proposed provision as drafted because it calls for unlimited production.  Ex. F at 4-5.  Meta also confirmed that it cannot comply with Plaintiffs' provision.  Google asked Plaintiffs to confirm in

writing how they intend to comply with their own proposed provision, Ex. F at 4-5, and Plaintiffs never responded.

**Password Protected/Encrypted Files (Ex. A at 25, App. T).**  Google's proposal is that a requesting party can make reasonable and proportionate requests to require the producing party to make reasonable efforts to provide information necessary to access password-protected or encrypted files.  Ex. A at 25, App. T.  Plaintiffs' proposal is that a producing party is automatically obliged to conduct a manual search for passwords or encryption keys regardless of the apparent relevance of the document at issue.

Google has no automated functionality to unlock password-protected or encrypted documents produced in discovery.  To access these documents, Google needs to conduct a manual search for contemporaneous emails held by the relevant custodian to see if they were provided with a password or encryption key.  Failing that, Google's only option is to contact the relevant custodian (if they are a current employee) to ask if they recall the password or encryption key.  That is a burdensome, manual exercise and—for documents that are not relevant—a pointless one that is inconsistent with Federal Rule 26(b)(1) (proportionality).

\*  \*  \*

Plaintiffs' dysfunction and intransigence should not be rewarded.  Google respectfully requests that the Court enter the Order in the form attached at Exhibit A.

Respectfully submitted,

*/s/* Eric Mahr

Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

Justina K. Sessions
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Email: jsessions@wsgr.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

CC:  All Counsel of Record (via ECF)