# Exhibit B

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **MDL. No. 3010** |

*This document relates to:*

| | |
|---|---|
| **STATE OF TEXAS, et al.,** | **No. 1:21-cv-06841 (PKC) (S.D.N.Y.)** |
| *Plaintiffs,* | **No. 4:20-cv-957 (SDJ) (E.D. Tex.)** |
| -against- | |
| **GOOGLE LLC,** | |
| *Defendant.* | |

**DEFENDANT GOOGLE LLC'S EMERGENCY MOTION FOR STAY PENDING
APPEAL BY WRIT OF MANDAMUS, FOR A TEMPORARY ADMINISTRATIVE
STAY PENDING CONSIDERATION OF THIS MOTION, AND TO
EXPEDITE BRIEFING AND CONSIDERATION OF THIS MOTION**

Boris Feldman
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
(650) 461-8200
boris.feldman@freshfields.com

Eric Mahr
Julie S. Elmer
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com
julie.elmer@freshfields.com

*Counsel for Defendant Google LLC*

Google LLC respectfully moves this Panel under Rules 6.1 and 6.3 to stay the Remand Order that it entered on June 5, 2023 ordering this action be remanded to the Eastern District of Texas.  The Panel concluded that a statutory amendment enacted by Congress late last year to exempt antitrust actions brought by state attorneys general from inclusion in multidistrict litigations applied retroactively to *undo* transfers that had already occurred before the statutory enactment.  Nothing in the text of the amendment expressed Congress's intent to affect cases like this one that had already been included in an MDL before the law changed.  Still, on June 5, 2023, in a first-of-its-kind ruling, the Panel interpreted the amendment to apply retroactively to state antitrust enforcement actions already pending in MDLs and ordered that this case be remanded to the Eastern District of Texas.  *See* JPML Dkt. 250.

Google's sole remedy is to seek mandamus relief from the Second Circuit.  28 U.S.C. § 1407(e).  Google plans to do so and is preparing its mandamus petition now.  It intends to file that petition as soon as practicable, and by no later than Tuesday, June 20, 2023, which is two weeks after the Remand Order issued.  A stay of the Remand Order will ensure the Second Circuit can grant a writ of mandamus to reverse the Remand Order if it agrees with Google on the correct statutory interpretation.  *See In re Warrick*, 70 F.3d 736, 739-40 (2d Cir. 1995).

Google also requests that the Panel enter a temporary administrative stay by **5:00 p.m. on Monday, June 12, 2023**, so that this emergency motion for a stay pending writ of mandamus can be considered and ruled upon before the transfer is effectuated.

In support of its motion, Google states as follows:

1.      On June 5, 2023, the Panel granted the State Plaintiffs' motion for remand.  It is Google's understanding that the Panel notified both the Southern District of New York and the Eastern District of Texas courts that it had done so on that same date.

2.      Under Local Rule 83.1 of the Southern District of New York, that court may effectuate the transfer of this case on June 13, 2023—which is after the "expiration of seven (7) days" from this Panel's transfer ruling.  S.D.N.Y. Loc. Civ. R. 83.1.

3.      Once transfer occurs, Google risks the Second Circuit concluding that it can no longer issue a writ of mandamus to reverse the Remand Order.  Indeed, the reason for the local rule precluding transfers for 7 days after a transfer ruling is to enable parties to seek, and courts or this Panel time to enter, a stay of the transfer.  *See* S.D.N.Y. Loc. Civ. R. 83.1 (Committee Note).

4.      Google meets the standard for a stay pending mandamus.  Google's mandamus petition will raise a substantial question of first impression and is likely to succeed on the merits, even under the demanding standard for mandamus review.  A stay will avoid irreparable harm to Google by ensuring Google's right to seek a writ of mandamus reversing the Remand Order and Google's access to MDL proceedings—the efficiencies of which will be irreparably lost once this case is transferred.  Moreover, a stay poses no risk of injury to State Plaintiffs, who have actively engaged with this litigation through the MDL both before and after Congress amended 28 U.S.C. § 1407(g) to exempt state antitrust suits from MDL consolidation.  Since the statutory amendment, the State Plaintiffs—among other litigation activities—have served discovery requests for production of documents on Google, obtained permission to file and filed a Fourth Amended Complaint, and participated in negotiations over a discovery coordination order which gives them access to additional discovery from another parallel proceeding.

5.      **Google requests an administrative stay of this Panel's Remand Order be entered by 5:00 p.m. Eastern Time on Monday, June 12, 2023, and that the Southern District of New York be notified immediately of the administrative stay**.  Such a modest,

temporary administrative stay will ensure that the Panel can consider Google's motion for a stay pending mandamus review, and will ensure that the Second Circuit has jurisdiction to grant a writ of mandamus reversing the Remand Order.

6.      If this Panel is inclined to deny an administrative stay or Google's requested stay pending appeal, Google still requests an administrative stay of at least seven days to allow Google the opportunity to seek stay relief from the Second Circuit.

7.      Through a letter to Judge Castel, Google intends to notify the Southern District of New York today that it has filed this emergency motion seeking a stay and an administrative stay and to request that Judge Castel stay the Panel's order to prevent transfer by the Southern District of New York's Clerk's Office.

8.      Google also requests expedited briefing and consideration of this motion.  Under Rule 6.1(e) the Panel Clerk may "shorten or enlarge the time periods" set forth for considering motions as necessary under the circumstances.  As explained in greater detail in the accompanying memorandum, given the imminent transfer of this action to the Eastern District of Texas, expedited consideration is necessary to preserve Google's opportunity to request, and the Second Circuit to grant, a writ of mandamus reversing the Remand Order.


Dated: June 12, 2023                              Respectfully submitted,

                                                  /s/ Eric Mahr

                                                  Eric Mahr
                                                  Julie S. Elmer
                                                  FRESHFIELDS BRUCKHAUS
                                                  DERINGER US LLP
                                                  700 13th Street NW, 10th Floor
                                                  Washington, DC 20005
                                                  (202) 777-4545

4

Boris Feldman
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
(650) 461-8200

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **MDL. No. 3010** |

*This document relates to:*

| | |
|---|---|
| **STATE OF TEXAS, et al.,**<br><br>*Plaintiffs,*<br><br>-against-<br><br>**GOOGLE LLC,**<br><br>*Defendant.* | **No. 1:21-cv-06841 (PKC) (S.D.N.Y.)**<br>**No. 4:20-cv-957 (SDJ) (E.D. Tex.)** |

**DEFENDANT GOOGLE LLC'S MEMORANDUM IN SUPPORT OF ITS
EMERGENCY MOTION FOR STAY PENDING APPEAL BY WRIT OF MANDAMUS,
FOR A TEMPORARY ADMINISTRATIVE STAY PENDING CONSIDERATION OF
THIS MOTION, AND TO EXPEDITE BRIEFING AND CONSIDERATION OF THIS
MOTION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

    I.   GOOGLE IS LIKELY TO SUCCEED ON THE MERITS ................................... 4

        A.  The Panel's Order is Based on an Erroneous View of the Venue Act ......................... 5

        B.  Google Has No Other Adequate Means to Attain Relief ............................................. 10

        C.  A Writ Is Appropriate Under the Circumstances ........................................................ 10

    II.  GOOGLE WILL SUFFER IRREPARABLE HARM ABSENT A STAY ....................... 11

        A.  Absent A Stay, the Remand Order's Jurisdictional Implications
            Threaten to Strip Google of Its Right to Seek Reversal of the Remand Order
            by Writ of Mandamus ................................................................................................ 11

        B.  A Stay Is Necessary to Prevent Google Irreparably Curtailing the Efficiencies
            and Benefits of This MDL ......................................................................................... 14

    III. THE REMAINING FACTORS FAVOR A STAY ........................................................ 15

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

Page

**CASES:**

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ................................................................................................ 8

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999) ................................................................................. 14

*Cheney v. U.S. Dist. Ct.*,
  542 U.S. 367 (2004) ..................................................................................... 4, 5, 10

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ...................................................................................... 4

*Drabik v. Murphy*,
  246 F.2d 408 (2d Cir. 1957) ................................................................................. 12

*Emblaze Ltd. v. Apple Inc.*,
  No. 10 CIV. 5713 PKC, 2011 WL 2419802 (S.D.N.Y. June 3, 2011) ................... 13

*Ex Parte Collett*,
  337 U.S. 55 (1949) ............................................................................................ 8, 9

*In re Adelphia Commc'ns Corp.*,
  361 B.R. 337 (S.D.N.Y. 2007) ............................................................................. 13

*In re Country Squire Assocs. of Carle Place, L.P.*,
  203 B.R. 182 (B.A.P. 2d Cir. 1996) ..................................................................... 13

*In re Digital Advert. Antitrust Litig.*,
  555 F. Supp. 3d 1372 (J.P.M.L. 2021) ............................................... 1, 2, 14, 15, 16

*In re Generic Pharms. Pricing Antitrust Litig.*,
  MDL No. 2724, 2017 WL 4582710 (J.P.M.L. Aug. 3, 2017) ................................. 15

*In re Gorsoan Ltd.*,
  No. 18-MC-431 (RA) (KNF), 2020 WL 4194822 (S.D.N.Y. July 21, 2020) .......... 15

*In re Long Island Lighting Co.*,
  129 F.3d 268 (2d Cir. 1997) ................................................................................. 11

*In re Sims*,
  534 F.3d 117 (2d Cir. 2008) ................................................................................... 5

## TABLE OF AUTHORITIES—Continued

Page

*In re The City of New York*,
    607 F.3d 923 (2d Cir. 2010) ............................................................ 4, 5, 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................. 5, 10

*In re von Bulow*,
    828 F.2d 94 (2d Cir. 1987) ....................................................................... 11

*In re Warrick*,
    70 F.3d 736 (2d Cir. 1995) .................................................. 3, 5, 10, 12, 13

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987) ................................................................................... 7

*INS v. St. Cyr*,
    533 U.S. 289 (2001) ................................................................................... 7

*Jock v. Sterling Jewelers, Inc.*,
    738 F. Supp. 2d 445 (S.D.N.Y. 2010) .................................................... 14

*Landgraf v. USI Film Prod.*,
    511 U.S. 244 (1994) ................................................................ 5, 6, 7, 8, 9

*Linde v. Arab Bank, PLC*,
    706 F.3d 92 (2d Cir. 2013) ................................................................. 4, 10

*Lindh v. Murphy*,
    521 U.S. 320 (1997) ................................................................................... 8

*Martin v. Hadix*,
    527 U.S. 343 (1999) ........................................................................... 6, 8, 9

*New York v. United States Dep't of Homeland Sec.*,
    974 F.3d 210 (2d Cir. 2020) ...................................................................... 4

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................... 4

*Red Bull Assocs. v. Best W. Int'l, Inc.*,
    862 F.2d 963 (2d Cir. 1988) ................................................................ 5, 11

*Roofing & Sheet Metal Servs. v. La Quinta Motor Inns*,
    689 F.2d 982 (11th Cir. 1982) ........................................................... 12, 13

# TABLE OF AUTHORITIES—Continued

Page

*SongByrd, Inc. v. Est. of Grossman*,
  206 F.3d 172 (2d Cir. 2000) ............................................................. 5, 10, 11

*United States v. Google LLC*,
  No. 123CV108LMBJFA, 2023 WL 2486605 (E.D. Va. Mar. 14, 2023) ................................. 11

*United States v. National City Lines, Inc.*,
  337 U.S. 78 (1949) ....................................................................... 8

*Weingarten Realty Invs. v. Miller*,
  661 F.3d 904 (5th Cir. 2011) ............................................................. 4

STATUTES:

28 U.S.C. § 1404(a) ....................................................................... 5, 9, 11

28 U.S.C. § 1407(e) ....................................................................... 4, 10, 11, 12, 13

28 U.S.C. § 1407(g) ....................................................................... 3, 5, 16

Pub. L. No. 117-328 ....................................................................... 3

LEGISLATIVE MATERIALS:

168 Cong. Rec. H8173–74 ................................................................. 6

168 Cong. Rec. S2935–36 ................................................................. 6

H.R. 3460, 117th Cong. ................................................................... 6

S. 1787, 117th Cong. ..................................................................... 6

OTHER AUTHORITY:

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* (1986) ....................................................................... 12

## INTRODUCTION

Last week, the Panel granted a motion to remand filed by the State Plaintiffs based on the Panel's conclusion that a newly enacted statutory amendment applies retroactively to undo transfers of antitrust actions brought by state attorneys general, regardless of whether the transfer was already completed before the amendment's enactment.  The Panel's incomplete analysis of retroactivity in its decision will upend the significant efficiencies that coordination before the MDL court has brought to this case.  Google's sole remedy is to seek mandamus review before the Second Circuit.

Tomorrow, local rules allow the Southern District of New York to transfer this action to the Eastern District of Texas.  Under Second Circuit case law, once the clerk effectuates that transfer, Google risks being unable to obtain a writ of mandamus reversing this Panel's Remand Order.  To mitigate the harms to Google, and the procedural difficulties that would result from breaking up this proceeding, Google asks this Panel to stay its Remand Order while Google pursues writ relief.  Google raises a substantial question of first impression and is likely to prevail.  A stay satisfies the necessary requirements and will protect Google's only path to writ relief in the form of a reversal of the Remand Order, avoiding irreparable harm in the form of a loss of appeal rights.  And preserving the status quo of coordination through the MDL for a little while longer will not harm any of the parties, who have litigated this case as part of the MDL in the Southern District of New York for over two years and who continue to benefit from coordinated discovery there.

## BACKGROUND

In April 2021, Google moved this panel to centralize 19 actions before one district court for pretrial purposes, including this action by State Plaintiffs.  Later that month, this Panel granted Google's request, centralizing the actions before Judge Castel in the Southern District of New York.  *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1380 (J.P.M.L. 2021).  This

motion arises from this Panel's recent order remanding the State Plaintiffs' action to the Eastern District of Texas.  Remand Order, *In re Google Dig. Advert. Antitrust Litig*., No. 3010 (J.P.M.L. June 5, 2023), ECF No. 250.

At the time it transferred the State Plaintiffs' suit to the MDL, this Panel determined the claims in that suit presented an "especially compelling" case for consolidation due in part to their "substantial overlap" with other claims in the newly-created MDL.  *In re Digital Advert. Antitrust Litig*., 555 F. Supp. 3d at 1378-80.  Given that overlap, centralization served to "promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters."  *Id*. at 1375.  More broadly, this Panel concluded that "centralization will enhance the overall convenience of the parties, the witnesses, and the courts." *Id*. at 1378.

Since then, Judge Castel made substantial progress toward resolving the litigation based on the State Plaintiffs' case.  Indeed, Judge Castel centered the MDL around the State Plaintiffs Third Amended Complaint, which he said would serve as the lead pleading in the MDL.  *See* Pre-Trial Order No. 1, ECF No. 4.[1]  On September 13, 2022, Judge Castel issued a 92-page opinion, granting in part Google's motion to dismiss the federal antitrust claims in the State Plaintiffs' Third Amended Complaint.  *See* Order on Motion to Dismiss, ECF No. 308.  After that ruling, he entered a scheduling order providing for fact discovery to be completed by June 28, 2024 and expert discovery to be completed by December 27, 2024.  *See* Scheduling Order, ECF No. 394 ¶¶ 4, 7. The parties, including State Plaintiffs, began serving discovery requests in January 2023.  Since then, Google has produced more than one million documents (on top of the roughly 2.25 million

---

[1] Unless otherwise indicated, all references to the docket are to Judge Castel's MDL docket, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y.).

documents that State Plaintiffs received during their pre-complaint investigation) and more than 100 terabytes of data.

On December 29, 2022, more than a year after these consolidated proceedings began, President Biden signed the State Antitrust Enforcement Venue Act ("Venue Act") into law as part of a consolidated appropriations bill.  The Act amends 28 U.S.C. § 1407(g) to exclude state antitrust suits from consolidation by this Panel.  *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III, § 301, 136 Stat. 4459, 5970.  As amended, section 1407(g) now reads: "Nothing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws."

Nearly two months later, on February 27, 2023, State Plaintiffs moved to remand this action to the Eastern District of Texas.  Despite actively engaging in these MDL proceedings up to that point, including during the months after the statutory amendment, State Plaintiffs argued that the Venue Act applied retroactively and required remand of their action.  This Panel granted State Plaintiffs' motion and issued the Remand Order at issue in this motion on June 5, 2023.  *See* State Plaintiffs' Remand Motion, No. 3010 (J.P.M.L. Feb. 27, 2023), ECF No. 229; ECF No. 250 at 5.

That Remand Order will soon result in the transfer of this action.  Southern District of New York Local Civil Rule 83.1 provides that "[i]n a case ordered transferred from this District" the clerk, "unless otherwise ordered, shall upon the expiration of seven (7) days effectuate the transfer of the case to the transferee court."  That time period will expire on Tuesday, June 13.  Once the case is transferred, the Second Circuit risks losing jurisdiction to grant a writ of mandamus reversing the Remand Order.  *See Warrick*, 70 F.3d at 740.  Any petition for a writ of mandamus

reversing the Remand Order must be made to the Second Circuit.  This emergency motion for a stay and administrative stay follows.

## ARGUMENT

The familiar standard for a stay pending appeal governs this analogous request for a stay pending writ of mandamus.  This Panel considers (1) whether the moving party has made a "strong showing" that it is "likely to succeed on the merits," *Nken v. Holder*, 556 U.S. 418, 434 (2009); (2) whether the moving party faces "irreparable injury" without a stay, *id.*; (3) whether there is potential "injury to the nonmoving party if a stay is issued," *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) (per curiam); and (4) "the public interest," *id*.

To show a likelihood of success, a movant need not show a certainty of winning, or even that it is "more likely than not to succeed." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010).  It may also satisfy that requirement if "serious" legal questions are involved and the balance of equities "heavily favors a stay." *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011).  Under either approach, a stay should issue here.

## I.  GOOGLE IS LIKELY TO SUCCEED ON THE MERITS.

A writ of mandamus lies in the transferee circuit to review this Panel's remand decisions. 28 U.S.C. § 1407(e).  To obtain a writ, a party must demonstrate: (1) a "right to issuance of the writ" that is "clear and indisputable"; (2) that it has "no other adequate means to attain the relief it desires"; and (3) that the writ is otherwise "appropriate under the circumstances." *Linde v. Arab Bank*, PLC, 706 F.3d 92, 107–108 (2d Cir. 2013) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–381 (2004)).  Google meets each of these factors, as detailed below.

A writ may issue to correct *either* "a judicial usurpation of power *or* a clear abuse of discretion," including  a "ruling [based on] an erroneous view of the law." *In re The City of New*

4

*York*, 607 F.3d 923, 943 (2d Cir. 2010) (first quoting *Cheney*, 542 U.S. at 380, then quoting *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008)).   Applying that standard in the analogous context of reviewing a court's transfer order under 28 U.S.C. § 1404(a), the Second Circuit has issued a writ where the district court legally erred and "failed to consider" "statutorily mandated" factors. *Warrick*, 70 F.3d at 740; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (similar).   And it has readily acknowledged the "availability of review" in similar circumstances. *SongByrd, Inc. v. Est. of Grossman*, 206 F.3d 172, 176 & n.5 (2d Cir. 2000); *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 965 n.4 (2d Cir. 1988).

This case is of a piece—the Panel adopted a legally erroneous view of section 1407(g), as amended by the Venue Act and made legal errors in its retroactivity analysis.   Mandamus review is Google's sole avenue of relief.   And a stay—which would simply continue the coordination of discovery in the State Plaintiffs' claims through the MDL for a short period of time—is otherwise appropriate.   Google intends to seek to expedite its mandamus petition with the Second Circuit.   If granted, this expedition would shorten further the duration of any stay of the Remand Order.

### A.     The Panel's Order Is Based on an Erroneous View of the Venue Act.

Only Congress' "clear intent" may overcome the "deeply rooted" presumption "against retroactive legislation."   *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 272 (1994).   Under the two-step framework set out in *Landgraf*, courts first examine whether Congress "expressly prescribed the statute's proper reach."   *Id*. at 280.   If it did not, and the statute is ambiguous, the court determines whether the new statute "would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."   *Id*.   If the statute would have such an effect, it may not be applied retroactively absent Congress' clear intent.

5

At step one, nothing in the text indicated that Congress intended the temporal reach of the statute to be retroactive and to undo already-completed transfers.  By its terms, the Venue Act contains none of the language the Supreme Court has found to amount to an express retroactivity provision.  *See id* at 255–256 & n.8 (noting that application to "all proceedings pending on or commenced after the date of enactment" amounted to an "explicit retroactivity command"); *Martin v. Hadix*, 527 U.S. 343, 354 (1999) (similar with respect to language stating statute "shall apply to all proceedings pending on or commenced after the date of enactment") (citation omitted).

Congress removed any ambiguity when it deleted express retroactivity language from the precise provision at issue.  As introduced, the Act stated it "shall take effect on June 1, 2021," a date which would have preceded the bill's passage.  S. 1787, 117th Cong. (as introduced, May 24, 2021); H.R. 3460, 117th Cong. (as introduced May 21, 2021).  That language disappeared when the bill initially reached the floor in both houses.  168 Cong. Rec. S2935–36 (daily ed. June 14, 2022).  And when different retroactivity language was wrapped into the Consolidated Appropriations Act, Congress rejected retroactivity a *second* time, rendering the Act "*no longer retroactive*."  168 Cong. Rec. H8173–74 (daily ed. Sept 28, 2022) (emphasis added).  Congress' diligent avoidance of that language should have been dispositive.

Even if the statute remained ambiguous, applying it has actual retroactive effect under *Landgraf* step two.  The Court made clear that procedural rules—like those relating to venue—do not *necessarily* have retroactive effect just because they apply in suits where the "conduct giving rise to the suit" occurred in the past.  *Landgraf*, 511 U.S. at 275.  Those rules *do* have retroactive effect, however, if they operate to undo the very "relevant activity" the rule governs.  *Id*. at 275 n.29 (explaining that new rule "concerning the filing of complaints" "would not govern" where "the complaint had already been properly filed"); *id*. at 291 (Scalia, J., concurring in the

judgments) (noting procedural rules only "cover[]" "such relevant activity which occurs after the effective date").  In this case, the "relevant activity"—the transfer of this action to the Southern District of New York—occurred before the Venue Act's passage.  The Panel should not have reached back to undo that activity without a clear statement from Congress, which is absent here.

In reaching the opposite conclusion, the Panel erred in two respects.

*First*, it failed to properly apply *Landgraf* step one.  In dismissing Google's legislative history evidence, the Panel cited language in *Landgraf* purportedly explaining that omitted language is unreliable because it may simply reflect a "compromise" and it "does not tell us precisely where the compromise was struck."  *See id*. at 256; JPML Dkt. 250 at 3.  But that passage referenced *two* distinct bills:  one with retroactivity language that the President vetoed, and a later bill that was introduced without such language.  *Landgraf*, 511 U.S. at 256.  It was in that context that the Congress' omission may have been an ambiguous compromise designed to make the subsequent bill "possible to enact."  *Id*.

Here, by contrast, Congress twice removed retroactivity language from the *very* provision applied to this case in the lead-up to its passage.  And as the Court has repeatedly insisted, Congress does not *sub silentio* "enact statutory language that it has earlier discarded."  *E.g.*, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442–43 (1987) (citation omitted).  That "affirmative consider[ation]" and rejection of the "unfairness of retrospective application" should have ended the inquiry.  *See Landgraf*, 511 U.S. at 272–73.  In holding that Congress—despite such evidence—may have actually intended the Act *to* apply retroactively, this Panel flipped the traditional presumption against retroactivity on its head.

The Panel's decision also failed to adhere to the Supreme Court's repeated guidance that because retroactive legislation raises "special concerns," *INS v. St. Cyr*, 533 U.S. 289, 315 (2001),

"congressional enactments . . . will not be construed to have retroactive effect *unless their language requires this result*," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, (1988) (emphasis added).  Indeed, the only "cases where [the Supreme] Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328 n.4 (1997) (citation omitted).  The Panel identified no such language in the Venue Act.

*Second*, the Panel shortcut the actual analysis required at *Landgraf* step two by concluding that since the Venue Act is "plainly a procedural rule," it applies to "pre-enactment pending cases." JPML Dkt. 250 at 3.  That is not the correct framing or analysis under *Landgraf*, later cases applying *Landgraf*, or even the pre-*Landgraf* cases the Panel cited.

As the Supreme Court explained, "the mere fact that a new rule is procedural *does not mean that it applies to every pending case*." *Landgraf*, 511 U.S. at 275 n.29 (emphasis added). The Supreme Court in *Martin* then re-confirmed that "it is not enough to attach a label (*e.g.*, 'procedural,' 'collateral') to the statute." 527 U.S. at 359.  Instead, the Panel must examine whether the procedural rule actually "operates retroactively" by undoing actions taken before enactment.  *Id*.  And as the Panel's order demonstrates, applying the Venue Act retroactively to this case has just such an effect here.  The Panel's order omitted that analysis, simply holding that because the Act is a " 'procedural' rule," it "did not raise retroactivity concerns when applied to cases arising before its enactment."  JPML Dkt. 250 at 3.

To support its conclusion, the Panel cited to *Ex Parte Collett*, 337 U.S. 55 (1949), and *United States v. National City Lines, Inc*., 337 U.S. 78 (1949).  Those cases, both of which pre-date *Landgraf* and *Martin*, are distinguishable, consistent with Google's argument, and do not support the Panel's conclusion.  In each of *Ex Parte Collett* and *National City*, the Court applied

28 U.S.C. § 1404(a) to actions that had been filed before a provision was enacted that had the effect of extending application of forum-non-conveniens transfers to those cases.  *See Landgraf*, 511 U.S. at 275 (construing both cases).  In both cases, the Court said that the defendant could raise a forum non conveniens argument after the amendment made that option applicable to the case.  Neither case involved *undoing* anything that had occurred in the case prior to the amendment. In other words, the only way section 1404(a) *could* operate in those cases was prospectively—to allow for future transfer of those actions.  That is plainly not the situation here.

The Panel erred by not holding *Ex Parte Collett*, *National City*, *Landgraf*, and *Martin* are read consistently to hold that a change in a procedural rule—absent clear congressional intent— does not apply to an existing case *when the relevant activity has already occurred*, which is the case here:  the transfer of the State Plaintiffs' case long predated the Venue Act amendment.  In *Ex Parte Collet* and *National City*, the transfer had not yet occurred; the order of events in those cases was (1) the case was filed; (2) a statute was amended to allow transfer for forum non conveniens; and then (3) a party sought and received transfer on that basis.  *Ex Parte Collett*, 337 U.S. at 56–59; *National City*, 337 U.S. at 79–80.  Thus the "relevant activity" occurred *after* the statutory amendment.  In the State Plaintiffs' case, the relevant activity is the transfer, which occurred before the Venue Act was amended.  The State Plaintiffs cited these two cases to support their argument that a change in venue is a procedural change, which Google does not disagree with.  Google's argument, which it intends to pursue on appeal, is that labeling a change procedural is not outcome determinative, and that under the required analysis, here, the procedural change cannot be used to undo a transfer that has already occurred.  This is a substantial legal question, and the Panel cited no case upholding retroactive application of a procedural rule to undo the relevant action in the case.

**B.      Google Has No Other Adequate Means to Attain Relief.**

28 U.S.C. § 1407(e) expressly states "[n]o proceedings for review of any order of the panel may be permitted except by extraordinary writ."  And for orders after an initial transfer, writ petitions "shall be filed only in the court of appeals having jurisdiction over the transferee district"—here, the Second Circuit.  *Id*.  Given that command, Google's exclusive avenue of review is a writ petition in the Second Circuit.

Nor would it be timely to seek mandamus review from the Second Circuit at some later point in time, such as after a final judgment.  It is entirely speculative and remote when that would be, and because laches applies to requests for mandamus, any delay in seeking relief until the final judgment in this matter could effectively preclude such a later request.  *See Cheney*, 542 U.S. at 379 (noting laches "might bar a petition for a writ of mandamus" if the petitioner "slept upon his rights" and "especially if the delay has been prejudicial" to other parties (internal quotation marks and citations omitted)).  Courts in both the Second and Fifth Circuits thus rely on writ procedures to review similar issues.  *In re Warrick*, 70 F.3d at 740; *Volkswagen*, 545 F.3d at 318.

**C.      A Writ Is Appropriate Under the Circumstances.**

The Second Circuit has recognized that mandamus is generally available to reverse erroneous transfer decisions.  *E.g.*, *SongByrd*, 206 F.3d 176 & n.5.  Whether any particular order satisfies the third mandamus factor depends on a variety of considerations, including whether the petition raises "a novel and significant question of law," "an issue . . . of first impression," or points to "a district court flagrantly misappl[ying] a well-settled principle of law."  *Linde*, 706 F.3d at 108 (citations omitted).

Those factors warrant review here, too.  To start, the retroactivity of the Venue Act to undo a transfer that predated its enactment is an issue of first impression.  It has not previously been addressed by the Panel or the Second Circuit.  At most, the language in the amendment has "been

touched on only indirectly" by a district court in another circuit addressing a distinct issue from retroactivity. *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997) (applying third mandamus factor); *see United States v. Google LLC*, No. 123CV108LMBJFA, 2023 WL 2486605, at *4 (E.D. Va. Mar. 14, 2023) (examining the Venue Act's interaction with 28 U.S.C. § 1404(a)). Review is likewise appropriate because answering that unsettled question depends on applying an "established principle to an entirely new context." *Long Island Lighting*, 129 F.3d at 271 (granting mandamus review); *In re von Bulow*, 828 F.2d 94, 97 (2d Cir. 1987) (similar).

That novel and dispositive question distinguishes this case from the multiple cases where the Second Circuit has rejected mandamus petitions to correct a mere exercise of a court's transfer discretion. *See SongByrd*, 206 F.3d at 176 & n.5 (collecting cases). Here by contrast, a remand decision based on an erroneous legal conclusion is much closer to the heartland of mandamus review. *See City of New York*, 607 F.3d at 940 & n. 17; *Red Bull*, 862 F.2d at 965 n.4.

## II.     GOOGLE WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

### A.     Absent A Stay, the Remand Order's Jurisdictional Implications Threaten to Strip Google of Its Right to Seek Reversal of the Remand Order by Writ of Mandamus.

Absent a stay, Google will suffer irreparable harm because it risks losing its right to request the Second Circuit grant a writ of mandamus reversing the Panel's remand decision. Google wishes to invoke its right under 28 U.S.C. § 1407(e) to seek the Second Circuit's review of the Remand Order by pursuing a writ of mandamus. But without a stay, effectuation of the transfer to the Eastern District of Texas risks effectively blocking the right to obtain a reversal of the Panel's ruling.

Section 1407(e) provides that "[p]etitions for an extraordinary writ to review an order to transfer or orders subsequent to transfer shall be filed only in the court of appeals having jurisdiction over the transferee district." Here, the transferee district is the Southern District of

New York, so Google must file its mandamus petition in the Second Circuit.  *See* 28 U.S.C. § 1407(e).  But the Second Circuit has held that it only has jurisdiction to grant a mandamus petition seeking to reverse an order transferring a case to another district court outside of the Second Circuit if the transfer has not yet occurred.  *Warrick*, 70 F.3d at 739.  Given the local rule governing the transfer of cases to another district from the Southern District of New York, the transferee court will transfer this action back to Texas as soon as *tomorrow—i.e.*, after the expiration of seven (7) days from the Panel's June 5, 2023 Order remanding the case.  *See* S.D.N.Y. Loc. Civ. R. 83.1 ("In a case ordered transferred from this District, the Clerk, unless otherwise ordered, shall upon the expiration of seven (7) days effectuate the transfer of the case to the transferee court.").

Once that transfer is effectuated, Second Circuit precedent suggests the court will no longer consider itself to have jurisdiction to reverse the Remand Order.  In *Warrick*, the Second Circuit held that a party seeking mandamus review of a transfer order must file a motion to stay the transfer before the case is physically transferred, *i.e.*, "early enough to preserve" the appellate court's "power to issue mandamus reversing the transfer."  70 F.3d at 739 (explaining that a local rule[2] providing for a delay between a transfer order and the mailing of papers to the court receiving the transferred case affords an opportunity for "an aggrieved party to seek a stay of a transfer order, and to seek a writ of mandamus reversing the transfer order" (relying on *Roofing & Sheet Metal Servs. v. La Quinta Motor Inns*, 689 F.2d 982, 988 n.10 (11th Cir. 1982) and 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3846, at 357 (1986))); *see also Drabik v. Murphy*, 246 F.2d 408, 409 (2d Cir. 1957) (L. Hand, J.) (explaining writ review

---

[2] The equivalent local rule in the Southern District of New York affords this same opportunity. *See* S.D.N.Y. Loc. Civ. R. 83.1.  Indeed, the Committee Note for Rule 83.1 explains that a "waiting period" between an order of transfer and the effectuation of transfer affords a party opposing transfer the opportunity to seek appellate review.  *See* S.D.N.Y. Loc. Civ. R. 83.1 (Committee Note).

of transfer order is inappropriate where party seeking review "did not stay the transfer, or preserve the jurisdiction of the District Court for the Southern District").[3]

Thus, a stay will ensure that Google's opportunity under 28 U.S.C. § 1407(e) to ask the Second Circuit to reverse the Panel's Remand Order is not rendered a "a futile exercise." *See Roofing & Sheet Metal Servs.*, 689 F.2d at 988 n.10 (explaining "a mandamus action" will not lie after "the files in a case are physically transferred to the transferee district" and thus "the prevailing approach is to delay the physical transfer of the papers in a case long enough to allow an aggrieved party the opportunity to file a petition for mandamus"). And as explained above, Google must seek mandamus relief in the Second Circuit. *See supra* p. 10.

That potential "loss of appellate rights" constitutes irreparable harm and has resulted in a "quintessential form of prejudice" in related contexts.[4] *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (granting motion to stay pending appeal) (citation omitted); *see also In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (similar). The requested stay will ensure that Google can pursue reversal of the Remand Order by way of a writ of mandamus.

---

[3] Outside the MDL context, Judge Castel has held that a where a party seeking reconsideration of a transfer order "filed its motion after the transferee court received the file, and that was not the result of this Court acting 'hastily' in transferring the case's papers, this Court does not have jurisdiction to reconsider its decision." *Emblaze Ltd. v. Apple Inc.*, No. 10 CIV. 5713 PKC, 2011 WL 2419802, at *2 (S.D.N.Y. June 3, 2011) (denying motion for reconsideration).

[4] In certain circumstances, even where a stay is denied, a party may still petition for writ relief with "limited reach." *Warrick*, 70 F.3d at 739. For instance, the Second Circuit may issue an order directing the district court to "request the transferee court to return the case." *Id.* (citation omitted). While Google may seek such limited relief as necessary, it is meaningfully distinct from a writ directing reversal of the Remand Order, and there is no need to require Google to pursue such a precarious path when it has shown a stay is warranted here.

**B.     A Stay Is Necessary to Prevent Google Irreparably Curtailing the Efficiencies and Benefits of This MDL.**

Google faces further irreparable harm in the form of losing the efficiencies of consolidated MDL proceedings.  "While it is true that the expenses attendant to litigation and arbitration do not typically amount to irreparable harm, it is similarly clear that irreparable harm may exist 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'"  *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 448 (S.D.N.Y. 2010) (staying effect of order pending appeal) (quoting *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249–250 (2d Cir. 1999)) (citation omitted).

Here, absent a stay, Google risks irreparably losing the benefits and efficiencies of the MDL regardless of the outcome of its mandamus petition.  Those proceedings involve extraordinary efficiencies—lost forever to both parties and the courts if this action is remanded. As this Panel recognized, consolidation was appropriate to avoid "voluminous and complex" discovery and the potential for inconsistent rulings, which uniquely burdens Google as the common defendant.  *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1378.

The requested stay will maintain access to those efficiencies.  Google will not be able to recoup the loss of coordinated discovery or the duplicated efforts that will happen absent writ relief.  Inconsistent rulings are also more likely, absent relief, and those harms cannot be recompensed.  Thus, unlike a mere increase in costs, which a party can frequently recover, Google will be forced to incur vastly increased burdens, litigating on multiple fronts with no way to recoup the *efficiency* of consolidated proceedings from this MDL.  Google thus faces the risk of being "deprived of any right to relief regardless of the appeal's outcome." *Jock*, 738 F. Supp. 2d at 448 (staying effect of order pending appeal).

### III.   THE REMAINING FACTORS FAVOR A STAY.

As this Panel's rationale for consolidating this case demonstrates, the remaining factors favor a stay, too.

1. *Balance of the Hardships*.  State Plaintiffs will not face any injury from a stay or from continuing to litigate in the Southern District of New York more broadly.  Nor can they seriously claim any.  The only concerns raised in State Plaintiffs' remand motion relate to the State of Texas' preference for its home forum, and related efficiencies, like travel costs, incurred by litigating in New York.  But as this Panel explained in its initial transfer order, these are "essentially case management concerns," not the sort of injury that counsels against a temporary stay.  *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d. at 1378.  JPML panels—like the one here—have also routinely rejected arguments that forum preference, alone, outweighs the benefits of centralized proceedings.  *Id.* (citing *In re Generic Pharms. Pricing Antitrust Litig.*, MDL No. 2724, 2017 WL 4582710 (J.P.M.L. Aug. 3, 2017)).  Indeed, this Panel found this action an "especially compelling" case for consolidation precisely because of the efficiencies, to all parties, from resolving plaintiffs' various claims together.  *Id.* at 1379.  And to the extent there are significant benefits to the State Plaintiffs proceeding in Texas, a stay pending appeal, or an administrative stay, will not meaningfully affect them.

2. *Public Interest*.  The public interest supports granting Google's stay request because the proposed stay would avoid potentially duplicative litigation, thereby conserving judicial resources.  *See In re Gorsoan Ltd.*, No. 18-MC-431 (RA) (KNF), 2020 WL 4194822, at *8 (S.D.N.Y. July 21, 2020) (granting motion to stay pending appeal and finding "that the public interest factor militates in favor of a stay" based on, *inter alia*, "the public interest in . . . preserving judicial resources by avoiding unnecessary proceedings while the appeal in this action is pending").  Indeed, the Panel previously identified the various benefits that would result from centralizing the

related actions in the MDL, including the elimination of duplicative discovery and avoiding the risk of inconsistent judgments. *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1375. The Panel's recent remand order found that remand was required based on the Panel's reading of section 1407(g), and did not suggest that any of the benefits of centralized litigation had been exhausted. *See* ECF No. 250 at 3.

## CONCLUSION

For the foregoing reasons, the Panel should enter an order staying its Remand Order, enter an administrative stay by 5:00 p.m. on June 12, 2023 to permit the Panel time to consider this motion, or alternatively, at a minimum, if it is inclined to deny relief, enter an administrative stay of 7 days from that denial to permit Google to seek a stay pending mandamus review from the Second Circuit before the transfer is effectuated.

Dated: June 12, 2023                    Respectfully submitted,

/s/ Eric Mahr

Eric Mahr
Julie S. Elmer
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
(202) 777-4545

Boris Feldman
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
(650) 461-8200